1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                    **EASTERN DISTRICT OF CALIFORNIA**
6   | EDNA AFFHOLTER, et al. | 1:07-CV-0388 OWW DLB |
7   |                        |                      |
    |        Plaintiffs, | **MEMORANDUM DECISION** |
8   |                        | **GRANTING DEFENDANTS'** |
    |     v.  | **MOTIONS TO DISMISS (Docs.** |
9   |                        | **135, 141, 142, 143, 147,** |
    | FRANKLIN COUNTY WATER DISTRICT, | **150, 196)** |
10  |                        |                      |
    |        Defendants. |  |
11
12                    **I.   INTRODUCTION**
13       This case concerns the alleged discharge of pollutants from
14  various public and private wastewater treatment, refuse, and
15  disposal facilities, irrigation canals, and other facilities in
16  Merced County.  Before the court for decision is Defendant City
17  of Merced's ("City") Motion to Dismiss a number of Plaintiffs
18  from the Fourth Amended Complaint for failing to comply with the
19  notice requirements of the Clean Water Act ("CWA") and the
20  Resource Recovery and Conservation Act ("RCRA").
21       Most, but not all, of the other Defendants filed similar
22  motions to dismiss, incorporating by reference the City's legal
23  arguments.  (*See* Doc. 142 (Merced Irrigation District ("MID");
24  Merced Irrigation District/Merced Drainage District No. 1 ("MDD
25  1")); Doc. 150 (the County of Merced ("County")); Doc. 147
26  (Franklin County Water District ("FCWD")); Doc. 141 (Merck & Co.
27  Inc., Amsted Industries, Inc., and Baltimore Aircoil Company
28  Inc.); Doc. 143 (Meadowbrook Water Company of Merced, Inc.); and

                              1

1   Doc. 196 (Track Four, Inc).)   These Defendants assert the same

2   ground for dismissal as the City, but identify different lists of

3   Plaintiffs who purportedly failed to timely file the required

4   notices with each Defendant.[1]

5

6                    II.   <u>RELEVANT FACTUAL BACKGROUND</u>

7         It is not practical or necessary to review the timing and

8   content of the various notices and claims received by each

9   defendant, as the parties appear not to dispute when various

10  groups of Plaintiffs provided notice of their claims in this

11  case.  By way of example, Plaintiffs' counsel sent the City its

12  initial notice of intent to file suit under the CWA on January 4,

13  2004, attaching a list of individuals on whose behalf the notice

14  was sent.   Plaintiffs filed their initial complaint on March 8,

15  2007.   Subsequently, on March 22, 2007, Plaintiffs filed a

16

17  _____

          [1]      In addition to the CWA/RCRA notice argument, the
18  motions raised additional grounds for dismissal.   First,
    Defendants argued that if the CWA and RCRA claims are dismissed
19  as to certain Plaintiffs for failure to comply with the statutory
    notice requirements, the district court would lose supplemental
20  jurisdiction over those Plaintiffs' state law claims.   Defendants
    have withdrawn this argument.   (Doc. 157.)
21
          Second, the public entity Defendants argued for dismissal of
22  certain Plaintiffs for failure to comply with the claim
    presentation requirement contained within the California Tort
23  Claims Act ("CTCA").   Laudably, the parties have resolved the
    dispute over the CTCA claims.
24
          Finally, Defendants argued for dismissal of Plaintiffs'
25  negligence per se claim on the ground that CWA and RCRA
    violations cannot provide the basis for such a claim.   The
26  parties have resolved this disputes as well, resulting in
    Plaintiffs' voluntary dismissal of the negligence per se claims.
27  (Doc. 208.)

28

                                  2

1  supplemental notice of intent to file suit under the CWA and

2  RCRA.   Plaintiffs filed a series of amended complaints,

3  culminating in the filling of the Fourth Amended Complaint

4  ("FAC") on July 7, 2008.   However, certain of the individual

5  Plaintiffs named in the FAC were not included in the original

6  CWA/RCRA notices.   Amended notices identifying the new Plaintiffs

7  were served over the period from August 29 through September 22,

8  2008.

9

10                III.   **STANDARD OF DECISION**

11       A motion to dismiss under Federal Rule of Civil Procedure

12  12(b)(1) addresses the court's subject matter jurisdiction.   *See*

13  Fed. R. Civ. Pr. 12(b)(1).   Federal courts are limited in

14  jurisdiction; it is presumed that a case lies outside the

15  jurisdiction of the federal courts unless Plaintiff proves

16  otherwise.   *Kokkonen v. Guardian Life Ins. Co. of America*, 511

17  U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873

18  F.2d 1221 (9th Cir. 1993); *Thornhill Publ'g Co. v. Gen. Tel. &*

19  *Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).   The party

20  asserting jurisdiction has the burden of proof when a 12(b)(1)

21  motion is filed.   *See Sopack v. N. Mountain Helicopter Serv.*, 52

22  F.3d 817, 818 (9th Cir. 1995); *Farmers Ins. Ex. v. Portage La*

23  *Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).   "When

24  considering a motion to dismiss pursuant to 12(b)(1) the district

25  court is not restricted to the face of the pleadings, but may

26  review any evidence, such as affidavits and testimony, to resolve

27  factual disputes concerning the existence of jurisdiction."

28  *McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988), *cert.*

                                    3

1    *denied*, 489 U.S. 1052 (1989).  Defendant may "rely on affidavits

2    or any other evidence properly before the court."  *St. Clair v.*

3    *City of Chico*, 880 F.2d 199, 201 (9th Cir.) (citations omitted),

4    *cert. denied*, 493 U.S. 993 (1989).

5         Lack of subject matter jurisdiction can be raised at any

6    time by any party.  Fed. R. Civ. Pro. 12(h)*; Am. Fire & Cas. Co.*

7    *v. Finn*, 341 U.S. 6, 17-18 (1951).

8

9                        IV.  DISCUSSION

10        A.   <u>CWA/RCRA Notice Requirement</u>.

11        Defendants argue that certain Plaintiffs failed to comply

12   with the notice requirements of the CWA and/or RCRA.

13        The CWA provides a private right of action for claims

14   "against any person ... who is alleged to be in violation of (A)

15   an effluent standard or limitation under this chapter or (B) an

16   order issued by the Administrator or a State with respect to such

17   a standard or limitation...."  33 U.S.C. § 1365(a)(1).

18        The CWA's notice provision provides that "[n]o action may be

19   commenced--(1) under subsection (a)(1) of this section--(A) prior

20   to sixty days after the plaintiff has given notice of the alleged

21   violation (i) to the Administrator [of the Environmental

22   Protection Agency ("EPA")], (ii) to the State in which the

23   alleged violation occurs, and (iii) to any alleged violator of

24   the standard, limitation, or order...."  33 U.S.C. § 1365(b).

25   The implementing regulations explain that a notice regarding an

26   alleged violation of an effluent standard, limitation, or order

27   "shall include sufficient information to permit the recipient to

28   identify the specific standard, limitation, or order alleged to

                                4

have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice."  40 C.F.R. § 135.3.

RCRA provides a similar private right of action for violations of that statute:

> (a) In general
>
> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf--
>
> (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or
>
> (B) against any person ... to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or

Actions brought under subsection (a)(1)(A) are subject to a 60-day waiting period, § 6972 (b)(1)(A) ("No action may be commenced under subsection (a)(1)(A) of this section--(A) prior to 60 days after the plaintiff has given notice of the violation to--(i) the Administrator; (ii) the State in which the alleged violation occurs; and (iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order...."), while actions brought under subsection (a)(1)(B) are

1  subject to a 90-day waiting period, § 6972 (b)(2)(A) ("No action

2  may be commenced under subsection (a)(1)(B) of this section prior

3  to ninety days after the plaintiff has given notice of the

4  endangerment to--(i) the Administrator; (ii) the State in which

5  the alleged endangerment may occur; (iii) any person alleged to

6  have contributed or to be contributing to the past or present

7  handling, storage, treatment, transportation, or disposal of any

8  solid or hazardous waste referred to in subsection (a)(1)(B) of

9  this section...."). Both of the RCRA notice provisions contain

10 an exception, whereby an "action may be brought immediately after

11 such notification in the case of an action under this section

12 respecting a violation of subchapter III of this chapter," which

13 concerns standards applicable to identified generators and

14 transporters of hazardous wastes, as well as to owners and

15 operators of hazardous waste treatment, storage, and disposal

16 facilities. § 6972 (b)(2)(A), (B).

17      These motions implicate the scope of the Ninth Circuit's

18 holding in *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351,

19 1352 (1995), interpreting the CWA's notice provision. There, a

20 union plaintiff filed notice with the corporate defendant,

21 alleging that the company was discharging pollutants in violation

22 of the CWA. After receiving the notice, the company communicated

23 with the union about the allegations. *Id*. The union, along with

24 two previously unmentioned environmental organizations, filed

25 suit more than sixty days later. *Id*. The union was later

26 dismissed from the suit when it went into trusteeship. *Id*.

27 McCain moved for summary judgment, arguing, among other things,

28

**6**

1   that the notice did not identify the two environmental

2   organizations as potential plaintiffs.  *Id*.

3      The Ninth Circuit found that the purpose of the sixty-day

4   notice is to "allow the parties time to resolve their conflicts

5   in a nonadversarial time period.  Once the suit is filed,

6   positions harden and compromise is less likely."  *Id*. at 1354.

7   In addition, notice "alerts the appropriate state or federal

8   agency, so administrative action may initially provide the relief

9   the parties seek before a court must become involved."  *Id*.  The

10  union's notice failed to satisfy either purpose, because the

11  notice failed to identify the two environmental plaintiffs,

12  defendants did not know other plaintiffs were involved and were

13  "not in a position to negotiate with the plaintiffs or seek an

14  administrative remedy," rendering any pre-suit resolution between

15  the remaining parties impossible.  *Id*.

16     *Washington Trout* relies heavily on the Supreme Court's

17  decision in *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), a

18  citizen suit brought under RCRA:

19          The issue presented for review [in *Hallstrom*] was
            whether the compliance with [RCRA's] sixty-day notice
20          provision was a mandatory precondition to suit or if it
            could be disregarded by the district court at its
21          discretion. *Hallstrom*, 493 U.S. at 23.

22              FN3. The sixty-day notice provision in *Hallstrom*
                was modeled after § 304 of the Clean Air Act
23              Amendments, 84 Stat. 1706, as amended, 42 U.S.C. §
                7604. Since 1970, a number of federal statutes
24              have incorporated notice provisions patterned
                after § 304. The notice provision involved in this
25              case, 33 U.S.C. § 1365(b), is also modeled after §
                304. *See Hallstrom* [], 493 U.S. at 23 n. 1.
26
            In *Hallstrom*, the petitioners owned a dairy farm
27          located next to the Tillamook County landfill. *Id*. In
            believing that the landfill violated RCRA standards,
28          the petitioners sent the respondent a notice stating

                               **7**

their intent to sue. *Id*. When the petitioners commenced an action, the respondent moved for summary judgment on the grounds that petitioners failed to notify Oregon's Department of Environmental Quality and the [EPA] of their intent to sue.  *Id*. at 23-24.

The district court denied the respondent's motion and held that the notice defect was cured by the petitioner's formal notification to the State and EPA on March 2, 1983, one day after the motion for summary judgment. *Id*. at 24. The district court went on to find that the respondent did violate the RCRA. *Id*. On appeal, the Ninth Circuit held the petitioners' failure to comply with the sixty-day notice provision deprived the district court of subject matter jurisdiction. *Hallstrom v. Tillamook County*, 844 F.2d 598, 600-01 (9th Cir.1987). The Ninth Circuit adopted the approach followed by the First and Seventh Circuits; [citations] an approach that focuses on the plain language of the statute and the policy concerns underlying the notice requirement. *Id*. at 600. The court of appeals held that the plain language [of § 6972(b)] commands sixty days notice before commencement of the suit, and to accept anything less would constitute a " 'judicial amendment in abrogation of explicit, unconditional statutory language.' " *Hallstrom*, 844 F.2d at 600 (quoting *Garcia v. Cecos Int'l, Inc*., 761 F.2d 76, 78 (1st Cir.1985)). The court determined that a strict construction of the notice requirement would best further the statute's goal of first triggering administrative action to provide the citizen relief-relief the individual might otherwise seek in the courts. *Id*. at 601. The Ninth Circuit remanded to the district court with instructions to dismiss.

In order to resolve [a] conflict among the circuits, the Supreme Court granted certiorari. The Court found, under the plain language of the statute, the choice was clear. The Court held that "[u]nder a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom*, 493 U.S. at 26.

*Washington Trout*, 45 F.3d at 1353-54 (parallel citations omitted).

The remaining plaintiffs in *Washington Trout* argued that (a) *Hallstrom* was distinguishable because in *Hallstrom* the petitioners provided absolutely no presuit notice, and (b) the Supreme Court's holding merely prohibits suit in the total

absence of any pre-suit notice. *Id*. at 1354. The Ninth Circuit

rejected this argument.

> The plaintiffs' understanding of the *Hallstrom* decision
> is misplaced. In *Hallstrom*, the petitioners did send a
> notice to the respondent that they argued qualified as
> notice under the statute. *See Hallstrom*, 493 U.S. at
> 23. The issue in *Hallstrom* was whether the notice was
> sufficient under the regulation's mandate-<u>whether the
> notice requirement should be strictly construed or
> liberally applied by the district courts. The Court
> held the notice requirement under the regulations was
> to be strictly construed</u>. Therefore, the *Hallstrom*
> decision does not stand for the fact that without any
> notice, there could be no suit. Rather, the Court held
> that <u>the notice requirements set forth in the
> regulation must be satisfied before the case may be
> heard in federal district court</u>.

*Washington Trout*, 45 F.3d at 1353-54 (emphasis added) (parallel

citations omitted).

Plaintiffs rely heavily on *Citizens for a Better Environment
v. Union Oil Company of California*, 861 F. Supp. 899 (N.D. Cal.
1994) [*CBE v. Unocal*], a district court case decided <u>before</u>
*Washington Trout*. In that case, although CBE's pre-suit notice
was valid and effective, defendants argued that other plaintiffs
must be dismissed from the case because their notice(s) were not
served more than sixty days prior to the filing of the suit.
Plaintiffs countered that "so long as at least one plaintiff has
given defendant proper notice in accord with 33 U.S.C. §
1365(b)(1)(A), other plaintiffs who have not individually given
the statutory sixty days notice may nonetheless permissibly join
in the lawsuit." *Id*. at 912. The district court sided with the
Plaintiffs, reasoning:

> This Court recently addressed precisely this issue in
> the related case of *California Public Interest Research
> Group v. Shell Oil Co.*, Nos. C 92-4023 TEH, C 93-0622
> TEH (N.D.Cal. Jan. 5, 1994). In *Shell* the Court wrote:

9

**[A] number of courts have ruled that so long as defendants receive proper notice of the action from one plaintiff, additional plaintiffs can join without filing separate 60 day notices. These cases reason that where defendants have notice of the impending suit and an opportunity to resolve the matter short of litigation, there is no reason to exclude additional plaintiffs who later join the action. See *Klickitat County v. Columbia River Gorge Comm'n*, 770 F.Supp. 1419, 1424 (E.D.Wash.1991) ("The fact that other plaintiffs have joined in the litigation doesn't change the fact that the Forest Service was aware of the impending lawsuit and the basis for the claim."); *Student Public Interest Research Group ("PIRG") of New Jersey, Inc. v. Tenneco Polymers, Inc.*, 602 F.Supp. 1394, 1396 (D.N.J.1985) (citing lack of prejudice to defendants since they were put on notice as to the nature of the suit); *Student PIRG of New Jersey, Inc. v. AT & T Bell Laboratories*, 617 F.Supp. 1190, 1194 (D.N.J.1985) ("because one plaintiff served adequate notice ... defendant's right to adequate notice was preserved"); *South Carolina Wildlife Federation v. Alexander*, 457 F.Supp. 118, 123-24 (D.S.C.1978).**

**[Defendant] contends that the Supreme Court implicitly overruled these cases in *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989). As discussed above, *Hallstrom* holds that the 60 day pre-suit notice requirement is not something that the courts can waive, but rather is a mandatory requirement. We should construe this holding, [defendant] argues, to require that each individual plaintiff named in the action must provide 60 days pre-suit notice. *Hallstrom*, however, never addresses this issue, since in that case, the defendants received no pre-suit notice at all. Moreover, *Hallstrom* focused on the statutory mandate that defendants be given some pre-suit notice so that they would have an opportunity to address the matter before a lawsuit was filed. The reasoning of the cases cited above is completely consistent with, and does not undercut, this rationale. We also note that at least one district court has continued to allow additional persons to join as plaintiffs after *Hallstrom*. See *Klickitat*, 770 F. Supp. at 1424.**

*Id.*, Slip Op. at 6-7. By its terms, 33 U.S.C. § 1365(b)(1)(A) requires only that sixty days notice be given before a "[citizen] action" is commenced. The statute does not provide that every plaintiff must give such notice. Following its ruling in *Shell*, the Court holds that the 33 U.S.C. § 1365(b)(1)(A) requirement

1
2

> attaches to the lawsuit- not the plaintiff-and that the
> requirement is satisfied so long as at least one
> plaintiff has given statutorily adequate notice.

3   *CBE v. Unocal*, 861 F. Supp. at 912-13.  *CBE v. Unocal*, a district
4   court decision from another district has no binding effect.

5       Although *Washington Trout*, decided less than six months
6   later, does not explicitly overrule *CBE v. Unocal*, the holding
7   and reasoning in *Washington Trout* are impossible to reconcile
8   with the result in *CBE v. Unocal*.  *Washington Trout* explicitly
9   rejected the argument that *Hallstrom* could be distinguished on
10  the ground that in *Hallstrom* no pre-suit notice was given.
11  *Washington Trout* interprets *Hallstrom* as requiring strict
12  construction of the notice requirement.

13      Plaintiffs next cite *Natural Resources Defense Council v.*
14  *Southwest Marine, Inc.,* 945 F. Supp. 1330 (S.D. Cal. 1996).  That
15  case, decided after *Washington Trout*, centered not on whether
16  some plaintiffs' notices were untimely, but rather on whether the
17  notice, which was otherwise sufficient and timely-served, gave
18  adequate notice of the nature of the violations alleged in the
19  complaint.  The district court concluded that the notice was
20  sufficient because it specifically identified the standards
21  required under the applicable permit and how defendants' failure
22  to implement required monitoring and reporting plans allegedly
23  violated those standards.  *Id*. at 1333-34.  *NRDC v. Southwest*
24  *Marine* is inapposite.[2]

25

26  _____

    [2]    Plaintiffs also cite *Water Keeper Alliance v.*
27  *Smithfield Foods*, 2002 U.S. Dist. LEXIS, *4-6 (E.D. NC 2002),
    where one additional Plaintiff represented by existing
28  plaintiffs' counsel was permitted to be added after the lawsuit

1    Plaintiffs emphasize the fact that *Washington Trout* focused
2    on the purpose of the notice provision, namely to place
3    defendants in "a position to negotiate with the plaintiffs or
4    seek and administrative remedy."   In that case, the failure to
5    identify either of the two remaining plaintiffs in the notices
6    "made any sort of resolution between the parties during the
7    notice period an impossibility."   Plaintiffs point out that the
8    original notices identified Plaintiffs' counsel as the contact
9    person for communication with all Plaintiffs then giving notice.
10   Plaintiffs maintain that this gave defendants sufficient notice
11   of with whom they should negotiate.

12       However, the initial notices did not give defendants notice
13   of the extent of the group of Plaintiffs represented by counsel.
14   For example, the City asserts in its motion to dismiss that 1,398
15   Plaintiffs listed in the FAC failed to serve the City with
16   appropriate CWA/RCRA notices prior to filing suit.   (Doc. 135 at
17   1.)   The potential additional liability associated with
18   allegations of harm to almost 1,400 new Plaintiffs is manifest.
19   Defendants are entitled to receive timely notice under the CWA
20   and RCRA that alerts them to the extent of their exposure.   To
21   hold otherwise would not be consistent with *Washington Trout*.
22   Defendants' motions to dismiss are GRANTED.

23
24
25   _____

26   was filed, despite not having been part of the original notice.
     Not only is *Water Keeper* an unpublished district court case from
27   another circuit, it is factually distinguishable, in that only
     one additional plaintiff, rather than many hundreds, was added
28   without timely prior notice.

1    B.    <u>Amendment of the Complaint</u>.

2         Plaintiffs alternatively request leave to amend their

3    complaint to join all Plaintiffs currently represented by

4    Plaintiffs' counsel for whom CWA/RCRA notices were served on

5    Defendants from August 29, 2008 to September 22, 2008.

6         It is well settled that leave to amend "shall be freely

7    given when justice so requires."  Fed. R. Civ. P. 15(a).  In

8    considering a request for leave to amend, a court must consider

9    whether there has been (1) undue delay or (2) bad faith or

10   dilatory motive on the part of the movant; (3) repeated failure

11   to cure deficiencies by amendments previously allowed; (4) undue

12   prejudice to the opposing party if amendment were allowed; and

13   (5) futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182

14   (1962).

15        Whether the proposed amendment will prejudice the opposing

16   party is the most important factor; if there is no prejudice or

17   strong showing that any of the other *Foman* factors counsel

18   against amendment, there is a presumption favoring leave to

19   amend.  *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048 (9th Cir.

20   2003).  The party opposing amendment bears the burden of showing

21   prejudice.  *Id*. (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d

22   183 (9th Cir. 1987)).

23        Here, Defendants do not suggest that amendment would

24   prejudice them in any way.  Rather, Defendants point out that the

25   delays associated with amendment are inconsistent with

26   Plaintiffs' desire to move this case quickly to trial.  Joinder

27   of the new Plaintiffs by amendment is not possible until the

28   expiration of the relevant waiting periods.  Given that the

13

1  latest of the notice letters was served September 22, 2008,
2  amendment would not be possible until late November 2008, at the
3  earliest.  Any amendment would add to the number of Plaintiffs
4  Defendants need to depose, which depositions are currently
5  underway.

6        However, the alternative is for the new Plaintiffs to file a
7  separate action, which could then be consolidated with this case.
8  Plaintiffs argue that allowing joinder would be preferrable for
9  judicial economy.  Plaintiffs have pressed for a relatively quick
10  discovery/trial schedule, but if Plaintiffs are willing to slow
11  the progress of their case, leave to amend is appropriate.

12
13        C.   **Waiver of Objection to Joinder of New Plaintiffs**.
14        Plaintiffs incorrectly argue that Defendants waived their
15  right to object to the addition of new Plaintiffs by stipulating
16  to the filing of the Fourth Amended Complaint, which names the
17  new Plaintiffs.  The Stipulation to Modify Supplemental
18  Scheduling Conference Order expressly reserves Defendants' right
19  to challenge any of the Plaintiffs.  (*See, e.g.*, Doc. 111,
20  "Nothing in this stipulation and order is intended to limit or
21  waive any defenses any of the defendants may have or assert to
22  any of the claims alleged by any of the plaintiffs....")  There
23  is no merit to Plaintiffs' waiver argument.

24
25        D.   **RCRA Subtitle III**.
26        In the alternative, Plaintiffs maintain that their notices
27  assert claims under subchapter III of RCRA, for which the waiting
28  period is waived.  *See* 42 U.S.C. § 6972.  RCRA subchapter III

**14**

1   contains requirements for the management of hazardous waste by

2   generators, transporters, and treatment, storage and disposal

3   facilities; land disposal of hazardous wastes; and RCRA

4   enforcement provisions.

5       Plaintiffs do not cite or quote particular passages from

6   their notice letters or complaint that may be interpreted as

7   references to subchapter III.  Instead, in their opposition,

8   Plaintiffs purport to summarize their RCRA subchapter III claims

9   as follows:

10          In summary RCRA requires that the environment and
            public be protected from the hazardous wastes generated
11          by Polluters. The pollutants including chromium,
            copper, arsenic, PCP, solvents and peritoneum
12          constituents found at the Site identified in this
            Notice constitute hazardous waste under RCRA, and are
13          required to be managed such that harm to the
            environment and public is properly managed so as to not
14          cause endangerment to the public or the environment.
            RCRA specifically protects groundwater.
15
            The liability of the BAC defendants stems from either
16          their ownership of the Site or activities conducted on
            the Site by these companies which violate RCRA and have
17          contributed to the past or present handling, storage,
            treatment, transportation, or disposal of any hazardous
18          waste which may present an imminent and substantial
            endangerment to health or the environment. Victims
19          also allege Polluters to be in violation of a permit,
            standard, regulation, condition, requirement,
20          prohibition, or order which has become effective
            pursuant to RCRA.  The BAC defendants are guilty of
21          open dumping as that term is used in RCRA by
            discharging pollutants including hexavalent chromium,
22          arsenic, copper, PCP and solvents to the open ground
            allowing these pollutants to discharge to both ground
23          and surface waters.  The Site does not qualify as a
            landfill under 42 U.S.C.S. § 6944, and does not qualify
24          as a facility for the disposal of hazardous waste.  The
            BAC defendants have no RCRA authorized permit for
25          disposal, storage or treatment of solid or hazardous
            waste of the type currently and historically at the
26          Site.

27          The liability of Polluters MEADOWBROOK, FCWD, MID, CITY
            and COUNTY stem from their ownership or operation of
28          preferential pathways or wells which have caused

                                    15

1
2

> pollutants to be discharged to surface and groundwaters
> via Polluters' conduits such as sewer lines, utilities
> and the like, facilitating pollutant migration and
> discharge to water[s] of the United States and
> contributing to the past or present handling, storage,
> treatment, transportation, or disposal of any hazardous
> waste which may present an imminent and substantial
> endangerment to health or the environment.

3
4
5

(Doc. 203 at 15.)

6
7

Unless Plaintiffs can point to portions of their notice

8

letters or complaint that give Defendants fair notice of their

9

intent to bring a claim under any of the diverse provisions

10

contained within RCRA subchapter III, their attempt to circumvent

11

the waiting period fails.  A court has no duty to search a

12

voluminous pleading record to find relevant language.

13
14
15

**V.   CONCLUSION**

16

For the reasons set forth above

17

(1)  Defendants' motions to dismiss the CWA and/or RCRA

18

claims of those Plaintiffs for which timely pre-suit notices have

19

not been filed are GRANTED.

20

(2) Plaintiffs' request for leave to amend is GRANTED.

21

Plaintiffs shall file any amended complaint within ten (10) days

22

of the expiration of the latest waiting period applicable to

23

those CWA and/or RCRA notices already served on Defendants as of

24

the date of entry of this order.

25

IT IS SO ORDERED.

26

**Dated:   November 12, 2008**            **/s/ Oliver W. Wanger**
                                          UNITED STATES DISTRICT JUDGE

27
28

**16**