1
2
3
4           UNITED STATES DISTRICT COURT

5           EASTERN DISTRICT OF CALIFORNIA

6   ┌──────────────────────────────┬──────────────────────────────
    │ EDNA AFFHOLTER, et al.,       │ 1:07-CV-0388 OWW DLB
7   │                               │
    │              Plaintiffs,      │ MEMORANDUM DECISION
8   │                               │ GRANTING RANCHWOOD
    │         v.                    │ DEFENDANTS' MOTION TO
9   │                               │ COMPEL ARBITRATION (DOC.
    │ FRANKLIN COUNTY WATER DISTRICT,│ 162, 167-190)
10  │                               │
    │              Defendants.      │
11  └──────────────────────────────┴──────────────────────────────

12               I.   INTRODUCTION

13       This case concerns the alleged discharge of pollutants from

14  various public and private wastewater treatment, refuse, and

15  disposal facilities, irrigation canals, and other facilities in

16  Merced County.  Before the court for decision is a motion to

17  compel arbitration filed by Defendants Ranchwood Properties,

18  Ranchwood Contractors, Inc., Hostetler Investments, LLC, El

19  Capitan Estates, LLC, Hollywood Park Estates, LLC, El Capitan

20  Meadows LLC, and Ranchwood Residential Inc. (collectively, the

21  "Ranchwood Defendants").  Doc. 162, filed Nov. 3, 2008.  This

22  motion involves only seventy-eight (78) of the named Plaintiffs

23  in this case, namely, those who either purchased a home directly

24  from the Ranchwood Defendants or subsequent purchasers

25  (collectively, the "Ranchwood Plaintiffs"[1]), and only two (2) of

26  ────────────────────

27       [1]   Paragraph 33 of the Complaint defines "Ranchwood
    Plaintiffs" as those "Plaintiffs who own real property and/or
28  reside or resided at all relevant times herein in Merced County,

                            1

1   the claims for relief, the Seventeenth Claim for Negligent

2   Failure to Disclose and the Twentieth Claim for Concealment.   The

3   Ranchwood Plaintiffs allege that Ranchwood Defendants failed to

4   disclose and/or actively concealed the alleged presence of

5   harmful chemicals on their home sites at the time of purchase.

6        The original purchasers each signed a Purchase Agreement and

7   Escrow Instructions in connection with the purchase of their home

8   from Ranchwood Defendants, each of which contains an Arbitration

9   Provision.   *See* Decl. of Rhett Salha, Docs. 165-66, Ex. A - X.

10  Each Ranchwood Plaintiff (or their predecessor in interest)

11  initialed the Arbitration Provision indicating their agreement to

12  submit certain disputes to binding arbitration.   Ranchwood

13  Defendants now seek to enforce that Arbitration Provision with

14  respect to the Ranchwood Plaintiffs' Seventeenth and Twentieth

15  Claims, with the exception of any claims for bodily injury

16  included within those Claims, for which the arbitration provision

17  contains an exception.

18

19                    II.   **BACKGROUND**

20       The Arbitration Provision, found at paragraph 21 of the

21  standard form contract signed by each original purchaser

22  provides:

23

24

25  ─────────────────────

26  generally in an area bound by Drake Avenue to the north, Big
    Sandy Avenue and Shumaker Avenue to the west, Chesler Street to
27  the south, and Drake Avenue to the east."   This is an area within
    Merced County developed by the Ranchwood Defendants as single
28  family residences.   (Doc. 163 at 3.)

                               **2**

1   **IF THE PRE-LITIGATION PROCEDURES DESCRIBED ABOVE FAIL
    TO RESOLVE ANY DISPUTE, IT IS HEREBY AGREED THAT ANY
2   AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES BY OR
    BETWEEN THE BUYER AND SELLER ARISING FROM OR RELATING
3   TO THE PROPERTY, OR TO ANY DEFECT AND/OR TO THE SUBJECT
    HOME OF THE PROPERTY, OR THE SALE OF THE PROPERTY BY
4   THE SELLER, INCLUDING WITHOUT LIMITATION, ANY CLAIM OF
    BREACH OF CONTRACT, NEGLIGENT, OR INTENTIONAL
5   MISREPRESENTATION OR NON-DISCLOSURE IN THE INDUCEMENT,
    EXECUTION OR PERFORMANCE OF ANY CONTRACT, INCLUDING
6   THIS ARBITRATION AGREEMENT, AND BREACH OF ANY ALLEGED
    DUTY OF GOOD FAITH AND FAIR DEALING, SHALL BE SUBMITTED
7   TO BINDING ARBITRATION IN ACCORDANCE WITH THE FOLLOWING
    TERMS. THE PARTIES EXPRESSLY AGREE THAT THIS
8   ARBITRATION PROVISION INVOLVES AND CONCERNS INTERSTATE
    COMMERCE AND IS GOVERNED BY THE PROVISIONS OF THE
9   FEDERAL ARBITRATION ACT, (9 U.S.C. § 1, ET SEQ.) NOW IN
    EFFECT AND AS THE SAME MAY FROM TIME TO TIME BE
10  AMENDED, TO THE EXCLUSION OF ANY DIFFERENT OR
    INCONSISTENT STATE OR LOCAL LAW, ORDINANCE, OR JUDICIAL
11  RULE; AND TO THE EXTENT THAT ANY STATE OR LOCAL LAW,
    ORDINANCE, OR JUDICIAL RULE; SHALL BE INCONSISTENT WITH
12  ANY PROVISION OF THE RULES OF THE ARBITRAL ASSOCIATION
    UNDER WHICH THE ARBITRATION PROCEEDING SHALL BE
13  CONDUCTED, THE LATTER RULE SHALL GOVERN THE CONDUCT OF
    THE PROCEEDING.**

14

15  Each of the Ranchwood Plaintiffs also initialed subdivision

16  (g) of paragraph 21, which states:

17  **NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE
    AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS
18  INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION
    DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY
19  CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU
    MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT
20  OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE
    GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL,
21  UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE
    'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO
22  SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION,
    YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY
23  OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR
    AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**

24  **WE HAVE READ AND UNDERSTOOD THE FOREGOING AND AGREE TO
    SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN
25  THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL
    ARBITRATION.**

26

27  Reproductions of the original Purchase Agreement and Escrow

28  Instructions signed by each Ranchwood Plaintiff have been

3

1  submitted in hard copy.  *See* Doc. 220.

2      Ranchwood Defendants demanded that Ranchwood Plaintiffs

3  voluntarily submit the Seventeenth and Twentieth Causes of Action

4  to binding arbitration.  *See* Decl. of Stephen E. Carroll, Doc.

5  164, ¶¶ 4-10.  Ranchwood Plaintiffs refused.  *Id*. at ¶10.

6

7                    III.  **DISCUSSION**

8      A.      **Federal Arbitration Act**.

9      A motion to compel arbitration is governed by the Federal

10  Arbitration Act ("FAA"), 9 U.S.C. §§ 1, 2, which provides:

11          A written provision in any ... contract evidencing a
            transaction involving commerce to settle by arbitration
12          a controversy thereafter arising out of such contract
            or transaction, or the refusal to perform the whole or
13          any part thereof, or an agreement in writing to submit
            to arbitration an existing controversy arising out of
14          such a contract, transaction, or refusal, shall be
            valid, irrevocable, and enforceable, save upon such
15          grounds as exist at law or in equity for the revocation
            of any contract.
16
    § 2.  "Commerce" is defined as:
17
            [C]ommerce among the several States or with foreign
18          nations, or in any Territory of the United States or in
            the District of Columbia, or between any such Territory
19          and another, or between any such Territory and any
            State or foreign nation, or between the District of
20          Columbia and any State or Territory or foreign nation,
            but nothing herein contained shall apply to contracts
21          of employment of seamen, railroad employees, or any
            other class of workers engaged in foreign or interstate
22          commerce.

23  § 1.

24      The "interstate commerce" provision has been interpreted

25  broadly, embracing any agreement that in its operation directly

26  or indirectly affects commerce between states in any fashion.

27  *See, e.g., Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S.

28  265, 277-282 (1995)(termite protection contract "involved

                            **4**

commerce" under the FAA because pest control firm was multi-state and shipped materials from outside state).  Where building and construction activities utilize out-of-state materials and/or subcontractors, interstate commerce is implicated.  *United States v. Andrini*, 685 F.2d 1094, 1096 (9th Cir. 1982) ("[C]onstruction of a commercial office building using out-of-state materials is a commercial activity affecting interstate commerce" for the purpose of federal criminal statute prohibiting malicious damage or destruction, by means of an explosive, of any building or property used in interstate commerce or in any activity affecting interstate commerce); *Hyundai Am. Inc., v. Meissner & Wurst GmbH & Co.*, 26 F. Supp. 2d 1217, 1219 (N.D. Cal. 1998)(construction contract involving interstate subcontractors and goods is subject to the FAA).  Here, it is undisputed that Ranchwood Defendants utilized materials produced in other states and that travteled interstate, to construct the single family residences purchased by the Ranchwood Plaintiffs.  Salha Dec. at ¶ 28.

Moreover, the Arbitration Provision specifically provides that the FAA shall govern its enforcement.  Salha Dec., Ex. A-X.  Parties are free to specify the controlling law in arbitration agreements, and courts will honor such agreements.  *Volt Info. Sciences. v. Stanford Univ.*, 489 U.S. 468, 479 (1989); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 87 (2002) (noting "[u]nder Volt, when an arbitration agreement contains a choice-of-law provision, that provision must be honored, and a court interpreting the agreement must follow the law of the jurisdiction selected by the parties."); *Ottawa Office Integration, Inc. v. FTF Business Systems, Inc.*, 132 F. Supp. 2d

215, 219 (S.D.N.Y. 2001)(applying the FAA to review of an arbitration agreement "because the Arbitration Agreement specifically provides for the FAA to govern the arbitration"). The FAA governs applicability of the Arbitration Provision at issue in this case, as it is specifically made applicable to the exclusion of inconsistent state or local law.

The FAA is a "congressional declaration of a liberal Federal policy favoring arbitration agreements." *Moses H. Cohn Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). "The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id*. The Act "thus establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate." *Shearson/ Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal citations and quotations omitted); *see also Kuehner v. Dickenson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (recognizing that the FAA "created a rule of contract construction favoring arbitration.").

Arbitration agreements are not always valid, however. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 107 (9th Cir. 2007). In assessing whether an arbitration agreement or clause is enforceable, a reviewing court "should apply ordinary state-law principles that govern the formation of contracts." *Id*. Although doubts concerning the scope of arbitrable issues are generally resolved in favor of arbitration, *Moses H.*, 460 U.S. at 24-25, "the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who have agreed to arbitrate certain claims from excluding other claims

6

from the scope of their arbitration agreement." *Volt*, 489 U.S. 468, 478 (1989) (citations omitted). "The parties, not the courts, decide whether and to what extent their disputes will be subject to binding arbitration." *Bldg. Materials and Constr. Teamsters Local No. 216 v. Granite Rock Co.*, 851 F.2d 1190, 1194-95 (9th Cir.), cert. denied, 488 U.S. 986 (1988).

B.  <u>Application of the FAA to the Ranchwood Arbitration Provision</u>.

The Ranchwood Defendants argue that, with the exception of those portions of the Seventeenth and Twentieth Claims that allege bodily injury, the Ranchwood Plaintiffs' claims fall within the scope of the Arbitration Provision. The Ranchwood Plaintiffs rejoin that the Arbitration Provision should not apply to any part of either claim because (a) those claims concern bodily injury expressly exempted from the Arbitration Provision, and (b) application of the Arbitration Provision would be unconscionable.

1.  <u>The Bodily Injury Exception</u>.

The Arbitration Provision, contained within paragraph 21 of the standard form contract signed by each original purchaser, calls for submission of a broad range of claims to arbitration.

> IF THE PRE-LITIGATION PROCEDURES DESCRIBED ABOVE FAIL TO RESOLVE ANY DISPUTE, <u>IT IS HEREBY AGREED THAT ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSIES BY OR BETWEEN THE BUYER AND SELLER ARISING FROM OR RELATING TO THE PROPERTY, OR TO ANY DEFECT AND/OR TO THE SUBJECT HOME OF THE PROPERTY, OR THE SALE OF THE PROPERTY BY THE SELLER, INCLUDING WITHOUT LIMITATION, ANY CLAIM OF BREACH OF CONTRACT, NEGLIGENT, OR INTENTIONAL MISREPRESENTATION OR NON-DISCLOSURE IN THE INDUCEMENT, EXECUTION OR PERFORMANCE OF ANY CONTRACT, INCLUDING</u>

7

THIS ARBITRATION AGREEMENT, AND BREACH OF ANY ALLEGED DUTY OF GOOD FAITH AND FAIR DEALING, SHALL BE SUBMITTED TO BINDING ARBITRATION IN ACCORDANCE WITH THE FOLLOWING TERMS. THE PARTIES EXPRESSLY AGREE THAT THIS ARBITRATION PROVISION INVOLVES AND CONCERNS INTERSTATE COMMERCE AND IS GOVERNED BY THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, (9 U.S.C. § 1, ET SEQ.) NOW IN EFFECT AND AS THE SAME MAY FROM TIME TO TIME BE AMENDED, TO THE EXCLUSION OF ANY DIFFERENT OR INCONSISTENT STATE OR LOCAL LAW, ORDINANCE, OR JUDICIAL RULE; AND TO THE EXTENT THAT ANY STATE OR LOCAL LAW, ORDINANCE, OR JUDICIAL RULE; SHALL BE INCONSISTENT WITH ANY PROVISION OF THE RULES OF THE ARBITRAL ASSOCIATION UNDER WHICH THE ARBITRATION PROCEEDING SHALL BE CONDUCTED, THE LATTER RULE SHALL GOVERN THE CONDUCT OF THE PROCEEDING.

(Emphasis added.)

Subparagraph (e) contains an exception for claims asserting bodily injury or wrongful death: "NOTWITHSTANDING THE PROVISIONS OF THIS SECTION, THIS AGREEMENT FOR ARBITRATION SHALL NOT PRECLUDE OR LIMIT ANY RIGHT OF ACTION FOR BODILY INJURY OR WRONGFUL DEATH, OR ANY RIGHT OF ACTION TO WHICH SECTION 337.1 OR 337.15 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE IS APPLICABLE."[2] (Emphasis added.)  Ranchwood Plaintiffs argue that this language renders the Arbitration Provision inapplicable to the entire Seventeenth and Twentieth Claims.  The Ranchwood Defendants concede that this provision exempts claims for bodily injury or

_____

[2]   California Code of Civil Procedure sections 337.1 and 337.15 deal with the statute of limitations for actions for patent deficiency in design seeking damages from persons "performing or furnishing designs, specifications, surveying, planning, or observation of construction or construction of improvement to real property" (§ 337.1) or for damages for latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of real property (§ 337.15).  There is no suggestion that either provision applies here.

8

wrongful death from mandatory arbitration, but suggest that the
Seventeenth and Twentieth Claims contain a number of sub-claims,
most of which have nothing to do with bodily injury, and which
must be submitted to arbitration.

The Seventeenth Claim for Negligent Failure to Disclose
alleges:

> 211. Plaintiffs reallege, refer to, and herein
> incorporate by reference as if set out in full
> Paragraphs 1 - 39 as set forth above.

> 212. At all times mentioned herein, [Ranchwood
> Defendants] had a legal duty to disclose to potential
> buyers of homes in the EL CAPITAN ESTATES and HOLLYWOOD
> PARK ESTATES, including but not limited to the
> RANCHWOOD PLAINTIFFS herein, any fact materially
> affecting the value and desirability of the homes and
> real property being developed, sold, advertised and
> promoted by [Ranchwood Defendants] including, but not
> limited to, any environmental hazards on or near the
> property; any soil or water contamination on or near
> the property; and/or any nuisance on or near the real
> property being developed, sold, advertised and promoted
> by [Ranchwood Defendants].

> 213. At all times relevant to this action, the EL
> CAPITAN ESTATES and HOLLYWOOD PARK ESTATES were located
> in close proximity to the former BAC facility which had
> experienced hazardous waste contamination including,
> but not limited to, hexavalent chromium, Arsenic,
> Copper, PCP, petroleum constituents and associated
> solvents that had contaminated ground water in and
> around the EL CAPITAN ESTATES and HOLLYWOOD PARK
> ESTATES. Upon information and belief, [Ranchwood
> Defendants], by and through their agents and employees,
> knew or should have known through a reasonably
> competent and diligent inspection, of the extent of the
> contamination at the site and at or near the EL CAPITAN
> ESTATES and HOLLYWOOD PARK ESTATES contamination
> presented a potential risk to the health and safety of
> residents in the area as well as the potential for soil
> and ground water contamination of the real property
> being developed, sold, advertised and promoted by
> [Ranchwood Defendants]. Further, [Ranchwood Defendants]
> knew or should have known that the close proximity of
> the contamination site, as well as the potential and
> real threat of migrating contamination, was a fact
> materially affecting the value and desirability of the
> real property being developed, sold, advertised and
> promoted by [Ranchwood Defendants].

9

214. Notwithstanding [Ranchwood Defendants'] legal duty as identified above, [Ranchwood Defendants] failed to disclose to any potential home buyers in the EL CAPITAN ESTATES and HOLLYWOOD PARK ESTATES including the RANCHWOOD PLAINTIFFS named in this action, of the existence of the contamination at the BAC facility and its close proximity to the real property being sold by [Ranchwood Defendants]. The RANCHWOOD PLAINTIFFS were ignorant of such facts and had they been informed, they would not have purchased homes from [Ranchwood Defendants] in that area, and would not have suffered the damages hereinafter alleged.

215. Upon information and belief, such contamination and pollutant migration from the BAC facility has been occurring on an ongoing basis since at least the 1960s but the RANCHWOOD PLAINTIFFS were ignorant of such contamination, pollution, and/or the imminent threat of such contamination or pollution from the BAC facility until their receipt of the "Fact Sheet, February 2007" issued by the California Regional Water Quality Board, mailed to the RANCHWOOD PLAINTIFFS in or about February 2007. Prior to this time, the RANCHWOOD PLAINTIFFS were unaware of the BAC facility and of [Ranchwood Defendants'] failure to disclose the material facts known to them or those which should have been known to them had [Ranchwood Defendants] performed a reasonably competent and diligent inspection of the property and surrounding property.

216. As a legal cause of [Ranchwood Defendants'] breach of the duty to disclose, the RANCHWOOD PLAINTIFFS <u>have suffered and will continue to suffer decreased market value, stigma damage and loss of habitability of their residences</u>, all in an amount according to proof.

217. As a further legal cause of the negligent failure to disclose as alleged above, <u>RANCHWOOD PLAINTIFFS' real property was contaminated or faces imminent danger of being contaminated with pollutants such that plaintiffs have been prevented from the use and enjoyment of their property</u>, all to their damage according to proof.

218. As a further legal cause of the negligent failure to disclose as alleged above, RANCHWOOD PLAINTIFFS have suffered and will continue to suffer <u>economic losses, including, but not limited to wage loss, loss of past and future income, loss of rental income, relocation expenses, clean-up costs and business interruption losses</u>, in an amount according to proof.

219. As a further legal cause result of the negligent failure to disclose as alleged above, RANCHWOOD PLAINTIFFS have suffered and will continue to suffer

10

**personal injuries. As such, plaintiffs have incurred and will continue to incur medical and related expenses, including medical monitoring expenses, all in an amount according to proof.**

**220. As a further legal cause of the negligent failure to disclose as alleged above, plaintiffs have suffered and will continue to suffer emotional distress, anxiety, fear of illness, depression and other psychological, emotional and mental injuries resulting from defendants' failure to disclose.**

First Amended Complaint ("FAC") ¶¶ 216-220 (emphasis added).

Within the Negligent Failure to Disclose claim, Ranchwood Plaintiffs assert injury in the form of: (1) decreased market value to their homes, stigma damage, and loss of habitability of their homes; (2) prevention from the use and enjoyment of their homes; (3) economic losses in the form of lost wages, loss of income, loss of rental income, relocation expenses, clean-up costs, and business interruption losses; (4) personal injuries; and (5) emotional distress.  The Twentieth Claim for Relief, entitled "Concealment" seeks damages for the same five categories of injury.  FAC ¶¶ 279-83.

The Ranchwood Plaintiffs appear to take the position that because personal injury is one of the five categories of injury asserted in this claim, the Arbitration Provision in inapplicable to the entire claim.  Plaintiffs offer no authority, logic, or argument explaining why this conclusion is required.

Ranchwood Defendants argue that the various forms of injury contained within the Seventeenth and Twentieth Claims for Relief should be treated as separate causes of action for purposes of applying the Arbitration Provision, regardless of Plaintiffs' decision to group them together for drafting purposes.  Ranchwood Defendants look to California's primary right theory to support

11

their assertion that a cause of action is not defined by the way in which a complaint is drafted; rather, a court must examine the primary rights alleged to have been violated by defendants' wrongful act(s).

> The manner in which a plaintiff elects to organize his or her claims within the body of the complaint is irrelevant to determining the number of causes of action alleged under the primary right theory. If a plaintiff states several purported causes of action which allege an invasion of the same primary right he has actually stated only one cause of action. On the other hand, if a plaintiff alleges that the defendant's single wrongful act invaded two different primary rights, he has stated two causes of action, and this is so even though the two invasions are pleaded in a single count of the complaint.

*Hindin v. Rust*, 118 Cal. App. 4th 1247, 1257-58 (2004).  *Hindin* succinctly explains the primary right theory:

> Whether a complaint in fact asserts one or more causes of action for pleading purposes depends on whether it alleges invasion of one or more primary rights. The primary rights theory is a theory of code pleading that has long been followed in California. It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.  As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised.

*Id.* at 1257 (internal citations and quotations omitted).

Under the primary rights theory, injury to one's person gives rise to a cause of action that is "separate and distinct" from that which arises out of injury to one's property.  *Holmes v. David H. Bricker, Inc.*, 70 Cal. 2d 786, 788-89 (1969).  One concerns a "violation of the right to freedom from legally

impermissible interference with the integrity of the person" and the other a "violation of the right to quiet enjoyment of property."  *Id*.

But, the primary right theory "has a fairly narrow field of application," having been "invoked most often when a plaintiff attempts to divide a primary right and enforce two suits." *Crowley v. Katleman*, 8 Cal. 4th 666, 682 (1994).

> The [primary rights] theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata. The latter application of the primary right theory appears to be most common: numerous cases hold that when there is only one primary right an adverse judgment in the first suit is a bar even though the second suit is based on a different theory.

*Id*. (internal citations omitted).  Ranchwood Defendants offer no authority suggesting the primary rights theory is applicable in the present circumstances, where the issue is whether a "bodily injury" exception to an arbitration agreement applies to certain causes of action seeking relief for other types of injury.

Despite the possible inapplicability of the primary rights theory to this dispute, the Ranchwood Defendants' argument is nonetheless valid.  The general rule is that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*, 460 U.S. at 24-25.  In this light, the "bodily injury" exception applies only to the bodily injury portions of the Seventeenth and Twentieth Causes of action.  The remaining alleged injuries are separate from and not affected by the exception and are therefore subject to the

13

Arbitration Provision.  Specifically, Ranchwood Plaintiffs allege (1) decreased market value to their homes, stigma damage, and loss of habitability of their homes; (2) prevention from the use and enjoyment of their homes; and (3) economic losses in the form of lost wages, loss of income, loss of rental income, relocation expenses, clean-up costs, and business interruption losses.  The bodily injury exception cannot reasonably be applied to these claims.

Ranchwood Plaintiffs also allege they suffered emotional distress.  Under California Law, emotional distress claims are not considered claims of "bodily injury." *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 774-80 (2006) (emotional distress not considered "bodily injury" for purpose of determining applicability of "bodily injury" exclusion from arbitration agreement in home purchase contract).

Plaintiffs' claims for property damage, economic losses (six types), and emotional distress are subject to the Arbitration Provision, if it is enforceable.

### 2.   <u>Unconscionability</u>.

The Ranchwood Plaintiffs also argue that the Arbitration Provision is unconscionable to prevent its enforcement.  The FAA incorporates state law principles governing the formation of contracts, including contract defenses such as fraud, duress, or unconscionability. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  The Ninth Circuit reviewed California's unconscionability doctrine:

Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000); *Nagrampa [v. MailCoups, Inc.]*, 469 F.3d [1257,] 1280 [2006]. Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690. Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id*. (*quoting Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138, 145 (1997)).

*Davis*, 485 F.3d at 1072-73.


a.   Procedural Unconcsionability.

"The procedural unconscionability analysis focuses on 'oppression' or 'surprise.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006)(en banc).   "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."   *Id*. (internal citations and quotations omitted).


(1)   Oppression.

The Ninth Circuit explains the application of the "oppression" aspect of the procedural unconscionability analysis in *Nagrampa*:

The threshold inquiry in California's unconscionability analysis is "whether the arbitration agreement is adhesive." *Armendariz*, 24 Cal.4th at 113. A contract of adhesion is defined as "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 93

15

Cal.App.4th at 853. The California Court of Appeal has held that "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Id.*; *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir.2002) ("The DRA is procedurally unconscionable because it is a contract of adhesion: a standard-form contract ...."); *Aral v. EarthLink, Inc.*, 134 Cal.App.4th 544, 557 (2005) (finding "quintessential procedural unconscionability" where "the terms of the [arbitration] agreement were presented on a 'take it or leave it' basis ... with no opportunity to opt out"). However, the California courts have also held that though "adhesion contracts often are procedurally oppressive, this is not always the case." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1320 (2005); *see also Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758, 769 (1989) ("While we recognize significant overlap between the two concepts [adhesion and oppression], we are not prepared to hold that they are identical."). <u>Under current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present. However, both standards for procedural unconscionability are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to "an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice</u>." *Flores*, 93 Cal.App.4th at 853.

*Nagrampa*, 469 F.3d at 1281 (parallel citations omitted)(emphasis added).  The critical factor in procedural unconscionability is "the manner in which the contract or the disputed clause was presented and negotiated."  *Id.* at 1282.

Procedural unconscionability focuses on the manner in which the disputed clause is presented to the party in the weaker bargaining position. When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present.

*Id.* (*quoting Szetela v. Discover Bank*, 97 Cal. App.4th 1094 (2002)).

*Nagrampa* involved a franchise agreement that contained an arbitration provision.  The franchisee argued that the

**16**

arbitration provision was unconscionable.  California courts have "long recognized that franchise agreements have some characteristics of contracts of adhesion because of the 'vastly superior bargaining strength' of the franchisor."  *Id*.  *Nagrampa* is therefore not factually analogous to the instant case.

Ranchwood Defendants cite *Trend Homes, Inc. v. Superior Court*, 131 Cal. App. 4th 950 (2005), which applies the unconscionability doctrine to a judicial reference provision included in home sale purchase contracts.  *Trend Homes* first confirmed that, while "the party who prepared and submitted a contract containing unexpected or harsh terms" bears the burden of showing the other party had notice of them, "the party asserting unconscionability as a defense has the burden of establishing that condition."  *Id*. at 956.  Here, Ranchwood Plaintiffs do not suggest they lacked notice.  It is undisputed that the Ranchwood Plaintiffs all initialed subdivision (g) of the Arbitration Provision, which states:

> NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.
>
> WE HAVE READ AND UNDERSTOOD THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

Ranchwood Plaintiffs therefore bear the burden of establishing unconscionability.

*Trend Homes* concludes that the validity and enforceability of judicial reference provisions in home purchase contracts must be determined on a case-by-case basis.  131 Cal. App. 4th at 956. *Trend Homes* reviews several cases applying this approach, including *Greenbriar Homes Cmtys., Inc. v. Superior Court,* 117 Cal. App. 4th 337, 345 (2004); *Woodside Homes of Cal., Inc. v. Superior Cour,* 107 Cal. App.4th 723, 736 (2003); *Pardee Construction Co. v. Superior Court*, 100 Cal. App. 4th 1081, 1086 (2002).

Oppression was found to exist in *Pardee Construction Co. v. Superior Court*, 100 Cal. App. 4th 1081 (2002), despite the absence of specific evidence of adhesion, because the developer conceded that every purchase agreement for the challenged 800-unit development included the judicial reference provision.  The *Pardee* court reasoned that "[b]y ... acknowledging that none of the hundreds of home purchasers struck out the judicial reference provision, Pardee [] effectively admitted the parties' agreements were adhesive."  *Id*. at 1087.  In addition, the *Pardee* court assumed from the circumstances that potential buyers of Pardee's homes were in the <u>entry-level</u> home market, and, as such, "were unlikely to have significant economic bargaining power against [the] developer...."  *Id*. (emphasis added)  Because "judicial reference provisions were contained in agreements for purchase of all homes in Pardee's large development, plaintiffs had little choice other than to sign those agreements as presented by Pardee."  *Id*.

18

> [T]he situation presented each buyer with "a
> take-it-or-leave-it proposition"; and since each buyer
> was "buying a house," not "a piece of sporting
> equipment" or some other "regular type of product,"
> factors such as "location," "view," and "set-back" made
> it "a pretty unique purchase," one that "for most
> people" is "the biggest purchase they will ever make in
> their life." The court also stated that "as a practical
> matter," Pardee's argument that plaintiffs "can go
> elsewhere if they don't like it" flies "in the face" of
> "the uniqueness of a home."

*Id*.

In contrast, the *Greenbriar* court refused to find judicial reference provisions contained within residential purchase agreements procedurally unconscionable, because there was "no evidence the original parties had no meaningful choice not to agree to the reference, or that any of them attempted to negotiate this provision and were rebuffed." 117 Cal. App. 4th at 374.

Similarly, *Woodside* found that "most, if not all, of the procedurally unconcionable factors found to exist in Pardee" to be absent. 107 Cal. App. 4th at 728-29. First, the developer in *Woodside* "merely asserted that all of the plaintiffs in this action had initialed and accepted the provisions for judicial reference -- there was no concession that no buyer had stricken them. Nor was there any evidence concerning any buyer's disagreement or attempt to reject the provisions." *Id*. Moreover, the homes in *Woodside*, "ranged in price from $189,900 to $251,490, with only two of the 11 priced below $220,000. There was no evidence that this was 'entry level' or 'mid-level' or 'upper level,' and no evidence concerning the availability of similarly-priced housing stock in the region." The *Woodside* court contrasted the situation faced by plaintiffs purchasing

Woodside Homes with that of potential employees presented with an employment contract containing an arbitration clause, noting that, unlike with home purchasers, the California Supreme Court assumes that "few employees are in a position to refuse a job because of an arbitration requirement." *Id.* at 729. The *Woodside* court did assume, *arguendo*, an "imbalance in bargaining power," because "Woodside, as the stronger party, presumably prepared the contracts with an eye to its own advantage" and likely "would not have countenanced the striking of the judicial reference provisions." *Id.* at 730. Nevertheless, *Woodside* concluded that this would only constitute a "low level of procedural unconscionability," because no element of surprise was present. *Id.*

*Trend Homes* followed *Greenbriar* and *Woodside*, refusing to find the judicial reference provision oppressive, reasoning that the buyers "offered no evidence that they attempted to negotiate the provision and were rebuffed, or that they had no meaningful choice but to agree to the provision." *Id.* at 958. *Trend Homes* also distinguished *Pardee* on the ground that *Trend* "did not concede that no buyer had stricken the [judicial reference] provision" and "there [was] no evidence the provision was included in every purchase agreement within the development or that Trend denied any buyer's request to strike the provision." 131 Cal. App. 4th at 958-59. In addition, the *Trend Homes* court noted that there was "no evidence concerning the availability of similarly priced housing in the area." *Id.* at 959.[3]

---

[3]   "The availability in the marketplace of substitute employment, goods, or services <u>alone</u>" cannot defeat a claim of

procedural unconscionability. *Nagrampa*, 469 F.3d at 1283 (*quoting Martinez v. Master Protection Corp*, 118 Cal. App. 4th 107, 114 (2004). For example, in *Villa Milano Homeowners Ass'n v. Il Davorge*, 84 Cal. App. 4th 819, 826-27 (2000), cited in *Nagrampa*, 469 F.3d at 1283, and *Trend Homes*, 131 Cal. App. 4th at 959, the California Fourth District Court of Appeals found a declaration of covenants, conditions and restrictions ("CC & Rs") containing an arbitration clause to be an adhesion contract, despite the condominium developer's argument that the homeowners could have purchased property in a different development where no arbitration clause would apply. The *Villa Milano* court first found that California law left open the possibility that a contract could be considered adhesive even if the weaker party could reject the terms and go elsewhere. 84 Cal. App. 4th at 826-27. Rather, regardless of the existence of other options, an adhesion contract may exist where a form contract imposed by the party with superior bargaining power prohibits negotiation of terms and leaves the other party only to "take it or leave it." *Id*. at 827. The *Villa Milano* court found that procedural unconscionability was "obvious" under the circumstances:

> The Villa Milano CC & R's were drafted in toto by the developer and recorded years before the purchasers ever came to buy. There was no possibility that individual buyers could negotiate CC & R's amendments applicable only to their own properties. Rather, it was an all or nothing proposition. Each and every buyer took subject to the same set of CC & R's, or made no purchase at the development at all. There being absolutely no opportunity to negotiate, there was no meaningful choice, or for that matter any choice, as to the terms of the CC & R's

*Id*. at 828-29.

*Trend Homes* distinguishes *Villa Milano* on the ground that the CC & Rs containing the arbitration provision were recorded <u>before</u> the homebuyers purchased *their homes*, whereas the *Trend Homes* buyers entered into the agreements at the time they purchased their homes, giving them an "opportunity to negotiate with respect to any provision contained" in the agreements. 131 Cal. App. 4th at 959. Similarly, the Ranchwood Plaintiffs entered into the purchase agreement containing the Arbitration Provision at the time they or their predecessors in interest purchased their home. There is no evidence that any original purchaser objected to the Arbitration Provision or attempted to modify it.

1    Here, it is undisputed that the Arbitration Provision was

2  present in the purchase agreements signed by each of the

3  Ranchwood Plaintiffs.  However, there is no evidence regarding

4  the contents of other purchase agreements in the development, or

5  that efforts made by the Ranchwood Plaintiffs to modify the terms

6  of their purchase agreements were rebuffed.  Nor is their

7  evidence of the unavailability of similarly priced housing in the

8  area.  The purchase of a home is a major commitment of resources

9  by the home buyer.  Many consult attorneys to review the

10 documents of purchase and sale.  At best, there is a "low level"

11 of procedural unconscionability based upon the imbalance of

12 bargaining power.

13

14              (2)   Surprise.

15   "[S]urprise involves the extent to which the supposedly

16 agreed-upon terms are hidden in a prolix printed form drafted by

17 the party seeking to enforce them."  *Nagrampa,* 469 F.3d at 1281.

18 Surprise will not exist where the provision is clearly written,

19 easily understood, and conspicuously placed.  For example, In

20 *Greenbriar,* no element of surprise existed because the judicial

21 reference provision "is written clearly in the same sized font as

22 the rest of the agreement, and is easily understood. The

23 provision was not buried in the agreement, but in fact appeared

24 at a location where the purchaser was almost certain to see

25 it-immediately above where the purchaser would sign the

26 agreement."  117 Cal. App.4th at 345.

27   Similarly, in *Trend Homes*, there was no element of surprise,

28 because the judicial reference "provision is clearly written,

entirely capitalized, and easily understood."  131 Cal. App. 4th

at 959.  Moreover, "[a]lthough the provision is on the eighth

page of the nine-page agreement, it could not be overlooked,

since both the buyer and seller placed their initials immediately

below the provision. This necessarily made real parties aware of

the existence of the judicial reference provision because they

had to initial the paragraph separately."  *Id.*

     In contrast, *Pardee* found that "the essential elements of

the judicial reference provisions, including the waiver of jury

trial, were buried in the form contracts drafted by Pardee."  The

Pardee court found the following specific flaws with the

agreement in that case:

> First, the judicial reference provisions in paragraph
> 15 of the parties' agreements were physically difficult
> to read as printed in dense, single-spaced capital
> letters. Further, the term "JUDICIAL REFERENCE " in
> paragraph 15's caption did not explain the essence of
> the judicial reference provisions or otherwise convey
> anything meaningful to an entry-level purchaser.
> Moreover, although accurate, the next term in paragraph
> 15's caption, "TRIAL BY JUDGE IN COURT OF COMPETENT
> JURISDICTION," was misleading as applying only in the
> event the judicial reference provisions were not
> enforced. Additionally, paragraph 15's caption did not
> mention that the purchaser was waiving the right to
> punitive damages.
>
> Finally, a significant element of the surprise
> component of paragraph 15's procedural
> unconscionability was the absence of any mention of
> referee's fees or responsibility for their payment,
> thus leaving open the potential that the buyers might
> be liable, in part or whole, for those fees. As counsel
> indicated at oral argument, a usual referee's fee in
> San Diego was $200 to $300 per hour. Unlike attorney
> fees contingent on some measure of plaintiffs' success,
> the referee's fees potentially owed by plaintiffs could
> likely accrue at that rate to an amount constituting
> heavy burdens for buyers of entry-level homes. Since
> savings in costs purportedly constituted a fundamental
> rationale for the judicial reference provisions, it is

1
2

       **particularly surprising that nothing in the caption or body of paragraph 15 mentioned referee's fees or responsibility for paying those fees.**

3   **100 Cal. App. 4th at 1090.**

4

5       **Ranchwood Plaintiffs assert in their opposition that the**
6   **element of surprise is present here because "the arbitration**
7   **clause is virtually impossible to read because it is printed in**
8   **tiny 6-point type."  Doc. 210 at 11.  Moreover, "all of the text**
9   **is printed in bold, and capitalized," preventing the clause from**
10  **standing out and "mak[ing] it more difficult to read because of**
11  **the absence in variation of size of the letters."  *Id*.  "Equally**
12  **problematic," according to Ranchwood Plaintiffs "is the manner in**
13  **which the text is condensed, so that there is virtually no white**
14  **space between the lines.  Even in single-space format, the clause**
15  **takes up more than one and one-half pages of text in a 12-point**
16  **font.  But the Ranchwood Defendants crammed it into almost half a**
17  **page on the Contracts."  *Id*.  In support of this argument,**
18  **Ranchwood Plaintiffs have embedded in their opposition brief, at**
19  **pages 3 and 4, a reproduction of the Arbitration Provision**
20  **asserted to be identical in font and density to the original**
21  **contracts.  Ranchwood Defendants dispute the accuracy of this**
22  **reproduction, asserting that the original arbitration provision**
23  **is approximately twice the size of the reproduction presented in**
24  **Plaintiffs' brief.  Doc. 213 at 10.**

25      **A recently-filed hard copy of one of the purchase agreements**
26  **shows that the type used for the Arbitration Provision (Paragraph**
27  **21) is big enough to be readable.  The entire Provision is**

28

**24**

capitalized, which distinguishes it from most of the other sections above and below it.[4]  Moreover, the Provision begins with the underscored heading "<u>Arbitration Agreement</u>."  This is fair notice to prevent surprise.

Alternatively, Ranchwood Plaintiffs assert that "surprise" is present here because the structure and content of the Arbitration Provision render it confusing.  For example, Ranchwood Plaintiffs note that "the agreement adopts three different sets of rules, and then contains a fourth provision that states that, notwithstanding its provisions specifying the manner in which the arbitration would be conducted, and the rules to be used, either party could elect to have the Better Business Bureau arbitrate the dispute."  Doc. 210 at 12.  Ranchwood Plaintiffs' also point out that "[t]here is no mechanism provided for how the actual rules would be selected ... [and] no specification of whether there will be one or three arbitrators, a factor that can make a huge difference in the cost of the arbitration."  *Id.*[5]

---

[4]  A few other sections in the agreement are capitalized, including sections concerning "buyer's default/liquidated damages" and "arbitration of liquidated damages disputes," along with a single paragraph on "Disclaimer of other Warranties." But, capitalization is the exception, not the norm, in this document.

[5]  Subparagraph (a) of the Arbitration Provision states that the "ARBITRATION SHALL BE CONDUCTED [IN] ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, OR WITH THE STREAMLINED OR THE COMPREHENSIVE RULES AND REGULATIONS OF JAMS/ENDISPUTE."  It further provides that any arbitration award may be "ENFORCED AND CONFIRMED PURSUANT TO A

1      Ranchwood Defendants do not directly address this

2  "confusion" argument, but the provision is not inherently

3  confusing.  It merely offers the parties alternatives.  The

4  provision is clearly stated as an arbitration term.  The final

5  paragraph, which explains the consequences of the provision, is

6  highlighted by the word "Notice" and requires the buyers'

7  initials.

8      Any procedural unconscionability here is "low level" at

9  best.

10

11  _____

12  PETITION FILED UNDER CODE OF CIVIL PROCEDURE SECTION 1285, ET
    SEQ." (a reference to the California Arbitration Act).

13

14      Subparagraph (b) contains a detailed description of the
    manner in which the arbitration will be conducted, followed by

15  several exemptions which state:

16          (c)   NOTWITHSTANDING ANY OF THE FOREGOING PROVISIONS,
            EITHER PARTY MAY USE SMALL CLAIMS COURT AS AN

17          ALTERNATIVE TO ARBITRATION, IF THE AMOUNT IN
            CONTROVERSY IS WITHIN THE JURISDICTIONAL LIMITS OF

18          SMALL CLAIMS COURT.

19
            (d)   NOTWITHSTANDING ANY OF THE FOREGOING PROVISIONS,
20          EITHER PARTY MAY USE THE BETTER BUSINESS BUREAU'S
            BINDING ARBITRATION SERVICES, IN ACCORDANCE WITH THE
21          BETTER BUSINESS BUREAU'S RULES OF ARBITRATION,
            ADMINISTERED THROUGH THE COUNCIL OF BETTER BUSINESS
22          BUREAUS, INC.

23
            (e)   NOTWITHSTANDING THE PROVISIONS OF THIS SECTION,
24          THIS AGREEMENT FOR ARBITRATION SHALL NOT PRECLUDE OR
            LIMIT ANY RIGHT OF ACTION FOR BODILY INJURY OR WRONGFUL
25          DEATH, OR ANY RIGHT OF ACTION TO WHICH SECTION 337.1 OR
            337.15 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE IS
26          APPLICABLE.

27

28
                              26

b.   <u>Substantive Unconcsionability</u>.

"An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided' results." *Nagrampa*, 469 F.3d 1280-81 (*quoting Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).)  "[T]he paramount consideration in assessing conscionability is mutuality."  *Id.* (*quoting Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)).  "California law requires an arbitration agreement to have a 'modicum of bilaterality.'"  *Id.* (*quoting Armendariz*, 24 Cal.4th at 117).  Arbitration provisions that are "'unfairly one-sided' are substantively unconscionable." *Id.* (*quoting Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (2003)).

Here, the Ranchwood Plaintiffs maintain that the Arbitration Provision is substantially unconscionable because: (1) it precludes discovery, (2) it allows either party to force an arbitration under the rules of the Better Business Bureau; (3) arbitration in general tends to produce lower awards for claimants than they would receive if they pursued their claims in court; and (4) arbitration tends to increase costs incurred by claimants.

(1)   <u>Limitations on Discovery</u>.

Ranchwood Plaintiffs first assert that the Arbitration Provision is substantively unconscionable because it "precludes discovery."  Doc. 210 at 12.  This is not an entirely accurate description of the provision.  Subparagraph (g) of the Arbitration Provision provides:

**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. <u>BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION.</u> IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**

(Emphasis added.)  Accordingly, if the applicable arbitration rules provide for discovery, discovery may be available.  In this case, the parties have already agreed that if arbitration proceeds it will commence pursuant to the rules and regulations of Jams/Endispute, which provide that each party may take one (1) deposition as a matter of right, and that additional depositions may be permitted upon a showing of "reasonable need."  (Decl. of Christopher S. Hall, Doc. 216-2, at ¶4 and Ex. B.)

Ranchwood Plaintiffs cite *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008), in which an arbitration agreement that "severely limit[ed]" the parties' rights to discovery was found to be substantively unconscionable. *Ontiveros* explains that, while "[a]dequate discovery is indispensible to vindication of statutory claims.... adequate discovery does not mean unfettered discovery.... [P]arties may agree to something <u>less</u> than the full panoply of discovery...." *Id.* at 512 (emphasis in original).  Nevertheless, as between employers and employees, "arbitration agreements must ensure

28

minimum standards of fairness, so employees can vindicate their public rights." *Id*.

The *Ontiveros* court looked to *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004), for guidance.

> In *Fitz* [] the arbitration agreement limited discovery to the sworn deposition statements of two individuals and any expert witnesses expected to testify at the arbitration hearing, unless the arbitrator found a "compelling need" to allow other discovery, i.e., unless the parties could demonstrate that a fair hearing would be "impossible" without additional discovery. ([118 Cal. App. 4th at] 709, 716.) The appellate court held that the discovery provision was unlawful, explaining: "Though [the employer] contends that the [arbitration agreement's] limits on discovery are mutual because they apply to both parties, the curtailment of discovery to only two depositions does not have mutual effect and does not provide Fitz with sufficient discovery to vindicate her rights. 'This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses.' [citations]([Id.] at 716.)
>
> The court further stated that the only way Fitz could "gain access to the necessary information to prove the claim is to get permission from the arbitrator for additional discovery. However, the burden the [arbitration agreement] imposes on the requesting party is so high and the amount of discovery the [agreement] permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery." ([Id. at] 717-718.)

*Ontiveros*, 164, Cal. App. 4th at 486-87.

The *Ontiveros* court followed *Fitz*, reasoning that the challenged agreement permitted the employee plaintiff to take the deposition of only one individual, despite counsel's estimate that plaintiff would need at least 15 to 20 depositions because

the case involves harassment at two job sites over the course of four years involving numerous employees.  *Id*. at 487.  Moreover, "the burden the agreement places on plaintiff to obtain further discovery is quite high, permitting additional discovery only by order of the arbitrator upon a showing of 'substantial need.'"  *Id*.  The *Ontiveros* court concluded that "as in *Fitz*, the permitted amount of discovery is so low while the burden for showing a need for more discovery is so high that plaintiff's ability to prove her claims would be unlawfully thwarted by the discovery provision in the agreement."  *Id*.

*Ontiveros* is distinguishable.  Here, the arbitration provision demands only a showing of "reasonable need" rather than "substantial need" to justify additional discovery beyond the default rule of one deposition per party.  Ranchwood Defendants point to other cases which hold that limitations on discovery do not render an arbitration provision unconscionable.  *See e.g., Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689-90 (2000) (rejecting argument that the mere fact that opportunities for discovery are limited under American Arbitration Association rules renders an arbitration agreement invoking those rules unconscionable).  "The fact that an arbitration may limit a party's discovery rights is not 'substantive unconscionability.' If it were, every arbitration clause would be subject to an unconscionability challenge on that ground."  *Id*.[6]  The discovery limitation is not unconscionable.

---

[6]   Ranchwood Plaintiffs also cite cases that stand for the proposition that limitations on discovery that negatively impact

**(2)  Language Re Better Business Bureau Arbitration.**

Ranchwood Plaintiffs next argue that subparagraph (d), which provides that "NOTWITHSTANDING ANY OF THE FOREGOING PROVISIONS, EITHER PARTY MAY USE THE BETTER BUSINESS BUREAU'S BINDING ARBITRATION SERVICES, IN ACCORDANCE WITH THE BETTER BUSINESS BUREAU'S RULES OF ARBITRATION, ADMINISTERED THROUGH THE COUNCIL OF BETTER BUSINESS BUREAUS, INC." renders the Arbitration Provision unconscionable.  Doc. 210 at 13.  According to Ranchwood Plaintiffs "[t]his provision, by its terms, trumps all the other provisions in the arbitration clause, including which rules apply, where the venue will be, how the costs will be allocated, and what remedies are available."  *Id.*

But, despite listing a litany of complaints about the Better Business Bureau ("BBB") process, Ranchwood Plaintiffs do not mention that the rules of the BBB only permit the BBB to arbitrate disputes premised on alleged deficiencies in the homes built by Ranchwood.  BBB Rules and Procedures, Rule 2, Hall Decl., Ex. A.  The claims in this case do not concern any alleged deficiencies in the homes purchased.  Accordingly, the BBB

---

employees more than they do the employer may be unconscionable. For example, *Kinney v. United HealthCare Services, Inc.*, 70 Cal. App. 4th 1322, 1332 (1999), reasoned: "Given that [the employer] is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against [the employer]." However, Ranchwood Plaintiffs fail to explain why or how this line of cases should apply here.

arbitration provision cannot possibly apply in this case. Ranchwood Plaintiffs' claims of substantive unconscionability on this ground are meritless.

### (3)   Tendency for Arbitration to Produce Lower Awards.

Ranchwood Plaintiffs argue that the Arbitration Provision is substantively unconscionable because arbitration tends to produce lower awards for claimants than they would receive if they pursued their claims in court, because a "repeat player" effect favors institutional consumers of ADR services. *See Armendariz*, 24 Cal. 4th at 115. The Ranchwood Plaintifffs admit that "without more, this tendency to produce lower outcomes for claimants is not enough to support a claim of unconscionability." *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 178-179 (2002). Here, however, there are no other factors weighing in favor of a finding of unconscionability.

### (4)   Increased Costs.

Finally, Ranchwood Plaintiffs assert that the Arbitration Provision is substantively unconscionable because arbitration forces additional expenses upon consumers who wish to vindicate their claims. Ranchwood Plaintiffs point out that the Arbitration Clause is silent on whether the arbitration will be conducted by a single arbitrator or a panel of three arbitrators, and lament that arbitrators are typically retired judges or attorneys who charge $350 to $500 per hour, or more. *See, e.g.,*

*Moore v. Conliffe*, 7 Cal. 4th 634, 668 (1994) (Baxter, J., dissenting).

Ranchwood Plaintiffs cite *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003), which held that an agreement providing for arbitration before the American Arbitration Association ("AAA") was unconscionable because of the high costs of utilizing that forum.  The fact that AAA rules allowed the arbitrator to apportion the fees and in cases of extreme hardship defer or waive the fees was not sufficient to overcome the finding of substantive unconscionability.  *Id*. at 91-92.

> To state it simply: it is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high.

*Id*. at 90.

Ranchwood Plaintiffs argue that the Arbitration Provision in this case should also be found to be unconscionable because it permits the use of AAA rules.  But, it is undisputed that Plaintiffs requested and Defendants agreed to utilize the Jams/Endispute service, which has different rules.  Moreover, even assuming arguendo that imposition of AAA's cost provisions is substantively unconscionable, the AAA cost provisions (or even the entire AAA clause), if unlawful, can be severed from the Arbitration Provision, allowing for enforcement of the remaining portions of the Arbitration Provision.  *See Id.* at 92

1  (acknowledging that an unconscionable costs provision could be
2  severed from an arbitration agreement).[7]

3      The Arbitration Provision, particularly given the manner in
4  which it was presented in the contracts and will be applied to
5  the claims in this case, is not substantively unconscionable.
6  Ranchwood Defendants' motion to compel arbitration is GRANTED as
7  to the Seventeenth and Twentieth Claims, with the exception of
8  the bodily injury aspects of those claims.

9

10      C.   <u>Request for a Stay</u>.

11      Ranchwood Defendants request that any remaining aspects of
12  the Seventeenth and Twentieth Claims be stayed pending outcome of
13  the arbitration.  Ranchwood Defendants do not seek a stay of
14  Plaintiffs' other claims against them.

15      Section 3 of the FAA provides:

16          If any suit or proceeding be brought in any of the
            courts of the United States upon any issue referable to
17          arbitration under an agreement in writing for such
            arbitration, the court in which such suit is pending,
18          upon being satisfied that the issue involved in such
            suit or proceeding is referable to arbitration under
19          such an agreement, shall on application of one of the
            parties stay the trial of the action until such
20          arbitration has been had in accordance with the terms
            of the agreement, providing the applicant for the stay
21          is not in default in proceeding with such arbitration.

22  9 U.S.C. § 3.  This provision gives a court authority to grant a
23  stay pending arbitration.  *Sparling v. Hoffman Const. Co., Inc.*,
24  864 F.2d 635, 638 (9th Cir. 1998).

25

26      [7]    It may be improper to enforce an arbitration clause
27  that is "permeated with unconscionability," *Armendariz*, 24 Cal.
    4th at 124, but that is not the case here.

28
                              **34**

1    The remaining aspects of the Seventeenth and Twentieth
2  Claims concern only the bodily injury that allegedly resulted
3  from Ranchwood Defendants' negligent failure to disclose and/or
4  concealment.  All other injuries allegedly caused by Ranchwood
5  Defendants' failure to disclose and/or concealment must be
6  submitted to arbitration.  Trying the bodily injury aspect of
7  this claim on its own would require presentation of evidence
8  concerning Ranchwood Defendants' conduct that might otherwise not
9  be relevant to the remaining claims in the case.  It will also
10 entail discovery which will include medical and expert evidence
11 about alleged personal injuries.  Staying the bodily injury
12 aspects of the Seventeenth and Twentieth Claims is the most
13 efficient use of judicial resources.

14   Ranchwood Plaintiffs expressed concern at oral argument that
15 allowing the arbitration to proceed while staying related claims
16 in this judicial proceeding might produce "inconsistent" results,
17 and suggested that the arbitration be stayed pending the outcome
18 of this case.  But, Plaintiffs submit no authority in support of
19 the proposition that the possibility of inconsistent rulings is a
20 basis for disregarding an enforceable arbitration agreement.  *See*
21 *Dean Witter v. Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (holding
22 that the FAA "requires district courts to compel arbitration of
23 pendent arbitrable claims when one of the parties files a motion
24 to compel, even where the result would be the possibly
25 inefficient maintenance of separate proceedings").

26   Ranchwood Defendants' request for a stay of the Seventeenth
27 and Twentieth Claims is GRANTED.

28

1    **D.    Request for Ombibus Notice.**

2    Ranchwood Defendants filed and served an Omnibus Notice and

3    Petition to Compel Arbitration, seeking a standing order from the

4    court that would require any subsequently-identified Ranchwood

5    Plaintiff to submit the Seventeenth and Twentieth Claims to

6    binding arbitration.  Ranchwood Defendants followed this

7    procedure because counsel for Plaintiffs have added and dismissed

8    Plaintiffs to this matter on several occasions.  A standing order

9    will avoid the need for re-litigation of issues related to the

10   Ranchwood Arbitration Provision if new Ranchwood Plaintiffs are

11   identified.  Ranchwood Plaintiffs have not objected to this

12   request.  Ranchwood Defendants' request is reasonable and is

13   GRANTED.

14

15                          **IV.   CONCLUSION**

16   For the reasons set forth above, Defendants' motion to

17   compel arbitration of those portions of the Seventeenth and

18   Twentieth Claims that do not concern bodily injury is GRANTED.

19   The remaining aspects of the Seventeenth and Twentieth Claims,

20   concerning bodily injury, are stayed pending resolution of the

21   arbitration process.  Any additional Ranchwood Plaintiffs added

22   at a later date must comply with this ruling.

23

24   SO ORDERED
     DATED: December 23, 2008

25

26                              **/s/ Oliver W. Wanger**
                                  **Oliver W. Wanger**
27                          **United States District Judge**

28

                              **36**