UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABARCA, RAUL VALENCIA *et al.*, | 1:07-CV-0388 OWW DLB |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE BAC DEFENDANTS' MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT (DOC. 270) |
| v. | |
| FRANKLIN COUNTY WATER DISTRICT, | |
| Defendants. | |

## I. INTRODUCTION

In this case, approximately 2200 Plaintiffs seek damages relating to two occurrences: (1) an April 2006 flood; and (2) alleged contamination from the former site of a cooling tower manufacturing facility in Merced, California ("BAC Site"). Defendants include municipalities, facility operators, water districts, and developers.

Before the court for decision is a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), or, in the alternative, a motion for a more definite statement, Fed. R. Civ. P. 12(e), filed by Defendants Merck & Co., Inc., Amsted Industries, Inc., Baltimore Aircoil Co., Inc., and Track Four, Inc. (collectively, the "BAC Defendants"), each of which was at one time either an owner of a subsidiary that owned or operated the BAC Site or an operator of the cooling tower manufacturing facility located at the BAC Site. Docs. 270 & 271. Specifically, the BAC Defendants argue that:

(1) Plaintiffs should be required to provide a more definite statement of their Twentieth Claim for Wrongful Death; (2) Plaintiffs' Twenty-Second Claim for Negligent Infliction of Emotional Distress based on a fear of cancer theory fails to state a claim upon which relief can be granted; and (3) Plaintiffs' Twenty-Third Claim for Civil Conspiracy also fails to state a claim upon which relief can be granted.  Doc. 271.

Plaintiffs oppose the motion, arguing:  (1) Plaintiffs' "Addendum" to the Fifth Amended Complaint ("FAC") listing the wrongful death decedents, the dates of their deaths, and the heirs bringing claims on their behalf, Doc. 316-2, renders much of Defendants' motion for a more definite statement moot; (2) Plaintiffs' claim for fear of cancer has been properly pled; and (3) Plaintiffs have properly pled a claim for civil conspiracy.  Doc. 316.

## II.  <u>STANDARD OF DECISION</u>

### A.  <u>Rule 12(b)(6) Motion to Dismiss.</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  "To avoid a Rule(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts

2

to state a claim to relief that is plausible on its face.'" *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061 (9th Cir. 2008) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 561-63 (2007) (rejecting interpretation of Rule 8 that permits dismissal only when plaintiff can prove "no set of facts" in support of his claim).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

   **B.   Motion for a More Definite Statement.**

   Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

A Rule 12(e) motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) in federal court. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (citing *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994)("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules.")).  Under the liberal pleading standards, "pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." *A.G.*

*Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D. Ariz. 1989).

A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981); Boxall v. Sequoia Union High Sch. Dist., 464 F. Supp. 1104, 1114 (N.D. Cal. 1979). The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted. *San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ( "A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her."). The motion should be denied if the detail sought by a motion for more definite statement is obtainable through discovery. *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998).

## III. DISCUSSION

### A. Twentieth Claim for Wrongful Death.

Plaintiffs' wrongful death claim alleges, in pertinent part:

> 278. As a legal result of the conduct of defendants as previously described in the above referenced portions of this complaint, and as a legal cause of their exposure to chemical contamination emanating from the former BAC facility, including hexavalent Chromium, Arsenic, Copper and PCP, certain individuals have died for whom wrongful death claims

**4**

1  <u>are herein brought by certain currently named</u>
   <u>plaintiffs</u> in this action (hereinafter "WRONGFUL DEATH
2  PLAINTIFFS").  Some WRONGFUL DEATH PLAINTIFFS are
   minors for whom a guardian ad litem has been or will be
3  appointed by this court.

4       279. As a legal cause of the actions of defendants
   MERCK, AMSTED, BAC and TRACK FOUR as described in the
5  above referenced paragraphs incorporated with this
   claim, and as a result of the wrongful deaths suffered
6  from exposure to contaminants emanating from the BAC
   facility, WRONGFUL DEATH PLAINTIFFS have suffered the
7  loss of financial support the decedent would have
   contributed to them during the decedent's lifetime or
8  the lifetime of WRONGFUL DEATH PLAINTIFFS; loss of
   gifts or benefits that WRONGFUL DEATH PLAINTIFFS would
9  have expected to receive from the decedent; funeral and
   burial expenses, and reasonable value of household
10 services that decedent would have provided.

11      280. As a further legal cause of the actions of
   defendants as previously alleged and as a result of the
12 wrongful deaths suffered from exposure to contaminants
   emanating from the BAC facility, WRONGFUL DEATH
13 PLAINTIFFS have suffered the loss of the decedent's
   love, companionship, comfort, care, assistance,
14 protection, affection, society, moral support, loss of
   enjoyment of sexual relations, and loss of the
15 decedent's training and guidance.

16 Doc. 228 (emphasis added).

17      The BAC Defendants argue that the general allegation that

18 "certain individuals have died for whom wrongful death claims are

19 herein brought by certain currently named plaintiffs" does not

20 provide them with enough information to respond to the claim.

21 Doc. 271 at 2-3.  The BAC Defendants assert that Plaintiffs

22 should, at a bare minimum, be required to provide: the identify

23 of the decedents; the date and cause of each death; and the

24 identity of each person who is claiming wrongful death damages.

25 *Id.*  Courts have granted motions for more definite statement

26 where fundamental facts are omitted from a claim.  *See, e.g.,*

27 *Int'l Harvester Co. v. Gen. Ins. Co.*, 45 F.R.D. 4, 6 (E.D. Wis.

28 1968) (regarding claim for conversion of property, plaintiffs

5

must identify all of allegedly converted property and supply dates upon which the alleged conversions took place; defendants are entitled to know this information before responding to complaint so they can determine whether certain defenses are available to them)).

In this case, on February 5, 2009, just prior to the deadline for Defendants to file Rule 12 motions challenging the FAC, Plaintiffs filed an "Addendum" to the FAC, identifying 44 wrongful death decedents, the dates of their deaths, and the heirs bringing claims on their behalf. Docs. 256; 315-2. The information contained within the Addendum addresses most of the BAC Defendants' substantive concerns.

BAC Defendants maintain that this is an unauthorized amendment to the complaint, for which Plaintiffs failed to obtain leave of court or consent of any Defendant. However, it is within the court's discretion to construe the filing of the "Addendum" as a motion to amend the complaint. BAC Defendants offer no grounds upon which such a motion should be denied, particularly given that, if their motion for a more definite statement was granted, the result would be an amended complaint containing the very information provided in the Addendum. Under some circumstances, amending a complaint by incorporating information and/or allegations from a separate document might cause undue confusion. *Jackson v. Geri*, 2008 WL 4280398 (W.D. Wis. 2008)(construing an addendum to an original complaint as a motion to amend, but denying the motion because the addendum contained entirely new claims and because it "would be far too confusing for the court and litigants to work with pleadings

consisting of several documents scattered throughout the file).
Here, however, Plaintiffs' Addendum, which avoids further
lengthening an already unwieldy complaint, is a welcome strategy.
Construing the filing of the Addendum as a motion to amend,
Plaintiffs' request to amend the complaint to incorporate the
material in the Addendum is GRANTED.

Notwithstanding the information contained within the
Addendum, BAC Defendants maintain that Plaintiffs should be
required to plead information pertaining to the <u>causes</u> of the 44
deaths.  For example, BAC Defendants argue that "if a decedent
died in a car accident, it is difficult to see how Plaintiffs'
counsel, consistent with their obligations under Rule 11, could
assert a wrongful death claim based on that death."  Doc. 337 at
4.  However, Plaintiffs correctly point out that specific
information related to each wrongful death will be the subject of
discovery and need not be further pled in the complaint.  If,
after discovery takes place, BAC Defendants believe that
Plaintiffs' counsel has not complied with Rule 11, they may file
a motion for sanctions.  The Federal Rules' liberal pleading
standard does not require that a complaint contain the kind of
detail Defendants demand.  Nevertheless, to facilitate discovery
of the causes of death, Plaintiffs agreed at oral argument to
provide Defendants certain identifying information for each
decedent.

BAC Defendants also maintain that Plaintiffs should be
required to comply with Rule 10(b), which provides that, "if
doing so would promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a separate

count...."  Doc. 271 at 5.  In support of this proposition, BAC Defendants cite *Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2000), which addressed allegations of employment discrimination brought on behalf of 51 individuals.  The Ninth Circuit affirmed the district court's dismissal of the original complaint for failure to comply with the rules of procedure, but held that plaintiffs should have been given the opportunity to file an amended complaint.  Because "each plaintiff's claim [is] founded upon a separate transaction or occurrence, [it] is properly stated in a separate count because a separation facilitates the clear presentation of the matters set forth." *Id.* at 840 (citing Fed. R. Civ. P. 10(b))(internal quotation omitted).  Defendants argue that because each of the 44 deaths asserted in the wrongful death claim presents a unique set of facts, each should be set forth in a separate count.  Doc. 271 at 5.  While separate counts may have promoted clarity in *Bautista*, where there were potentially 51 separate incidents of allegedly unlawful hiring activity, separate counts would not clarify the pleadings in this case, where Defendants' wrongful conduct with respect to the April 2006 Flood and BAC Site contamination is the common denominator underlying all of the wrongful death allegations.  Even though evidence concerning causation will likely differ greatly among the individual decedents, there is no requirement that these differences be articulated in the complaint.  BAC Defendants can sufficiently respond to the allegation as it is currently pled.

BAC Defendants' motion for a more definite statement is DENIED.

8

**B. Twenty-Second Claim for Negligent Infliction of Emotional Distress Based on a Fear of Cancer Theory.**

The Twenty-Second Claim is for negligent infliction of emotional distress based on a fear of cancer theory. In *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 973 (1993), the California Supreme Court articulated a pleading and proof requirement regarding recovery of damages under such a theory. The plaintiffs in *Potter* discovered that toxic chemicals from the landfill adjacent to their property had contaminated their domestic water supply. Plaintiffs were awarded, among other relief, $800,000 in damages for lifelong fear of cancer and related emotional distress. *Id.* at 978.

The California Supreme Court reversed, holding that "[a]lthough the [trial] court properly recognized that a toxic exposure plaintiff is required to establish the reasonableness of his or her fear of cancer, it erred in concluding that reasonableness is established by the mere fact of an exposure to, or a significant increase in, the risk of cancer." *Id.* at 989. Rather, the *Potter* court concluded "the tremendous societal cost of otherwise allowing emotional distress compensation to a potentially unrestricted plaintiff class demonstrates the necessity of imposing some limit on the class." *Id.* at 991. *Potter* concluded:

> [W]ith respect to negligent infliction of emotional distress claims arising out of exposure to carcinogens and/or other toxic substances: Unless an express exception to this general rule is recognized, in the absence of a present physical injury or illness, damages for fear of cancer may be recovered only if the plaintiff <u>pleads</u> and proves that (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, the plaintiff is exposed to a toxic substance which threatens cancer; and (2) <u>the</u>

9

> **plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure.** Under this rule, a plaintiff must do more than simply establish knowledge of a toxic ingestion or exposure and a significant increased risk of cancer. The plaintiff must further show that based upon reliable medical or scientific opinion, the plaintiff harbors a serious fear that the toxic ingestion or exposure was of such magnitude and proportion as to likely result in the feared cancer.

*Id.* at 997 (emphasis added).

Here, the parties dispute whether Plaintiff has sufficiently alleged that "the plaintiff's fear stems from a knowledge, corroborated by reliable medical or scientific opinion, that it is more likely than not that the plaintiff will develop the cancer in the future due to the toxic exposure...." The Complaint alleges, in pertinent part:

> 287. From February 2007 onward, plaintiffs have become aware for the first time, of the potential and real health risks associated with the contamination emanating from the former BAC facility, including but not limited to cancer from exposure to hexavalent chromium, Arsenic, Copper and PCP, known carcinogens. Plaintiffs' exposure to these carcinogens was legally caused as a result of a breach of duty by defendants as set forth in plaintiffs' claims for negligence, nuisance and trespass incorporated within this claim. Based upon the information received by plaintiffs from February 2007 onward, plaintiffs endure great, mental and emotional suffering and anguish as a result of their own fear of contracting cancer related to their exposure to the contamination emanating from the former BAC facility occurring as a direct result of the conduct of defendants and each of them. Plaintiffs' fear of contracting cancer stems from knowledge corroborated by reliable medical and scientific opinion, that it is more likely than not that cancer will develop in the future due to plaintiffs' exposure to toxic chemicals emanating from the former BAC facility.

The BAC Defendants argue that this allegation is insufficient because, by alleging that "it is more likely than

10

not that cancer will develop in the future," Plaintiffs are merely asserting that it is more likely than not that at least one of the approximately 2200 Plaintiffs will develop cancer. Doc. 271 at 9. BAC Defendants assert that this "artful pleading" fails to satisfy the *Potter* test.

The *Potter* test requires medical or scientific opinion to corroborate that it is more likely than not that each individual plaintiff will develop cancer in the future due to the toxic exposure. The language in the Complaint, although not directly mirroring the *Potter* language, can be construed to substantially trace the *Potter* requirement. Nevertheless, amendment of the complaint would help to clarify Plaintiffs' allegations. For this reason alone, Defendants' motion for a more definite statement is GRANTED WITH LEAVE TO AMEND.

The *Potter* court recognized a different standard for recovering damages on a fear of cancer theory where the defendant is alleged to have acted with oppression, fraud, or malice sufficient to justify the imposition of punitive damages:

> [I]n the absence of a physical injury or illness, a plaintiff may recover damages for negligently inflicted emotional distress engendered by a fear of cancer without meeting the more likely than not threshold if the plaintiff pleads and proves that: (1) as a result of the defendant's negligent breach of a duty owed to the plaintiff, he or she is exposed to a toxic substance which threatens cancer; (2) the defendant, in breaching its duty to the plaintiff, acted with oppression, fraud or malice as defined in Civil Code section and (3) <u>the plaintiff's fear of cancer stems from a knowledge, corroborated by reliable medical or scientific opinion, that the toxic exposure caused by the defendant's breach of duty has significantly increased the plaintiff's risk of cancer and has resulted in an actual risk of cancer that is significant.</u>

6 Cal. 4th at 999-1000 (emphasis added). The FAC also includes a

claim based on this theory:

> 289. In the alternative, as a result of defendants conduct constituting oppression, fraud or malice as defined in California Civil Code § 3294, and as alleged in plaintiffs' claims for nuisance and trespass specifically incorporated within this claim, <u>plaintiffs' fear of developing cancer is recoverable as plaintiffs' fear of developing cancer stems from reliable medical and scientific opinion that the toxic exposure caused by defendants breach of a duty owed to plaintiffs significantly increased plaintiffs' risk of cancer and has resulted in an actual risk of cancer that is significant</u>.

The BAC Defendants argue that this allegation is insufficient because, in alleging that Defendants' conduct "significantly increased plaintiffs' risk of cancer and has resulted in actual risk of cancer that is significant," Plaintiffs improperly assert that the 2200 plaintiffs <u>collectively</u> have a significantly increased risk that one or more of them will develop cancer in the future. Doc. 271 at 10. Again, although the Complaint can reasonably be read to comply with *Potter's* requirements, amendment would help to clarify Plaintiffs' position.

The BAC Defendants' motion to dismiss the Twenty-Second Claim for Negligent Infliction of Emotional Distress is GRANTED WITH LEAVE TO AMEND.

C. <u>Twenty-Third Claim for "Civil Conspiracy."</u>

The Twenty-Third Claim names the BAC Defendants in a "Civil Conspiracy." A long line of cases establishes that there is no independent cause of action for civil conspiracy under California Law. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) ("Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons

who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration...."). Plaintiffs do not take issue with this well-accepted rule, but do maintain that it is nevertheless procedurally appropriate to include a separate civil conspiracy claim in within the complaint. Doc. 316 at 7.

*Harrell v. 20th Century Insurance Co.*, 934 F.2d 203, 208 (9th Cir. 1991), supports Plaintiffs' position. In that case, the Ninth Circuit examined a stand-alone civil conspiracy claim grounded upon an underlying allegation of fraud. *Id*. Because the fraud claim was barred by the statute of limitations, the Ninth Circuit concluded that the civil conspiracy claim must also fail. *Id*. However, *Harrell* implies that the converse would also be true; if the fraud claim had survived so too would the independent civil conspiracy claim. *Id*. The BAC Defendants' assertion that a civil conspiracy claim must fail as a matter of course is without merit.

Plaintiffs' civil conspiracy claim alleges that the BAC Defendants conspired "to create, maintain, and expand the nuisance in, on and around plaintiffs' property as a result of contamination emanating from the former BAC facility"; "to fail and refuse to reasonably abate the nuisance, in, on and around plaintiffs property as a result of contamination emanating from the former BAC facility"; and "to engage in conduct constituting a trespass on plaintiffs' property, and in particular, conduct resulting in contamination from hexavalent chromium, Arsenic, Copper and PCP of ground water, surface water, drinking water and air, in, under and on plaintiffs' real property." FAC ¶295.

BAC Defendants assert that because Plaintiffs allege claims for nuisance and trespass elsewhere in the FAC, they cannot maintain a separate claim for civil conspiracy based on those underlying torts. This argument is rejected as contrary to the Ninth Circuit's holding in *Harrell,* 934 F.2d at 208. Plaintiffs may maintain a separate civil conspiracy count based upon the incorporated allegations of nuisance and trespass.

More compelling is the BAC Defendants' argument regarding that portion of the civil conspiracy claim grounded in allegedly fraudulent conduct. The civil conspiracy claim alleges that the BAC Defendants conspired to "conceal and/or misrepresent the nature and extent of ... contamination emanating from the former BAC facility." FAC ¶ 295. This allegation can be interpreted as raising either fraudulent misrepresentation or fraudulent concealment. In either case, Plaintiffs must comply with the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires "the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Dist., Co. v. Serv.-Well Furniture Co Inc.*, 806 F.2d 1393, 1401-02 (9th Cir. 1986)). At a bare minimum, the pleading "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id*.

Plaintiffs appear to restrict their argument to fraudulent concealment. To pursue a civil conspiracy based upon fraudulent concealment, the FAC must allege that the BAC Defendants had a duty to disclose the allegedly concealed facts to the plaintiffs.

*Hahn v. Mirda*, 147 Cal. App. 4th Cal. App. 4th 740, 745 (2007).
In conjunction with Rule 9(b), Plaintiffs must allege the
existence of a duty to disclose with particularity. *See*
*Randelman v. Fidelity Nat'l Title Ins. Co*, 465 F. Supp. 2d 812,
822 (N.D. Ohio 2006) (requiring plaintiff to plead with
particularity that the defendant owed plaintiff a duty to
disclose); *Fidenas AG v. Honeywell Inc.*, 501 F. Supp. 1029, 1039
(S.D.N.Y. 1980) (same).

Plaintiffs rejoin that the complaint adequately alleges an
underlying act of fraudulent concealment with specificity in
their claim for nuisance and trespass, which allegations are
specifically incorporated within the civil conspiracy claim. *See*
FAC ¶294. Those allegations provide:

245. In or about 1984, defendants MERCK and BAC,
by and through their managing agents, directors and
officers, were informed that activities carried on at
the BAC facility had resulted in the contamination of
soil and groundwater. The constituents of concern
identified at that time included Arsenic, hexavalent
chromium and Copper. These constituents were used by
defendants in their wood processing activities
performed at the facility. This contamination, and its
extent were further investigated on behalf of MERCK,
BAC, and AMSTED in 1987 by J.H. Kleinfelder &
Associates, hired by defendants, and in 1988 by Dames &
Moore on behalf of AMSTED. Notwithstanding defendants'
knowledge of the contamination and potential for
exposure to the contaminants, defendants MERCK, BAC and
AMSTED continued to utilize hexavalent chromium and
Copper in its wood processing activities up to
including 1991. The continued use of these chemicals
in the same manner even after it was discovered that
the chemicals were in fact contaminating soil and
groundwater, and that there was a potential for
airborne contaminants to reach residents in the
vicinity of the BAC facility, resulted in further
contamination and further exposure of plaintiffs to the
adverse health risks associated with these chemicals.

246. In addition, the 1987 Kleinfelder Report
specifically advised MERCK and BAC that sediment
located in a 1.5 acre storm water retention pond

15

located on the facility had Arsenic, hexavalent chromium and copper above background levels. It was confirmed that the source of the contamination was the wood treatment chemicals used at the facility.

247. Further in 1988, defendants MERCK, BAC and AMSTED were informed through the California Regional Water Quality Control Board the 1.5 acre storm water pond at the BAC facility was found to contain water with high concentrations of Arsenic, Chromium (both total and hexavalent), and Copper in amounts greater than drinking water standards. Further, the levels found exceeded the maximum Regional Board effluent permit levels for storm water runoff at industrial sites. These defendants were further informed that this same pond connected by way of a pipe to the adjacent El Capitan drainage canal, where it was estimated that the pond spilled approximately .155 million gallons per day of water to the drainage canal during the rainy season (December/March). These defendants were further informed that drainage from the pond to the canal was increased as a result of drainage through the BAC facility directed by the COUNTY OF MERCED. The Regional Board concluded that the flushing action of the pond may have resulted in the canal as being the "main pollutant pathway" in the area. Notwithstanding this information, defendants MERCK, AMSTED and BAC continued to utilize the pond in its wood processing activities and to permit the discharge of contaminated water into the El Capitan Canal until the pond was "clean-closed" in or about 1991.

248. In addition, as early as 1991, contaminated soil from the BAC facility, 10,000 tons from the pond alone, was excavated at the direction of MERCK, AMSTED and BAC. Further, by 1996, some 2,300 pounds of chromium, 1,300 pounds of Arsenic and 3,500 pounds of Copper were excavated with the soil. Workers involved in the soil excavation were required to wear protective masks and clothing. As such, defendants knew of the health and safety risks associated with inhalation or dermal contact with these contaminants. Further, defendants implemented a "dust control" program during excavation due to the health risks associated with airborne particles. Notwithstanding this knowledge, defendants and each of them never notified, warned or otherwise informed any residents, including plaintiffs herein, to take any precautions that may be needed with regard to the health risks associated with the soil excavation.

249. Further, in as early as 1994, MERCK, BAC and AMSTED were made aware through information provided by IT Corporation, a company retained by these defendants to assess the contamination of the BAC facility and

16

health risks associated with the contamination, that among other things that residents could be exposed to contaminants as a result of having a home garden contaminated by deposition of soil particulates onto the plant surfaces and by root translocation of chemicals within the soil and through airborne particulates.  These defendants were further informed as to the carcinogenic risks associated with these chemicals and in particular that Arsenic and hexavalent chromium are Class A carcinogens – that is chemicals for which there is sufficient evidence of carcinogenicity in humans.  These defendants were further informed of other non-carcinogenic affects of hexavalent chromium exposure including but not limited to allergic contact dermitis reaction.

250. Defendants MERCK, BAC and AMSTED were informed in the Risk Assessment Report that risks from airborne particulates and contact dermatitis would be minimal in light of the fact that the vast majority of the BAC facility was now covered by concrete, asphalt and/or a thin asphalt sealer thereby acting as barriers for direct contact with the surface soils and as barriers to wind erosion, water erosion and rain infiltration.  Defendants MERCK, BAC and AMSTED were also informed that exposure as a result of subsurface soils or groundwater was not a source of exposure "because the groundwater control system is controlling the hydraulic movement of the contaminated water and will not allow this water to migrate beyond the property boundaries."

251. However, at the time of this report, defendants MERCK, BAC and AMSTED knew that significant portions of bare soil had existed at the BAC facility prior to the installation of the concrete, asphalt or thin asphalt sealer at the facility.  Indeed, large sections of the facility where the treated lumber "air-dried" and excess chemicals dripped into the ground, were uncovered for years, thus making this surface soil vulnerable to direct contact, wind erosion, water erosion and rainwater infiltration, thereby contributing to the migration of these chemical constituents beyond the facility's boundaries.

252. Further, at the time of this report defendants MERCK, BAC and AMSTED knew that the groundwater control system utilized at the facility was in fact not maintaining hydraulic control of the contaminated water plume, and in fact that it had migrated beyond property boundaries, both to the north and the south.  Indeed, these defendants were specifically informed that the very process being used to "remediate" the contamination, was  contributing to the spread of the contaminated groundwater plume beyond

the site's boundaries.  This information was specifically communicated to defendants and their managing agents, directors and officers by the California Regional Water Control Board.

253. <u>Notwithstanding defendants knowledge as set forth above, defendants and each of them named above continued to engage in conduct which caused and contributed to the migration of contaminants beyond the facility's boundaries; never informed any of the residents in the area including plaintiffs herein, of any potential health risks associated with the contamination emanating from the facility;</u> never requested any risk assessment or other investigation or analysis as to the health risks associated with exposure to residents from past activities at the BAC facility; never advised any residents in the area including plaintiffs herein that their own home gardens could be contaminated or a source of contamination; never advised residents that the El Capitan Canal may have been a major pollutant pathway for the contaminants; nor made any effort to assess the actual health affects on residents and plaintiffs herein with regard to their exposure to the contaminants emanating from their facility operations.

254. Had plaintiffs herein been provided with the information set forth above, plaintiffs could have:  1) sought early diagnostic testing with regard to the potential health affects of such contaminant exposure; 2) sought and/or received medical intervention, diagnosis and treatment for injuries otherwise unknown to have resulted from contaminant exposure; 3) moved from the area thereby preventing and/or mitigating the personal injuries now sustained as a result of exposure to the contaminants; 4) refrained from activities on or near their properties, including maintaining home gardens, fishing and/or swimming in the El Capitan Canal, so as to minimize risks associated with exposure to the contaminants.  Defendants' actions thereby deprived plaintiffs of the ability to make informed choices to protect their health and welfare, as well as the health and welfare of the families and significantly increased plaintiffs' personal injuries.

255. Upon information and belief, such contamination and pollutant migration has been occurring on an ongoing basis since at least the 1960s but the PLAINTIFFS were ignorant of such contamination, pollution, and/or the imminent threat of such contamination or pollution until their receipt of the "Fact Sheet, February 2007" issued by the California Regional Water Quality Board, mailed to the PLAINTIFFS in or about February 2007. Not only were plaintiffs' ignorant of contamination and pollution emanating from

18

the BAC facility into their neighborhood, plaintiffs
were ignorant of any possible health threat to
themselves or their families as a result of the
contamination. Plaintiffs' ignorance as to the nature
and extent of contamination as well as the possible
health risks from such contamination, was a direct
result of the concealment and misrepresentations by
defendants MERCK, AMSTED, BAC, MEADOWBROOK, TRACK FOUR
FCWD, MID, COUNTY OF MERCED, and the CITY OF MERCED
related to the fact that the contamination had migrated
offsite, including into the Beachwood neighborhood and
regarding any possible health risks associated with
exposure to the contaminants emanating from the BAC
facility. Accordingly, plaintiffs neither knew nor
reasonably should have known, both the existence and
cause of their physical injuries herein alleged,
including but not limited cancer, pulmonary conditions
and diseases, respiratory conditions and diseases,
dermatological conditions and diseases, neurological
conditions and diseases, reproductive toxicity and
birth defects, ophthalmological conditions and diseases
and diabetes. Further, as a direct result of the
misrepresentations and concealment identified above,
plaintiffs neither knew or reasonably should have known
both of the existence and cause of their real and
personal property damages as well as their economic
damages as set forth below.

These allegations do provide some support for a concealment
claim. However, these paragraphs do not resolve the principle
objection raised by the BAC Defendants: that the FAC does not
allege they have a duty to disclose any allegedly concealed facts
to the plaintiffs.

Plaintiffs suggest that the BAC Defendants are framing the
question incorrectly, and that the real issue is whether the BAC
Defendants had a duty to disclose to the Regional Water Quality
Control Board ("Regional Board") all relevant factual information
necessary for the Regional Board to adequately oversee the
remediation of this contamination site. There is no question
that the BAC Defendants had such a duty. For example, California
Water Code ("CWC") § 13267(d) provides:

19

> **(d) The state board or a regional board may require any person, including a person subject to a waste discharge requirement under Section 13263, who is discharging, or who proposes to discharge, wastes or fluid into an injection well, to furnish the state board or regional board with a complete report on the condition and operation of the facility or injection well, or any other information that may be reasonably required to determine whether the injection well could affect the quality of the waters of the state.**

The Regional Board exercised its oversight authority as to the former BAC facility through orders promulgated pursuant to § 13267. *See* Order No. R5-2008-0047, "Ground Water Remediation Waste Discharge Requirements for Former Baltimore Aircoil Company Facility, Inc.", "Monitoring and Reporting Program No. R5-2008-0047", "California Water Code Section 13267s", and "Cleanup and Abatement Order, Monitoring and Reporting Program No. R5- 2007-0830," Exhs. F, G & H to Marderosian Decl., Doc. 316-5. The Board is not a party.

More debatable is Plaintiffs' assertion that any "duty to disclose to the Regional Board reasonably extends to the residents most directly impacted by the contamination - the very individuals that the Board's actions are designed to protect."[1] Doc. 316 at 19. Plaintiffs offer no support in law or fact for

---

[1] It is undisputed that one of the purposes of the Porter-Cologne Water Quality Control Act, CWC § 13000 *et seq.*, of which § 13276 is a part, is to protect the public. The Porter-Cologne Act's Legislative findings provide "that the health, safety and welfare of the people of the state requires that there be a statewide program for the control of the quality of all the waters of the state...." CWC § 13000. The Act also defines "contamination" as "an impairment of the quality of the waters of the state by waste to a degree which creates a hazard to the public health through poisoning or through the spread of disease." CWC § 13050(k).

this assertion.

Alternatively, Plaintiffs contend "that a special relationship existed between the residents located within a mile of the BAC facility (of which plaintiffs' herein are included) and the BAC defendants ... demonstrated [by] the fact that the Regional Board instructed the BAC defendants to send out 'Fact Sheets' related to the contamination and designated that [these] be sent out to the residents living within a one mile radius of the facility." *Id*. Plaintiffs maintain that "the Regional Board itself recognized a special relationship between these residents and the contamination occurring at the BAC Facility requiring them to be notified of the contamination." *Id*. Plaintiffs' contend that this special relationship gave rise to a duty to provide notice to these residents concerning potential health risks resulting from the contamination of which the BAC Defendants allegedly had knowledge, but the Regional Board did not, due to the BAC Defendants' failure to provide complete and accurate information to the Board. Plaintiffs further argue that "even when notices were provided, they were inadequate as they failed to provide any warning or other advisement to the residents as to the potential health effects associated with the contamination at the facility." *Id*. Plaintiffs summarize their theory as follows:

> In short, it is plaintiffs' contention that material facts related to contamination at the facility (including but not limited to those described in paragraphs 245 – 254 of the Fifth Amended Complaint and incorporated within their claim of conspiracy) were not disclosed to the Regional board during the Regional Board's investigation and oversight of the contamination at the BAC facility and that if the Board had been so advised, it would have certainly required

> the BAC defendants to provide appropriate public notice
> related to potential health risks associated with
> exposure to the chemicals emanating from the facility.
> The BAC defendants concealment of these material facts
> directly resulted in damages to plaintiffs through
> their unwary continued exposure to these deadly
> chemicals. (See ¶ 254 in the Fifth Amended Complaint)

*Id.* at 19-20.

Even if Plaintiffs' theory is a viable one, it does not overcome the BAC Defendants' motion to dismiss the fraudulent concealment aspect of their existing civil conspiracy claim, because the complaint makes absolutely no mention of any duty to disclose on the part of the BAC Defendants, in contravention of the particularity requirements of Rule 9(b).

Obviously anticipating this conclusion, Plaintiffs request leave to amend the conspiracy claim to better articulate this theory and its factual support. Doc. 316 at 20. BAC Defendants suggest that leave to amend would be futile because the law does not support the imposition of a duty to disclose under the circumstances described by Plaintiffs. In support of this proposition, BAC Defendants cite *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997), which examined the state of California law on the subject of concealment. An earlier case, *Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651 (1986), held that, There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some

material facts."  The *LiMandri* court further explained that "where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts."  *Id*. at 336-37.  "As a matter of common sense, such a relationship can only come into being as a result of <u>some sort of transaction</u> between the parties."  *Id*.; *see also Shin v. Kong*, 80 Cal. App. 4th 498, 509 (2000) ("A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty, such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.").

Here, Plaintiffs seek an extension of the law, one that would find a relationship, and therefore a duty to disclose, existed between the BAC Defendants and Plaintiffs by virtue of the fact that the Regional Board ordered the BAC Defendants to issue Fact Sheets to Plaintiffs explaining the BAC Site contamination.[2]  This is a novel theory for which Plaintiffs offer no legal support.  Such a theory would create a private

---

[2]    In an apparent attempt to support their fraudulent concealment allegations, Plaintiffs submit and discuss several documents they obtained during discovery.  See Doc. 316 at 13-16. It is improper for the court to consider this material on a motion to dismiss.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998) ("In ruling on a motion to dismiss, a district court generally may not consider any material beyond the pleading."). Plaintiffs offer no basis for their consideration at this stage in the proceedings.  Plaintiffs need not support a claim with evidence at the pleading stage, so long as their claim is one upon which relief may be granted under the law.

right of action for failing to disclose the subject matter of any Board order to a site owner or operator to promote information disclosure. Such a decision is the province of the legislature. The BAC Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to any civil conspiracy based on fraudulent concealment, but is DENIED as to any civil conspiracy based on nuisance and/or trespass.

Consistent with Plaintiffs' obligations under Rule 11, any amended complaint should clearly set forth the factual basis for any duty to disclose in a separate claim for fraudulent concealment. For organizational purposes, Plaintiffs may articulate their civil conspiracy theory under a separate section captioned "Civil Conspiracy Allegations." Nevertheless, as a matter of law, such claims must be grounded upon a separate tort (e.g., nuisance, trespass, and/or fraudulent concealment), articulated in a separate cause of action.

## IV.  CONCLUSION

For the reasons set forth above:

(1)  The BAC Defendants' motion for a more definite statement as to the wrongful death claim is DENIED;

(2)  Plaintiffs' filing of an Addendum to the FAC, construed as a motion to amend, is GRANTED;

(3)  By May 15, 2009, Plaintiffs' counsel shall provide defendants with a list containing each decedent's social security number and county and state of residence at the time of death;

(4)  The January 28, 2009 "Scheduling Conference Order,"

24

1  Doc. 243, is amended to provide Defendants an additional thirty

2  (30) days (to July 30, 2009) in which to identify their ten

3  proposed test Plaintiffs.  Absent the stipulation of all parties,

4  the existing accelerated Plaintiff deposition schedule (four

5  depositions/day, three or four days/week) through June 30 will

6  not continue after that date.

7      (5)   The BAC Defendants' motion to dismiss the negligent

8  infliction of emotional distress claim based on a fear of cancer

9  theory is GRANTED WITH LEAVE TO AMEND;

10     (6)   The BAC Defendants' motion to dismiss the civil

11 conspiracy claim is DENIED as to the nuisance and trespass

12 aspects of this claim and GRANTED WITH LEAVE TO AMEND as to the

13 fraudulent concealment aspect of this claim.

14     (7)   Plaintiffs shall have fifteen (15) days from the date

15 of the hearing to file and serve their Sixth Amended Complaint;

16 Defendants shall have twenty (20) days from service to file and

17 serve their response.

18

19 SO ORDERED

20 Dated:  May 18, 2009

21

22                          ___/s/ Oliver W. Wanger___
                               Oliver W. Wanger
23                          United States District Judge

24

25

26

27

28