UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABARCA, RAUL VALENCIA, *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br>FRANKLIN COUNTY WATER DISTRICT, <br><br>    Defendants. | 1:07-CV-0388 OWW DLB <br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' REQUEST TO AMEND COMPLAINT TO REINSTATE CARLOS & MARIA SANCHEZ AND ADD CARLA SANCHEZ AS PLAINTIFFS (DOC. 226) |

## I. INTRODUCTION

In this case, approximately 2200 Plaintiffs seek damages relating to two occurrences: (1) an April 2006 flood; and (2) alleged contamination from the former site of a cooling tower manufacturing facility in Merced, California. Defendants include municipalities, facility operators, water districts, and developers. Before the court for decision is Plaintiffs' December 22, 2008 "Supplement to [the] Joint Scheduling Conference Statement," requesting reinstatement of Carlos Sanchez and Maria Sanchez as Plaintiffs, and permission to add their minor daughter, Carla Sanchez, a Plaintiff. Doc. 226. Pursuant to the agreement of counsel at the January 7, 2009 scheduling conference, this Supplement is deemed a motion to amend. *See* Doc. 267 at 1. Defendants oppose. *Id*.

## II. BACKGROUND

Pursuant to the December 11, 2007 supplemental scheduling order, all adult Plaintiffs who failed to answer the Defendants' questionnaire within a specified period were to be be dismissed with prejudice from this lawsuit. Doc. 93. Although Plaintiffs' counsel repeatedly tried to reach the Sanchez family, they failed to timely complete their questionnaires and were dismissed from the lawsuit with prejudice on July 2, 2008. Doc. 127.

Mr. and Mrs. Sanchez recently contacted Plaintiffs' counsel to explain why they failed to respond to the questionnaire. In a declaration, Ms. Sanchez explains that shortly after the flooding event of April 4, 2006, she experienced a spontaneous miscarriage. Doc. 308 at ¶3. Several months later, a second pregnancy resulted, but complications were identified during prenatal screening, requiring multiple visits to specialists in Modesto and at Stanford Medical Center. *Id*. at ¶4. At Stanford, the Sanchezes learned that there was a large mass in the fetus' abdomen. *Id*. Ms. Sanchez "was repeatedly asked by the staff at the Genetics Department what [she] had been taking and/or eating." *Id*. The decision was made to deliver the baby early. *Id*.

On August 23, 2007, Marla Sanchez was born at Lucile Packard Children's Hospital at Stanford, ten weeks premature and with severe birth defects. *Id*. at ¶5. She suffered from complications, including fetus *in fetu*, a developmental abnormality consisting of a mass of tissue inside the fetus/infant that resembles a fetus. *Id*. Marla remained at Lucile Packard Children's Hospital, in Stanford, until she died

on September 29, 2007. *Id*. The Sanchezes were later advised not to attempt having more children. *Id*.

Ms. Sanchez states that this experience was emotionally taxing on her and her family:

> Instead of sharing the joy of having an addition to our family, we were left experiencing severe emotional problems because no matter how much we wanted to hold Marla and comfort her, we could not, due to the different machines she was hooked up to that were helping her breathe and assisting with the kidney problems she was having. The fact that we witnessed her struggle to stay alive, and not being able to physically hold Marla in our arms to comfort her until she died is something that still makes us very emotional. Due to the complications I experienced with this pregnancy, including kidney problems, my doctor strongly recommended that for my health and well-being, I should not attempt to have more children. This was very devastating news to my family. My daughter Carla was very sad at the loss of her baby sister, and now we would have to tell her that she will probably never have a brother or sister.

*Id*.

Ms. Sanchez explains that, although they were advised of the consequences of not returning completed questionnaires, *id*. at ¶6, she and her husband nevertheless failed to respond to the questionnaire because of the pregnancy and birth-related medical complications:

> My husband and I were devastated by the severe birth defects that Marla was born with, and which caused her death. We suffered, and continue to suffer, severe grief, depression and mourning. I still am unable to discuss Marla's birth and complications without breaking down emotionally. Despite our grieving and depression, my husband and I tried to spend more time with Carla as she healed from the loss of her sister, and the news that she would probably never have a brother or sister. It was not until the end of November 2008 that I contacted our attorneys' office and expressed a desire to now complete the Plaintiff Questionnaires. We were reminded that pursuant to the court's order, our family was dismissed from the lawsuit for lack of submitting a completed Plaintiff Questionnaire.

3

*Id.* at ¶7.

Among other things, the Fifth Amended Complaint ("FAC") alleges that Defendants caused significant quantities of hazardous constituents, including hexavalent chromium, to be discharged to soil, ground and surface waters beneath and around where Plaintiffs live. *See* FAC ¶¶ 81-82. The FAC further alleges that hexavalent chromium is a known reproductive toxin. *Id.* at ¶81.

On December 12, 2008, more than one year after Marla's death, Plaintiffs' counsel requested in a letter that Defendants stipulate to the reinstatement of Mr. and Mrs. Sanchez and the entry of Carla Sanchez into the lawsuit. Defendants declined to stipulate.

### III. DISCUSSION

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given when "justice so requires." Defendants argue that Mr. and Ms. Sanchez have not demonstrated good cause to be reinstated as Plaintiffs and that their minor daughter, who has never been a plaintiff in this action, has not demonstrated good cause why she should now be permitted to join the case. Defendants point to the parties' April 2008 stipulation to modify the supplemental scheduling conference order, which provides that, "[a]fter June 3, 2008, plaintiffs' counsel will not file any motion to show 'good cause' why a plaintiff who is not one of the Defined Plaintiffs should be granted additional time to return a Response." Doc. 111 at ¶6. However, that same stipulation indicates that it "can be modified

4

```
 1  upon a showing of 'good cause' pursuant to Federal Rule[] of
 2  Civil Procedure [] 37."  Id. at ¶8.
 3       Defendants also point to the January 7, 2009 Scheduling
 4  Conference, in which Defense counsel stated "...[O]ur view is
 5  that there ought to be some cutoff fro the number of plaintiffs
 6  in this case."  The court replied, "Well, we have the cutoff.
 7  The cutoff is now.  And there are no new parties and there are no
 8  new claims as of now.  The fifth amended complaint is it."  Tr.
 9  at 10:7-12.  However, at that same scheduling conference, the
10  Defendants agreed to treat Plaintiffs' December 22, 2008
11  "Supplement to Joint Scheduling Conference Statement" as a motion
12  to amend.  The court's statements on January 7, 2009 were not
13  intended to prejudge this motion to amend.
14       Plaintiffs contention that, "if the tragic circumstances
15  outlined [in Ms. Sanchez's] declaration are not sufficient to
16  demonstrate good cause... [one is] hard pressed to think of any
17  scenario which could...." is well founded.  Doc. 307 at 2.  This
18  unique showing is sufficient.
19
20                         IV.   CONCLUSION
21       For the reasons set forth above, Plaintiffs' motion to amend
22  is GRANTED.
23
24  SO ORDERED
25  Dated:  May 18, 2009
26
27                              /s/ Oliver W. Wanger
                                Oliver W. Wanger
28                              United States District Judge
```

5