1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT FOR THE

8                           EASTERN DISTRICT OF CALIFORNIA

9
RAUL VALENCIA ABARCA, et al.,        )      1:07cv0388 OWW DLB
10                                   )
                                     )      ORDER REGARDING
11        Plaintiffs,                )      DEFENDANT MERCK & CO., INC'S
                                     )      MOTION FOR PROTECTIVE ORDER
12        vs.                        )      AND/OR ORDER VACATING PLAINTIFFS'
                                     )      NOTICE OF DEPOSITION OF MERCK
13   MERCK & CO., INC., et al.,      )      CHAIRMAN, PRESIDENT AND CEO
                                     )      RICHARD T. CLARK
14                                   )
                                     )      (Documents 418 and 443)
15        Defendants.                )
16   _____)

17
18        Defendant Merck & Co., Inc. filed the instant amended motion for protective order

19   and/or order vacating the deposition notice of Merck Chairman, President and CEO Richard

20   T. Clark on June 4, 2009.  The motion was heard on July 22, 2009, before the Honorable

21   Dennis L. Beck, United States Magistrate Judge.  Michael Marderosian, Brett Runyon and

22   Heather Cohen appeared on behalf of Plaintiffs.  Stephen Lewis and Timothy Jones appeared

     on behalf of Defendant Merck & Co., Inc.
23
24                               **FACTUAL BACKGROUND**

25        In the joint statement, Merck explains that this case arises from environmental

26   contamination at a former Baltimore Aircoil Company ("BAC") cooling tower manufacturing

     facility located in Merced County, California ("the BAC site").  BAC, a former Merck
27
28                                          1

1   subsidiary, owned a subsidiary, BAC-Pritchard.  BAC-Pritchard owned and operated the

2   BAC site from 1975 until 1985, when Merck sold BAC, the subsidiary and the site to Amsted

3   Industries, Inc.  Joint Statement, p. 2.

4          BAC-Pritchard used pressure-treated wood to make the frames of the cooling towers at the

5   BAC site.  From 1969 to 1980, BAC-Pritchard treated the wood with a solution of chromium, copper

6   and arsenic.  After 1980, BAC-Pritchard treated the wood with a solution of acid, copper and

7   chromium.  The company stopped treating wood at the site in May 1991.  The company dissolved in

8   September 1993.  The facility was closed in early 1994.

9          In 1986, Merck and Amsted hired a consultant and began a "series of investigations and

10  remedial actions" at the BAC site, under the supervision of the California Department of Toxic

11  Substances Control ("DTSC") and/or the California Regional Water Quality Control Board ("Water

12  Board").  Merck reports that the consultant found "elevated levels of arsenic, copper and hexavalent

13  chromium in soil at the site."  Joint Statement, p. 2-3.  Later investigations also found elevated levels

14  of hexavalent chromium and arsenic in groundwater beneath the site and in a storm water pond

15  located on the site.[1]  Joint Statement, p. 3.  Merck further indicates that in 1991, Merck and Amsted

16  completed a "clean closure" of the storm water pond, excavating contaminated soil from the pond

17  and disposing of it at a landfill.  In 1993 and 1994, Merck and Amsted installed a groundwater

18  remediation system to control migration of contaminants and to remove hexavalent chromium and

19  arsenic from the shallow groundwater.  In 1996, they excavated contaminated soil at the site.

20  Through 2005, they continued to expand and modify the groundwater treatment system.

21         In late 2005, Merck and Amsted reportedly contracted with Arcadis, Inc. to complete the

22  remediation of the BAC site for approximately $18 million.  In 2007 and 2008, Arcadis excavated

23

24         [1]In their statement of facts, Plaintiffs provide information regarding the nature and extent of the alleged chemical

25  contamination.  Merck objects to the supporting exhibits (Exhibit D, E, F, and G to the declaration of Thomas Girardi) as
    irrelevant.  The relevance of these exhibits to Clark's purported knowledge and/or deposition is not explained and the Court
    has not relied on them in reaching its determination.

26         Merck also points out that despite Plaintiffs' representations, there is no evidence that any of the plaintiffs has ever

27  been exposed to chromium or arsenic from the BAC site.  Merck refers the Court to a pending motion for a "Cottle/Lone
    Pine" case management order to require that Plaintiffs make a showing of exposure before they may proceed with further

28  discovery.  (Doc. 355).  However, the Court has not issued a ruling on that motion.

1 additional contaminated soil and began treatment of groundwater.  This treatment is expected to take

2 approximately two years.

3       Plaintiffs initiated this litigation on March 8, 2007.  They allege personal injuries and

4 property damage as a result of alleged exposure to chemicals from the BAC site.

5       On April 23, 2009, Plaintiffs noticed the deposition of Richard T. Clark ("Clark"), the

6 Chairman, President and Chief Executive Officer of Merck.  The deposition was scheduled to take

7 place on May 18, 2009, in New Jersey.  Exhibit A to Declaration of Thomas Girardi.

8       On April 27, 2009, Merck counsel Stephen Lewis wrote to Plaintiffs' counsel, Thomas

9 Girardi, requesting that Plaintiffs withdraw the notice or, alternatively, advise Merck as to the

10 justification for deposing Mr. Clark and the subjects on which Plaintiffs proposed to elicit testimony.

11 Exhibit B to Declaration of Stephen Lewis.

12       On April 28, 2009, Mr. Girardi responded to the letter via voicemail.  In his message, Mr.

13 Girardi confirmed Plaintiffs' intent to depose Mr. Clark and indicated that he anticipated the

14 deposition would last approximately 50 minutes.  Mr. Lewis declares "Mr. Girardi stated that

15 Plaintiffs' counsel intended to depose Mr. Clark because 'he has said a bunch of stuff that ...we think

16 is a lil [sic] teeny-weensy, itsby-bitsy different than what the company does.'" Lewis Decl. ¶ 4.

17       On April 28, 2009, Mr. Girardi sent a letter to Mr. Lewis confirming Plaintiffs' position and

18 indicating the deposition would last less than one hour.  Mr. Girardi also reported Plaintiffs' thinking

19 that the chairman's comments were "important" to their case.  Exhibit C to Lewis Decl.

20       On April 29, 2009, Mr. Lewis replied to Mr. Girardi, informing him of Merck's intent to

21 move for a protective order to prevent Mr. Clark's deposition and requesting that Plaintiffs agree to

22 take the deposition off calendar to allow the Court sufficient time to resolve the parties' dispute via a

23 regularly noticed motion.  Mr. Girardi agreed to the request.  Girardi Decl. ¶ 5.

24       On May 15, 2009, Merck filed its notice of motion for protective order and/or order vacating

25 the deposition notice.  On June 4, 2009, Merck filed an amended notice of motion.  The motion is

26 made on the grounds that Clark's deposition is not reasonably calculated to lead to the discovery of

27 admissible evidence, that the deposition has been noticed for purposes of harassment, that plaintiffs

28

1    have had ample opportunity to obtain whatever information they seek by other discovery in this

2    action and that relevant information may be obtained from other sources that are more convenient,

3    less burdensome or less expensive.

4           On June 24, 2009, the parties met and conferred to resolve their differences and to discuss the

5    issues in the joint statement.  Lewis Decl. ¶ 8.

6           On July 6, 2009, the parties filed their joint statement of discovery dispute.  In addition,

7    Defendant Merck filed the declarations of Clark, Stephen Lewis and Donald Sobelman.  Plaintiffs

8    filed the declarations of Thomas Johnston, Michael Marderosian and Thomas Girardi.

9           On July 7, 2009, Defendant Merck filed objections to the exhibits attached to the declaration

10   of Mr. Girardi.  Merck requested that the exhibits be excluded at the hearing.

11                                      **DISCUSSION**

12   A.     Legal Standard-Protective Order

13          Fed. R. Civ. P. 26(c) provides that a "court may, for good cause, issue an order to protect a

14   party or person from annoyance, embarrassment, oppression, or undue burden or expense."

15   Protective orders provide a safeguard for parties and other persons in light of the otherwise broad

16   reach of discovery.  Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970); United States v.

17   Columbia Broadcasting System, Inc., 666 F.2d 364, 368-369 (9th Cir. 1982).  However, a court

18   should not prohibit a relevant deposition "absent extraordinary circumstances" because such a

19   prohibition would "likely be in error." Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979).

20          To obtain a protective order, the moving party bears the burden of showing "good cause" by

21   demonstrating harm or prejudice that will result from the discovery.  Rivera v. NIBCO, Inc., 364

22   F.3d 1057, 1063 (9th Cir. 2004).  The moving party must demonstrate a "particular and specific need

23   for the protective order, as opposed to making stereotyped or conclusory statements." Gray v. First

24   Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990).  In determining whether good cause exists for

25   the protective order, the court must balance the interests in allowing discovery against the relative

26   burdens to the parties.  In re Coordinated Pretrial Proceedings, 669 F.2d 620, 623 (10th Cir. 1982);

27   see also Wood v.  McEwen, 644 F.2d 797, 801-802 (9th Cir.  1981).

28                                                  4

1  B.     Analysis

2          Merck argues that Clark should not be required to submit to a deposition because he is an

3  "apex" deponent.  When a party seeks to depose an official at the highest level or "apex" of a

4  corporation, a court may exercise its authority under the federal rules to limit discovery.  WebSide

5  Story, Inc. v. NetRatings, Inc., 2007 WL 1120567, *2 (S.D.Cal. Apr. 6, 2007); Celerity, Inc. v. Ultra

6  Clean Holdings, Inc., 2007 WL 205067, *3  (N.D.Cal. Jan. 25, 2007) ("Virtually every court that has

7  addressed deposition notices directed at an official at the highest level or "apex" of corporate

8  management has observed that such discovery creates a tremendous potential for abuse or

9  harassment") (citing Mulvey v. Chrysler Corp., 106 F.R.D. 364 (D.C.R.I. 1985)); Fed. R. Civ. P.

10  26(b)(1).

11          Merck asserts that courts apply a two-part test in considering whether an "apex deposition"

12  should be permitted: (1) whether the corporate officer has unique, non-cumulative knowledge of the

13  facts at issue; and (2) whether there are no other, less burdensome discovery methods.

14  WebSideStory, 2007 WL 1120567, at *2 ("courts often consider: (1) whether or not the high-level

15  deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2)

16  whether the party seeking the deposition has exhausted other less intrusive discovery methods, such

17  as interrogatories and depositions of lower level employees"); Celerity, 2007 WL 205067 at *3.

18  Merck contends that the party seeking to depose the "apex" witness bears the burden of coming

19  forward with a persuasive reason why the senior executive is likely to offer testimony that satisfies

20  these requirements.  WebSideStory, 2007 WL 1120567, at *3-4.

21          Plaintiffs counter that there is no Ninth Circuit or Supreme Court precedent requiring the

22  court to apply the burden shifting approach for "apex" depositions.  Plaintiffs cite to Mansourian v.

23  Board of Regents of the University of California, 2007 WL 4557104 (E.D.Cal. Dec. 21, 2007), an

24  Eastern District of California case, in which Magistrate Judge Brennan relied on the overarching

25  dictates of the Federal Rules of Civil Procedure in determining whether or not to issue a protective

26  order and did not use the burden-shifting approach applied by some courts.  However, the

27  Mansourian court did not "wholly reject" the burden-shifting approach and noted "it may indeed be

28                                                          5

appropriate where a party truly seeks to depose a high ranking executive official ... for no purpose other than harassment.*" Id. at *3 n.2.* In this instance, Defendant Merck claims the deposition of Clark was noticed for an improper purpose, namely harassment. See Amended Notice of Motion (Doc. 443). As such, the burden-shifting approach provides guidance to this Court.

Plaintiffs contend that even applying this "apex rule," they are entitled to depose Clark because he has relevant first-hand knowledge and there is no less burdensome discovery method to discover Clark's testimony.

1.  Knowledge

Merck argues that Plaintiffs failed to identify a topic of testimony on which Clark has unique personal knowledge. According to Merck, Plaintiffs initially attempted to justify taking Clark's deposition by stating only that Clark "has said a bunch of stuff that ...we think is a lil [sic] teeny-weensy, itsby-bitsy different than what the company does'" and that his testimony is "important." Lewis Decl. ¶¶ 4-5.

Merck further reports that Plaintiffs noticed Clark's deposition before reviewing the approximately 87 bankers boxes of Merck files related to the BAC site that were available for review in August 2008. Merck indicates that after receiving the deposition notice, it conducted its own review of those files and found only three documents relating to the BAC site that were originated by or directed to Clark, or intended for Clark's signature. Declaration of Donald E. Sobelman ¶ 2. Merck identifies these documents as:

> • A June 2, 2005, memorandum from W.P. Hamilton to Dr. M.L. King regarding "Merced Remediation." The memorandum bears Mr. Clark's signature and approves the increase of Merck's environmental reserve by $3.5 million to reflect costs associated with the excavation and disposal of contaminated soils at the site. (Exhibit A to Declaration of Richard T. Clark);

> • An unexecuted "Supplemental Construction Contract," dated June 16, 1994, related to construction of the pump and treatment system at the site and drafted for Mr. Clark's signature. (Merck indicates that it is not known whether Mr. Clark ever signed the draft agreement.) (Id. at Exhibit B.); and

> • An email string, dated July 18, 2003, concerning a shooting incident near the site, which was forwarded to Mr. Clark to apprise him of how Merck would handle media inquiries concerning the shooting. (Id. at Exhibit C.)

Merck argues that the "paucity of documents" demonstrates that Clark's involvement with the site

6

1    was extremely limited.

2         In opposition, Plaintiffs counter that Clark is a "crucial, percipient witness" who was directly

3    involved in making decisions regarding the BAC facility and remediation effort.  Plaintiffs explain

4    that Merck's Manufacturing Division was responsible for monitoring the remediation effort.

5    Plaintiffs contend that Clark was an employee within Merck's Manufacturing Division from at least

6    the early 90s until 2005.  During this time, Merck closed the BAC facility and began their

7    remediation effort.  Plaintiffs indicate that Clark was Vice President, Procurement & Materials

8    Management, of Merck's Manufacturing Division when the remediation effort began and Clark was

9    subsequently promoted to president of the division in 2003.  Exhibits M (portion of Merck's 2004

10   Annual Report) and N (Forbes.com article) to Girardi Decl.[2]  Plaintiffs contend that at least one

11   document indicates that Clark was responsible for approving contracts and/or costs related to

12   Merck's remediation effort.  Plaintiffs cite Exhibit B to the Clark Declaration, which is a draft

13   contract with a signature block for Clark's name.

14        Plaintiffs further report that Clark was promoted to President and CEO of Merck in May

15   2005.  Exhibits L (Healthcare Sales and Marketing Network Magazine Article), M (portion of

16   Merck's 2004 Annual Report) and N (Forbes.com article) to Girardi Decl.[3] Plaintiffs contend that

17   Clark approved a budget increase of $3.5 million for removal of approximately 11,000 tons of

18   contaminated soil shortly after his promotion to CEO.  Exhibit A to Clark Decl.

19        Plaintiffs argue that Clark's involvement (based on the draft contract and the approval of

20   additional funds) is relevant to their position that the remediation effort performed by Merck was

21   delayed and, in an effort to cut costs, Merck failed to conduct an effective remediation.

22        To the extent that Plaintiffs base their arguments on documents identified by Merck, Merck

23   asserts that Clark has no specific recollection of ever receiving any of the documents and has no

24   independent knowledge of the matters discussed in them.  Clark Decl. ¶¶ 5-8.  Clark also declares

---

[2] Merck objects to these exhibits as (1) improperly authenticated because they are excerpts; and (2) hearsay in violation of Fed. R. Evid. 802.  However, the Court does not rely on these exhibits in reaching its determination.

[3] Merck objects to these exhibits as (1) improperly authenticated because they are excerpts; and (2) hearsay in violation of Fed. R. Evid. 802.  However, the Court does not rely on these exhibits in reaching its determination.

1    that other than what he has read in the documents and what has been communicated to him by

2    counsel, he has "no knowledge of any operations or activities at the Site, of the environmental

3    contamination at the Site, or of efforts to address environmental contamination at the Site."  Clark

4    Decl. ¶ 8.

5         Plaintiffs correctly note that Clark's claimed lack of knowledge does not provide sufficient

6    grounds for a protective order.  See, e.g., Digital Equipment Corp. v. System Industries, Inc., 108

7    F.R.D. 742, 744 (D.Mass. 1986).  Even in cases cited by Merck, a claimed lack of knowledge by the

8    deponent does not alone provide sufficient grounds for a protective order.  WebSideStory, 2007 WL

9    1120567, at *2.  However, there is no indication that Clark has unique, non-cumulative knowledge

10   simply because his name appears on three documents, particularly where one is an unsigned draft,

11   one is not addressed to or from him and another is an apparently unrelated e-mail string addressed to

12   Clark and other individuals.  Insofar as Plaintiffs argue that Clark was responsible for setting the

13   Values and Standards of the Company as it pertained to environmental matters and cite documents

14   from Merck's website, Plaintiffs can obtain authentication of the document(s) through means other

15   than a deposition of Clark.

16              2.    Other, Less Burdensome Discovery

17        Plaintiffs reportedly have taken only two depositions of Merck witnesses.  The witnesses,

18   Ned Speizer and Joseph Grillo, are former Merck engineers who were involved in overseeing the

19   environmental remediation at and around the BAC site.  Clark was not mentioned in either

20   deposition.  Lewis Decl. ¶ 7.  Plaintiffs also noticed the Clark deposition before taking any Rule

21   30(b)(6) deposition of Merck.  Lewis Decl. ¶ 6.  Merck asserts that courts have routinely required

22   litigants to complete a Rule 30(b)(6) deposition on the subject matter at issue before allowing the

23   high-level executive's deposition to proceed.  WebSideStory, 2007 WL 1120567, at *5 (requiring

24   parties to proceed with Rule 30(b)(6) before deposing corporation's former CEO).  Merck

25   further asserts that one or more "subordinate managers are likely to have knowledge that is vastly

26   greater than Mr. Clark's knowledge with respect to virtually any subject that could be relevant to this

27   case."  Joint Statement, p. 13.

28

1    Although Plaintiffs contend that there are no "low level" employees that could testify in

2    Clark's place, only two Merck individuals have been deposed and no 30(b)(6) deposition of Merck

3    has been completed.  Plaintiffs' bare assertion and the limited number of depositions completed at

4    this stage fail to demonstrate that the information Plaintiffs seek regarding remediation, budget

5    issues and soil removal at the BAC site cannot be obtained through other, less burdensome means.

6    For example, the June 2, 2005 document bearing Mr. Clark's signature and approving a reserve

7    increase is a memorandum from W.P. Hamilton to Dr. M.L. King regarding "Merced Remediation."

8    Exhibit A to Clark Decl.  There is no indication that W.P. Hamilton or Dr. M.L. King have been

9    deposed by Plaintiffs or are otherwise unavailable.

10    Accordingly, Plaintiffs' proposed deposition of Clark is not timely given the limited number

11    of Merck employee (or former employee) depositions that have been completed.  Plaintiffs have not

12    attempted other, less burdensome discovery before pursuing Clark's deposition.  Accordingly, good

13    cause exists at this time to issue a protective order precluding Clark's deposition and vacating the

14    deposition notice, without prejudice to a subsequent deposition if additional depositions and

15    discovery reveal that Clark has personal knowledge of facts relevant to this lawsuit.

16                    3.    Burden of Deposition

17    Merck argues that the negligible value of Clark's testimony is outweighed by the heavy

18    burden his deposition would impose on Merck and on Clark.  Even if good cause for a protective

19    order is shown, the court must still balance the interests in allowing discovery against the relative

20    burdens to the parties.  See Wood, 644 F.2d at 801.  Fed. R. Civ. P. 26(b)(2)(C)(iii) permits the court

21    to limit the frequency or extent of discovery if it determines that "the burden or expense of the

22    proposed discovery outweighs its likely benefit."  Merck argues that this standard is met where a

23    party seeks to depose a corporate executive with no personal knowledge of the facts, citing Thomas

24    v. IBM, 48 F.3d 478, 483 (10th Cir. 1995) (barring deposition of corporate executive because he

25    lacked personal knowledge) and Harris v. Computer Associates Intern., Inc., 204 F.R.D. 44, 46-47

26    (E.D.N.Y. 2001) (depositions of high-level corporate executives duplicative, cumulative, and

27    burdensome where executives have no personal knowledge of the disputed events).  Merck

28                                                        9

1  concludes that Plaintiffs cannot reasonably require Clark to take an estimated two days to prepare

2  and provide testimony that is unlikely to be of any value.

3      Plaintiffs contend that there is no reason to believe that the deposition would subject Clark to

4  "annoyance, embarrassment, oppression, undue burden, or expense."  Plaintiffs report that they have

5  proposed accommodations to take the deposition, including taking the deposition at Clark's office at

6  a convenient time and limiting the deposition to "less than one hour."  Joint Statement, p. 25.

7  Plaintiffs argue that Clark's declaration is silent as to the difficulty a one hour deposition would

8  impose on his schedule.  Plaintiffs also indicate that Merck's assertion of costs of flying to New

9  Jersey is without merit because Merck has advised that other depositions of percipient witnesses will

10 have to take place in New Jersey and hence scheduling can be coordinated.

11     As Plaintiffs have not completed other relevant depositions of Merck employees, it appears

12 the burden of deposing Clark outweighs any likely benefits to Plaintiffs from taking his deposition at

13 this juncture.

14                    4.    Improper Purpose

15     Merck argues that Plaintiffs served the deposition notice to harass and inconvenience

16 Merck's senior corporate officers and not to discover facts that might lead to admissible evidence.

17 As noted, a protective order may issue "to protect a party or person from annoyance, embarrassment,

18 oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Merck asserts that there is

19 substantial evidence of improper purpose in Plaintiffs' issuance of the Clark deposition notice,

20 including the following: (1) no attempt to meet and confer with Merck's counsel before noticing

21 Clark's deposition; (2) Plaintiffs set the date of Clark's deposition on the date previously set for the

22 hearing on defendants' "Cottle/Lone Pine" motion; (3) Plaintiffs initially offered only a superficial,

23 vague justification for the deposition, i.e., Clark's testimony would be "important" and he "said a

24 bunch of stuff...[Plaintiffs] think is a lil teeny-weensy, itsy-bitsy different than what the company

25 does;" and (4) Plaintiffs offer a new, *post hoc* rationalization for deposing Clark based on a review of

26 documents identified by Merck after the deposition notice was issued.  Joint Statement, p. 14.  Merck

27 concludes that there is no evidence that Plaintiffs noticed Clark's deposition for any legitimate

28

1    reason.

2         Plaintiffs argue that they did not notice Clark's deposition for an improper purpose.

3    Plaintiffs are not aware of any requirement in the Federal Rules that would require them to meet-and-

4    confer before noticing the deposition.  Although they admittedly set the deposition at a time that

5    conflicted with a hearing, Plaintiffs indicate that Merck has multiple lawyers working on this case,

6    which would allow for coverage at the deposition and at the hearing.  Plaintiffs also indicate that they

7    would have rescheduled the deposition to accommodate Merck.

8         Although Plaintiffs essentially have offered *post hoc* rationalizations for deposing Clark,

9    there is insufficient evidence to conclude that Plaintiffs noticed the deposition solely for an improper

10   purpose.  Nonetheless, for the reasons discussed above, a protective order is warranted.

11                              **<u>CONCLUSION AND ORDER</u>**

12        Based on the above, Defendant's motion for a protective order and order vacating the

13   deposition notice of Richard T. Clark is GRANTED without prejudice to Plaintiffs re-noticing his

14   deposition.  Plaintiffs may reissue the deposition notice if additional depositions and discovery

15   reveal that Clark has personal knowledge of facts relevant to this lawsuit.

16

17        IT IS SO ORDERED.

18        **Dated:    July 31, 2009**              **/s/ Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28
                                        11