1

2

3

4

5

6

7

8

9

10          UNITED STATES DISTRICT COURT

11       FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  ABARCA RAUL VALENCIA, *et al.*,        1:07-CV-00388 OWW GSA

14       Plaintiffs,                 MEMORANDUM DECISION AND ORDER RE
                                     BAC DEFENDANTS' MOTION TO
15     v.                            DISMISS PLAINTIFFS' EIGHTEENTH
                                     CLAIM FOR FRAUD AND TO DISMISS
16  MERCK & CO., INC., *et al.*,     AND STRIKE CONSPIRACY TO COMMIT
                                     FRAUD ALLEGATIONS OF PLAINTIFFS'
17       Defendants.                 SIXTH AMENDED COMPLAINT (DOC.
                                     486)
18

19

20              I. <u>INTRODUCTION.</u>

21     Defendants Merck & Co., Inc., Amsted Industries, Inc.,

22  Baltimore Aircoil Co., Inc., and Track Four, Inc. (collectively

23  "the BAC Defendants") move to dismiss the eighteenth claim for

24  relief, entitled "Fraud and Deceit," in Plaintiffs' sixth amended

25  complaint ("SAC").  The BAC Defendants also move to dismiss

26  Plaintiffs' nineteenth claim for conspiracy to the extent it is

27

28  based on fraud or concealment and to strike from Plaintiffs'

1

conspiracy claims paragraphs 280 and 281, which allege fraud and concealment.

The BAC Defendants argue:

(1) That the fraud claims in the eighteenth and nineteenth causes of action fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) because the SAC fails to allege:

> (a) that any individual Plaintiff read or heard any of the allegedly fraudulent statements; or

> (b) that he or she took any specific action in reliance on the allegedly fraudulent statements; and

(2) That Plaintiffs have not alleged facts sufficient to demonstrate a duty of disclosure owed by the BAC to any Plaintiff.

## II. STANDARD OF DECISION

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity.  One of the purposes behind Rule 9(b)'s heightened pleading requirement is to put defendants on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations.  *See In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).  Further, Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to

fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id* (internal citations and quotations omitted).

As a general rule, fraud allegations must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. v. Serv-Well Furniture Co..,* 806 F.2d 1393, 1401 (9th Cir. 1986). In other words, an allegation of fraud must describe the "who, what, when, where, and how" of the alleged misconduct." *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997).

### III. ANALYSIS

A.   Duty to Disclose.

The twenty-third claim in Plaintiffs' fifth amended complaint "FAC," entitled "Civil Conspiracy," was dismissed with leave to amend on May 18, 2009. Doc. 419. Acknowledging "[a] long line of cases establishes that there is no independent cause of action for civil conspiracy under California Law," the ruling held that "Plaintiffs may maintain a separate civil conspiracy count based upon [] incorporated allegations of nuisance and trespass." *Id*. at 12-14.

In addition, Plaintiffs attempted to base their conspiracy claim on allegedly fraudulent conduct. *Id*. at 14. Specifically, the FAC alleged that BAC Defendants conspired to "conceal and/or

misrepresent the nature and extent of ... contamination emanating from the former BAC facility." FAC ¶295. Whether such an allegation raises fraudulent misrepresentation or fraudulent concealment, Plaintiffs must comply with the requirements of Federal Rule of Civil Procedure 9(b). Doc. 419 at 14. Because Plaintiffs "appear[ed] to restrict their argument to fraudulent concealment," Plaintiffs "must allege that the BAC Defendants had a duty to disclose the allegedly concealed facts to the plaintiffs." *Id.* at 14-15 (citing *Hahn v. Mirda*, 147 Cal. App. 4th Cal. App. 4th 740, 745 (2007)).

Plaintiffs cited no authority for their claims that because "the BAC Defendants had a duty to disclose to the Regional Water Quality Control Board ('Regional Board') all relevant factual information necessary for the Regional Board to adequately oversee the remediation of this contamination site," this duty "reasonably extends" to Plaintiffs." Doc. 419 at 19-21. Plaintiffs' alternative contention was also rejected, namely "that a special relationship existed between the residents located within a mile of the BAC facility (of which plaintiffs' herein are included) and the BAC defendants ... demonstrated [by] the fact that the Regional Board instructed the BAC defendants to send out 'Fact Sheets' related to the contamination and designated that [these] be sent out to the residents living within a one mile radius of the facility." *Id.* at 21. Plaintiffs made "absolutely no mention of

any duty to disclose on the part of the BAC Defendants" in the FAC.

*Id.* at 22.

Plaintiffs requested leave to amend the conspiracy claim to

better articulate their theory of duty.   *Id.* at 22.   The BAC

Defendants suggested that leave to amend would be futile because

the law does not support the imposition of a duty to disclose under

the circumstances here.   *Id.*   The May 18, 2009 Decision reviewed

the circumstances in which a duty to disclose might arise:

> ...*Heliotis v. Schuman*, 181 Cal. App. 3d 646, 651
> (1986), held that, There are "four circumstances in which
> nondisclosure or concealment may constitute actionable
> fraud: (1) when the defendant is in a fiduciary
> relationship with the plaintiff; (2) when the defendant
> had exclusive knowledge of material facts not known to
> the plaintiff; (3) when the defendant actively conceals a
> material fact from the plaintiff; and (4) when the
> defendant makes partial representations but also
> suppresses some material facts."

Assuming Plaintiffs invoked the second circumstance, that defendant

had exclusive knowledge of material facts not known to the

plaintiff, the decision provided:

> *LiMandri* [*v. Judkins*] explained that "where material
> facts are known to one party and not to the other,
> failure to disclose them is not actionable fraud unless
> there is some relationship between the parties which
> gives rise to a duty to disclose such known facts."   [52
> Cal. App. 4th 326,] 336-37.   "As a matter of common
> sense, such a relationship can only come into being as a
> result of some sort of transaction between the parties."
> Id.; *see also Shin v. Kong*, 80 Cal. App. 4th 498, 509
> (2000) ("A duty to disclose facts arises only when the
> parties are in a relationship that gives rise to the
> duty, such as seller and buyer, employer and prospective
> employee, doctor and patient, or parties entering into
> any kind of contractual agreement.").

> Here, Plaintiffs seek an extension of the law, one that
> would find a relationship, and therefore a duty to
> disclose, existed between the BAC Defendants and
> Plaintiffs by virtue of the fact that the Regional Board

1
2
3
4
5
6

ordered the BAC Defendants to issue Fact Sheets to
Plaintiffs explaining the BAC Site contamination.  This
is a novel theory for which Plaintiffs offer no legal
support.  Such a theory would create a private right of
action for failing to disclose the subject matter of any
Board order to a site owner or operator to promote
information disclosure.  Such a decision is the province
of the legislature.  The BAC Defendants' motion to
dismiss is GRANTED WITH LEAVE TO AMEND as to any civil
conspiracy based on fraudulent concealment....

7

*Id*. at 23-24 (emphasis added).

8
9

    In the currently-operative SAC, Plaintiffs invoke the fourth,

10

rather than the second, circumstance described in *Heliotus*, which

11

imposes a duty to disclose when the defendant makes partial

12

representations but also suppresses some material facts.  In other

13

words, half-truths can trigger fraud liability.  As the California

14

Supreme Court explained in *Warner Constr. Corp. v. City of Los*

15
16

*Angeles*, even the half-truths doctrine requires a transactional or

other special relationship:

17
18
19
20

In transactions which do not involve fiduciary or
confidential relations, a cause of action for non-
disclosure of material facts may arise [where] ... the
defendant makes representations but does not disclose
facts which materially qualify the facts disclosed, or
which render his disclosure likely to mislead....

21

2 Cal. 3d 285, 294 (1970).

22

    The parties disagree as to whether this rule nevertheless

23

requires a transactional or special relationship.  *Warner*, for

24

example, which specifically indicated that half-truths could result

25

in liability "[i]n <u>transactions</u> which do not involve fiduciary or

26
27

confidential relations," *id*. at 294 (emphasis added), involved

parties in privity to a contract for construction, *id*. at 285.

28

But, other cases suggest a broader application of the rule.

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004), involved the omission of material facts from statements made by an attorney to opposing parties during a corporate merger transaction.  Nevertheless, *Vega* explicitly rejected a rule that fraud based on nondisclosure requires an "independent duty of disclosure."  Assuming without discussion that plaintiff, who was not a client of defendants, could not allege any special circumstances that would give rise to an independent duty of disclosure, the *Vega* court emphasized:  "In some but not all circumstances, an independent duty to disclose is required; active concealment may exist where a party while under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated."  *Id*. at 293-94 (internal citations and quotations omitted).

Similarly, *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 201 (1986), involved alleged representations made by an attorney to a third party in connection with the sale of a business.  The BAC Defendants emphasize that *Cicone* and *Vega* were decided in the context of a transactional realationship.  Yet, like *Vega*, *Cicone* also relied upon the general rule that disclaims any need for a special relationship:

> Although a duty to disclose a material fact normally
> arises only where there exists a confidential relation
> between the parties or other special circumstances
> require disclosure, where one does speak he must speak
> the whole truth to the end that he does not conceal any
> facts which materially qualify those stated. One who is
> asked for or volunteers information must be truthful, and
> the telling of a half-truth calculated to deceive is
> fraud.

*Id.* at 201 (internal citations omitted).

Likewise, *Moore v. IMCO Recycling of Cal., Inc.*, 2005 WL 5887179 (C.D. Cal. 2005), involved parties to a real estate transaction who allegedly failed to disclose environmental contamination.  In negotiating the sale, the subsidiary stated in writing that "[t]he only environmental issues on the properly that involved the local environmental regulatory agencies were the underground storage tank (UST) removal projects," even though the defendants allegedly had knowledge of other environmental issues on the property.  *Id.* at *10.  Moore held that when defendants "volunteered to speak on the Property's environmental issues, they took on a duty of full disclosure of known environmental issues." *Id.*

The BAC Defendants again emphasize that *Moore* applied this rule in the context of a real estate transaction, but fail to acknowledge that *Moore* relied on *Vega* for the general proposition that an independent duty to disclose is not always required: "active concealment may exist where a party while under no duty to speak, nevertheless does so, but does not speak honestly or makes

misleading statements or suppresses facts which materially qualify those stated." *Id*. at *9.

Plaintiffs rely on *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066 (1997), in which the California Supreme Court applied *Warner's* misleading half-truths doctrine to find that a school district could be liable for fraudulent misrepresentation for issuing a letter of recommendation for a vice principal that implied he was fit to interact safely with female students, despite the fact that defendants knew he had been charged with relevant sexual improprieties. The *Randi W.* court "view[ed] [the] case as a 'misleading half-truths' situation in which defendants, having undertaken to provide some information regarding [the vice-principal's] teaching credentials and character, were obliged to disclose all other facts which 'materially qualify' the limited facts disclosed." *Id*. at 1082. To support this rule, the California Supreme Court cited *Warner*, 2 Cal. 3d at 294, and California Civil Code § 1710(3), which provides that "deceit" within the meaning of § 1709's cause of action for "fraudulent deceit"[1] means "the suppression of a material fact by one who gives misleading information of other facts."

*Randi W.* discussed the issue of "special relationship." First, defendants had alternative courses of conduct to avoid

---

[1] Section 1709 explains that "fraudulent deceit" involves "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

liability, "namely, (1) writing a 'full disclosure' letter revealing all relevant facts regarding [the employee's] background, or (2) writing a 'no comment' letter omitting any affirmative representations regarding [the employee's] qualifications, or merely verifying basic employment dates and details." *Id*. at 1078. Absent a special relationship between the sender and recipient of those types of communications, "liability may not be imposed for mere nondisclosure or other failure to act." *Id*. However, despite the absence of such a special relationship between the original employer and the hiring entity, the California Supreme Court considered whether it would be appropriate to "expand a tort duty of care" to the writer of a letter of recommendation, taking into consideration the "potential social and economic consequences." *Id*. at 1079.

On the one hand, the *Randy W*. court acknowledged a strong public policy in favor of protecting children from sexual or physical abuse. *Id*. at 1078-79. At the same time, *Randy W*. considered "that the threat of potential tort liability [might] inhibit employers from freely providing reference information, restricting the flow of information prospective employers need and impeding job applicants in finding new employment." *Id*. at 1080. Balancing these interests, *Randi W*. held that the author of a letter of recommendation "owes to prospective employers and third persons a duty not to misrepresent the facts in describing the

qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the prospective employer or third persons." *Id.* at 1081.

The BAC Defendants argue that *Randi W.* is distinguishable because it was, in fact, based on the employment relationships at issue, implying the presence of a "special relationship." But, *Randi W.* explicitly disclaimed the existence of any special relationship between the former and present employer, yet nevertheless imposed liability "if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the prospective employer or third persons." The latter qualification was necessary to balance the competing public policy interests.

Here, in contrast, there are no such competing policy interests. Plaintiffs assert that in four separate public communications, allegedly directed at Plaintiffs, the BAC Defendants issued statements that contamination at their site was non-hazardous and/or relatively innocuous. *See* SAC ¶¶ 259-263. Plaintiffs further allege that the BAC defendants knowingly omitted material information pertaining to the nature and extent of the contamination. Here, there is no public policy that justifies qualifying the general rule, articulated in numerous California cases and California Civil Code § 1710(3), that one who "volunteers

information must be truthful, and the telling of a half-truth calculated to deceive is fraud."

Plaintiffs have sufficiently alleged that the BAC Defendants had a duty not to tell half-truths because the BAC Defendants spoke about contamination and spoke misleadingly.  Proof is not required at the pleading stage.

B.   Specificity of Pleading.

The BAC Defendants next object that Plaintiffs have not pled their fraud claim with sufficient specificity.  The BAC Defendants protest that Plaintiffs have "at best identified four documents without: (a) specifying any parts of those documents that they contend are false or (b) naming any individual plaintiffs who allegedly heard or read the (unspecified) allegedly false part(s) of the documents."  Doc. 556 at 2.

The first objection is without merit.  Plaintiffs have identified four documents that are alleged public statements made by the BAC Defendants, which allegedly constitute instances in which the BAC Defendants volunteered "half-truths calculated to deceive."  Plaintiffs do not allege that any particular statement made in those documents is *per se* false.  Rather, they allege that these documents misleadingly imply the absence of other, contrary, material facts.  Plaintiffs specifically explain the ways in which they allege the four communications were materially misleading:

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Each of the above referenced communications directly from the MERCK DEFENDANTS to the public including plaintiffs herein, while discussing certain aspects of the contamination and remediation at the former BAC facility, failed to include material information concerning the contamination which rendered the information contained within these communications as half-truths calculated to deceive plaintiffs. Specifically, none of these communication initiated by the MERCK DEFENDANTS to plaintiffs herein, included any of the following material information related to the contamination and its potential health affects on plaintiffs: 1) that the MERCK DEFENDANTS were first notified of significant contamination of the facility in at least 1983 through the County Health Department, yet continued to utilize the chemicals in their wood processing operations for another eight years before discontinuing the treatment of lumber at the facility; 2) the amount of chemicals contaminating the soil and groundwater was significant and that the MERCK DEFENDANTS continued use of the chemicals for some eight years after it was made aware of the contamination significantly increased the amount of chemicals contaminating the environment and also resulted in the significant migration of the pollution plume into plaintiffs' neighborhood; 3) that a storm water pond on the facility was confirmed to have high levels of Hexavalent Chromium in excess of drinking water standards and that the pond had been connected for decades to the adjacent El Capitan Canal flowing immediately to the east of the Beachwood neighborhood, resulting in the El Capitan Canal being described by the Regional Water Quality Control Board as a "main pollutant pathway" from the facility; 4) that significant portions of bare soil at the BAC facility was contaminated and that dust from the facility could have caused contaminants to become airborne exposing plaintiffs' to the contamination; 5) that airborne contaminants could have historically and currently contaminated home grown vegetables and fruit as a result of the deposit of the airborne contaminants on the produce and the transmigration of contaminants in groundwater and soil through the roots of vegetables and trees located on plaintiffs' property; 6) that the storm water retention pond identified above was originally required to be remediated, pursuant to the Toxic Pits Cleanup Act because it was hazardous according to the Department of Toxic Substances; 7) that exposure to Hexavalent Chromium and Arsenic could result in a host of physical ailments, symptoms and diseases, including but

13

not limited to cancer, pulmonary conditions and diseases, respiratory conditions and diseases, dermatological conditions and diseases, neurological conditions and diseases, reproductive toxicity and birth defects, ophthalmological conditions and diseases could result in the above-identified health issues; 9) that certain private drinking water wells had in fact been impacted with contaminants from the BAC facility; 10) that the MERCK DEFENDANTS had received a violation as early as 1987, with regard to the presence of hazardous materials located onsite, and were specifically informed that soil samples at the site showed "hazardous levels" of Copper and Chromium and that if the cleanup did not occur, the Health Department could pursue administrative, civil and criminal action against the facility; 11) that the MERCK DEFENDANTS had been informed in 1987 of the presence of contaminated soil and pond sediment at the facility that exceeded background levels; 12) that in 1988, the MERCK DEFENDANTS were informed that the pond sediment exceeded by ten fold acceptable limits for the presence for Hexavalent Chromium and was informed that certain groundwater wells showed Chromium above background levels; 13) that in 1988, the MERCK DEFENDANTS were informed that subsurface soils contained Copper at hazardous amounts and that groundwater had been impacted by the Chromium; 14) that in 1988, BAC was informed that it was required to post a Proposition 65 warning on its facility, due to its use of Hexavalent Chromium and Hexavalent Chromium's link to cancer or reproductive toxicity; 15) that in 1988, the Regional Board informed the BAC that its investigations had confirmed "high concentrations of Arsenic, Chromium and Copper in subsoils" and that the Board was "concerned about the potential for impacting water quality"'; 16) that in 1990, the Department of Health Services informed MERCK DEFENDANTS that the presence of hazardous waste at the facility and the elevated levels of Chromium and Arsenic at the facility required closure of the facility; 17) that as early as 1992, the MERCK DEFENDANTS were aware that the contaminants had impacted groundwater and had migrated offsite into the Beachwood Neighborhood; 18) that at least by 1994, the MERCK DEFENDANTS had been specifically advised that risks to human health did exist as a result of the contamination, including risk from direct dermal contact with contaminated soil and airborne particles exposing residents to contamination via wind, dust, home gardens and home grown fruit; 19) that the need for increased construction activities and property

14

1
2
3
4
5
6
7

      access related to remediation of the site was as a result
of the continued expansion and migration of the
groundwater plume which had migrated into the Beachwood
Neighborhood placing the residents' drinking water at
risk; 20) that the groundwater plume was in fact located
beneath some of plaintiffs' real property; and 21) that
the highest concentrations of Hexavalent Chromium
contamination at the site were extensive and represented
one of the highest "hot spots" of Hexavalent Chromium
contamination in the county, and in particular, "hot
spots" in excess of 170,000 ppbs of Chromium.

8

SAC ¶262.

9

    More compelling is the BAC Defendants' assertion that the SAC

10

does not allege with sufficient particularity the specific

11

Plaintiffs who received any misleading half-truths and/or the ways

12

in which those Plaintiffs relied upon any such statements.  The BAC

13

Defendants cite *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091-93,

14

which concerned allegations that a corporation intentionally

15

misrepresented its financial condition in order to inflate share

16

values.  The California Supreme Court rejected corporate

17

shareholder plaintiffs' attempt to apply the "fraud-on-the-market"

18

doctrine to excuse them from pleading that they actually heard and

19

relied upon the misrepresentations.  Although the *Mirkin* court

20

"[did] not doubt that stock prices adjust in response to the

21

dissemination of material information...., it does not follow that

22

investors will be left without a remedy unless we adopt the fraud-

23

on-the-market doctrine.  Investors, including plaintiffs in this

24

case, already have remedies under federal and state law that do not

25

require the pleading or proof of actual reliance."  *Id*. at 1101.

26
27
28

15

Plaintiffs rejoin by citing *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 191-192 (1992), for the proposition that liability may be imposed where a representation was intended to be relied upon by the public or a general class of persons that includes the plaintiffs.  Doc. 555 at 13.  *Barnhouse* did indeed hold that "[i]t is not necessary that the maker of the representation have any particular person in mind.  It is enough that he intends or has reason to expect to have it repeated to a particular class of persons and that the person relying upon it is one of that class."  *Id.* (internal citation and quotations omitted).  But, in so holding, *Barhnouse* was concerned with whether a subsequent purchaser of a property, not in privity with the developer, could sue the developer for deceit by nondisclosure.  *Id.* at 193.  *Barnhouse* answered this question in the affirmative, finding that "it is foreseeable that there will be [subpurchasers] and that they will be the ones to suffer damage."  *Id*.

Although *Barnhouse* arguably permits the participation of Plaintiffs who were not owners of the properties at the time the BAC Defendants made their alleged half-truth statements, it does not excuse the requirement that the fraud be pled with particularity.  Here, although the complaint does specify who made the statements on behalf of the BAC Defendants, Plaintiffs do not identify who received the statements.  Plaintiffs only allege that the misrepresentations were aimed at the "BAC Contamination

16

Plaintiffs," as opposed to the "Yosemite Plaintiffs," as those categories are defined in the complaint.  This is insufficient.

Likewise, Plaintiffs assert they have adequately pleaded reliance in compliance with California Civil Code § 1711, which provides:

> Deceit upon the public, etc. One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.

This concerns only the intent to defraud, and "simply points out that one who makes false representations with fraudulent intent need not have any particular victim in mind." *Mirkin*, 5 Cal. 4th at 1092.  Nevertheless, "[l]itigants who rely on section 1711 must still plead and prove actual reliance." *Id*.  Although the complaint generally alleges that Plaintiffs "reasonably relied upon [the information given by the BAC Defendants] in failing to take appropriate measures to protect themselves and their families as well as their real properly from exposure to contamination and in failing to seek redress...for their injuries," SAC at ¶267, the lack of specificity in these allegations does not provide the BAC Defendants with sufficient information upon which to build a defense to a fraud claim.  Plaintiffs must identify by name specific Plaintiffs who received the allegedly misleading information and relied upon it to their detriment.

17

1

IV. <u>CONCLUSION</u>

2

    For the reasons set forth above, Defendants' motion to dismiss

3

is GRANTED WITH LEAVE TO AMEND.  Plaintiffs shall have ten (10)

4

days from electronic service to file an amended complaint.

5

6

SO ORDERED

7

Dated:  October 16, 2009

8

                            <u>/s/ Oliver W. Wanger</u>

                              Oliver W. Wanger

9

                   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28