UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL VALENCIA ABARCA, *et al.*, | 1:07-CV-00388 OWW DLB |
| Plaintiffs, | MEMORANDUM DECISION RE BAC DEFENDANTS' MOTION TO DISMISS THE FIFTEENTH CLAIM FOR FRAUD AND TO DISMISS AND/OR STRIKE CONSPIRACY TO COMMIT FRAUD ALLEGATIONS OF PLAINTIFFS' SIXTEENTH CLAIM (DOC. 588) |
| v. | |
| MERCK & CO., INC., et al. | |
| Defendant. | |

I. <u>INTRODUCTION</u>

Defendants Merck & Co., Inc., Amsted Industries, Inc., Baltimore Aircoil Company, Inc., and Track Four, Inc., (the "BAC" Defendants"), move to dismiss the fifteenth claim for "Fraud and Deceit" in Plaintiffs' Seventh Amended Complaint ("7thAC") on the ground that Plaintiffs have failed to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Doc. 588. BAC Defendants also move to dismiss and/or strike Plaintiff's sixteenth claim for conspiracy to the extent that claim is based on Plaintiffs' fraud

1

allegations.  *Id*.  Plaintiffs oppose dismissal.  Doc. 616.  The BAC Defendants replied.  Doc. 625.  Oral argument was heard on March 15, 2010.

## II. <u>STANDARDS OF DECISION</u>

Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity.  Rule 9(b) "demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations and quotations omitted).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Id*.  "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction."  *Id*.

> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs;" (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Id*. at 1125.

2

## III. DISCUSSION

### A. Motion to Dismiss Fifteenth Cause of Action.

#### 1. Previous Rulings.

This is the third time the BAC Defendants have moved to dismiss Plaintiffs' fraud allegations for failure to comply with Rule 9(b). *See* Docs. 419 & 562. Although the district court did not adopt every argument raised by the BAC Defendants, both previous motions were granted with leave to amend.

In an October 16, 2009 Memorandum Decision, the district court addressed the fraud allegations in Plaintiffs' Sixth Amended Complaint ("6thAC"), which focused on alleged "half-truths" contained in statements made by the BAC Defendants. Rejecting the BAC Defendants' argument that "half-truths" cannot trigger fraud liability in the absence of a "special relationship" (e.g. parties to a real estate transaction), it was recognized that, under *Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066 (1997), no such special relationship is required. Doc. 562 at 6-10. In addition, the district court found that Plaintiffs "sufficiently alleged that the BAC Defendants had a duty not to tell half-truths because the BAC Defendants allegedly spoke out about contamination and spoke misleadingly. Proof is not required at the

pleading stage." *Id*. at 12.  However, the fraud claim nevertheless failed to satisfy the requirements of Rule 9(b) because it failed to "identify by name specific Plaintiffs who received the allegedly misleading information and relied upon it to their detriment." *Id*.

At oral argument, the information needed to satisfy Rule 9(b) was discussed, and it was determined that Plaintiffs must provide a list of "specific plaintiffs that [] received the information, relied upon the information and acted accordingly":

> THE COURT: ***  Let us turn to the motion which is to dismiss the 18th claim for fraud and to dismiss and strike the conspiracy to commit fraud allegations.
> Based primarily on Rule 9(b) considerations, we have
> in effect been here before. And without going through, there are a number of cases that are discussed on both sides. We discussed this on earlier occasions.
> And what concerns the Court is that where deceit type of fraud, as prescribed by the California Civil Code, even where there are omissions to disclose or where there are half truths, we have previously ruled that there is not a special relationship that would give rise to a special duty of disclosure. It is recognized that when anybody speaks, and they speak about a matter that has the potential to injure somebody, that they ought to speak accurately.
> But the Court's concern is that I still believe that there has to be an allegation that one or more of the plaintiffs relied on anything that a defendant said. And we still don't have that in this complaint.
> And so to get to the bottom of this quickly, I'm going to give one last opportunity to

4

|   |   |
|---|---|
| 1 | amend....there has to be actual reliance, actual |
| 2 | reliance means that you heard or saw or were a |
| 2 | recipient of the communication and that you then |
| 3 | acted to your detriment in some way. In other |
|   | words, that you relied. That is what the law |
| 4 | calls for. |

                     ***
         MR. MARDEROSIAN: This is Mick Marderosian on
         behalf of plaintiffs. Just a point of
         clarification.

         THE COURT: Yes.

         MR. MARDEROSIAN: In terms of our efforts to
         amend to satisfy legal requirements noted by the
         Court.
         THE COURT: Right.

         MR. MARDEROSIAN: <u>Does the Court -- is the court
         indicating that in -- at this stage of the
         pleading stage, that you want us to identify by
         name specific plaintiffs that have received the
         information, relied upon the information and
         acted accordingly</u> --

         THE COURT: <u>Yes</u>.

         MR. MARDEROSIAN: -- to their damage? Specific
         names of plaintiffs.

         THE COURT: Yes.

         MR. MARDEROSIAN: We can do that.

         THE COURT: Okay. Well, if you can, that's what
         the law calls for and so that would be
         sufficient.

         MR. MARDEROSIAN: We'll do that.

Doc. 558 at 5-9 (emphasis added).  Defendants

acknowledged that Plaintiffs would be providing a "list

of the plaintiffs":

         MR. GILHULY: <u>Your Honor, I take it in
         identifying the plaintiffs that we're going to</u>

5

1 | <u>**have a list of the plaintiffs in the complaint**</u>.

2 | **THE COURT: That's what was just stated. You'll
3 | have names. Identities.**

4 | **MR. GILHULY: The current complaint does not have
  | a caption that includes all the plaintiffs. And
5 | I take it, then, that what Mr. Marderosian is
  | proposing is that we will now have a caption
6 | that includes --**

7 | **MR. MARDEROSIAN: Yes. We'll correct that.**

8 | **MR. GILHULY: Thank you, Your Honor. That's the
9 | only additional concern. And we'll submit.**

10 | *Id.* at 9 (emphasis added).

12 | 2. <u>**Allegations in the Seventh Amended Complaint's
   | Fifteenth Claim for Relief.**</u>

13 | The Fifteenth Claim for Relief in the 7thAC is

brought on behalf of 291 named Plaintiffs listed in

paragraph 212 who "received the misleading and deceptive

information as more particularly described in Paragraphs

213 - 216 ... and who relied upon such information to

their detriment as more particularly described in

Paragraph 221."  Paragraphs 213 through 216 describe the

nature of the communications issued by the BAC

Defendants:

> 213. Commencing in or about 1991 and
> continuing thereafter, MERCK, AMSTED, BAC and
> TRACK FOUR (hereinafter the "MERCK DEFENDANTS"),
> by and through their managing agents, officers
> and directors, including but not limited to Joe
> Grillo - Merck; Ed Brosius - Amsted; Ned Speizer
> - Merck; Gail Driscoll - Merck; Beryl Kuder -
> Merck; Kenneth Shafer - BAC; Bob Jones - BAC;
> Will Foster - Merck; Donna Norbury - Merck;
> Byron Speice - BAC; Bruce Manchon - IT

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Corporation on behalf of Merck, Amsted and BAC; Monte Hamamoto - US Filter/Metcalf and Eddy on behalf of Merck, Amsted and BAC, engaged in a deliberate and intentional effort to deceive and mislead the residents of Beachwood, including plaintiffs identified above regarding the significant nature and extent of the contamination emanating from the former BAC facility, both on and offsite; mislead these plaintiffs regarding the potential exposure pathways that existed which could have exposed plaintiffs to the contaminants; mislead these plaintiffs regarding the potential health affects from exposure to the contaminants; and mislead these plaintiffs as to the likelihood that plaintiffs had in fact been previously or could currently be exposed to the contaminants emanating from the former BAC facility.

214. The efforts by the MERCK DEFENDANTS, by and through their managing agents, officers and directors as previously identified, <u>included a series of direct communications with plaintiffs identified above</u>, generally discussing construction activities related to remediation at the BAC facility and in some instances asking permission to access plaintiffs' property; containing general information related to contamination on the facility site itself; containing information related to general remediation activities including the removal of onsite contaminated soil; identifying the contamination at the site as "non-hazardous"; stating that the MERCK DEFENDANTS were "voluntarily" cleaning up the site, including the cleanup of the contaminated storm water pond located at the facility; and representing that the MERCK DEFENDANTS were being "good neighbors" by cleaning up the environment in the neighborhood and "assuring" the public that treatment for the contamination was underway. <u>This communication included but was not limited to, personal one-on-one conversations with residents</u> by the BAC Plant Manager Ken Shafer, Ned Speizer - Merck's lead engineering representative on the BAC remediation, Ed Brosius of Amsted and Gail Driscoll of Merck; <u>the initiation of press releases</u> (dated July 7, 1992) <u>and newspaper articles</u> (including two May 1991 articles in The Merced Sun-Star); <u>direct mailings</u> (including but not limited to "Dear Neighbor" notifications dated June 17, 1993, and August 24, 1994), <u>and various correspondences directed at plaintiffs identified above</u>.

7

> 215. In a newspaper article published in a local Merced paper (Merced Sun-Star) May 10, 1991, the MERCK DEFENDANTS, by and through Ken Shafer - plant manager for the BAC facility - who was specifically authorized by the MERCK DEFENDANTS to speak on their behalf related to the contamination, stated among other things that the chemicals utilized at the plant were "not hazardous" and that they were not required to take the contaminated soil excavated from the facility to the Kettleman Hills toxic waste site, but they were doing so because it was the "best thing for the environment." In the same article, Will Foster of Merck, authorized to speak about the contamination on behalf of the MERCK DEFENDANTS, stated that the cleanup stemmed from a "good corporate citizen policy" and was "not under any order." The article further referenced BAC officials as stating that BAC-Pritchard was the one who first involved the Water Board and Health Department between 1986 and 1987.
>
> 216. Each of the above referenced communications directly from the MERCK DEFENDANTS to the Beachwood neighborhood including the plaintiffs identified herein, while discussing certain aspects of the contamination and remediation at the former BAC facility, <u>failed to include material information concerning the contamination which rendered the information contained within these communications as half-truths calculated to deceive plaintiffs</u>. [Specific examples of allegedly material information excluded from the communications omitted.]

(Emphasis added.)

Paragraph 221 alleges generally that the listed Plaintiffs reasonably relied on Defendants' representations to their detriment:

> 221. In light of the MERCK DEFENDANTS' perceived superior knowledge regarding these issues, the plaintiffs identified herein reasonably relied upon the representations and implications that were made by the MERCK DEFENDANTS minimizing the extent of contamination and any health threats from the BAC facility and reasonably relied upon this information in failing to take appropriate

8

```
                    measures to protect themselves and their
                    families as well as their real property from
                    exposure to contamination and in failing to seek
                    redress from the MERCK DEFENDANTS for their
                    injuries.  Specifically, had plaintiffs
                    identified herein been provided with accurate
                    and complete information and disclosure related
                    to the above, plaintiffs identified herein would
                    have: 1) sought early diagnostic testing with
                    regard to the potential health affects of any
                    contaminant exposure; 2) sought and/or received
                    medical intervention, diagnosis and treatment
                    for injuries otherwise unknown to have resulted
                    from contaminant exposure; 3) moved from the
                    area thereby preventing and/or mitigating the
                    personal injuries now sustained as a result of
                    exposure to the contaminants; 4) refrained from
                    activities on or near their properties,
                    including maintaining and eating from home
                    gardens or fruit trees, fishing and/or swimming
                    in the El Capitan Canal, so as to minimize risks
                    associated with exposure to the contaminants; 5)
                    would have sought to undertake their own inquiry
                    or request further investigation of the extent
                    of contamination or health risks associated with
                    the contamination; 6) would have refused the
                    MERCK DEFENDANTS' requests for access to their
                    property or allowing the MERCK DEFENDANTS to
                    engage in activities on their property which
                    resulted in exposure to contaminants and/or
                    which significantly impacted the value of
                    plaintiffs' property.
```

3. <u>Analysis.</u>

The BAC Defendants now argue that the list of names provided in the 7thAC, along with the allegations of receipt of the misleading information and reliance upon it, is still not specific enough.  The BAC Defendants maintain that the current allegations could be consistent with a number of scenarios.  For example, it could be that <u>all</u> of the listed Plaintiffs received <u>all</u> of the allegedly misleading communications and relied on those

documents in <u>all</u> of the ways alleged.  Alternatively, it could be that certain of the listed Plaintiffs received some, but not all, of the allegedly misleading communications, and, in turn, relied upon those communications in some, but not all, of the manners of reliance alleged in the 7thAC.  The BAC Defendants seek detailed allegations, explaining which Plaintiff received which misleading document, and the nature of each Plaintiff's reliance to his or her detriment.

In support of their contention that Rule 9(b) requires this level of detail at the pleading stage, the BAC Defendants cite *Akerman v. Northwestern Mutual Life*, 172 F.3d 467 (7th Cir. 1999), in which "several hundred" insurance policy holders claimed defendants participated in a scheme to convince plaintiffs to use the cash value of their existing policies to pay premiums for new, more costly policies.  *Id.* at 468-69.  As the Seventh Circuit explained:

> In order to make a complaint with hundreds of plaintiffs manageable, the plaintiffs' lawyers grouped their clients according to the particular insurance agent with whom each dealt. The complaint does not, however, give the dates on which any of the fraudulent representations or omissions were made, although it does indicate that they were made around the time that the policies were issued to the specified plaintiffs. Neither does the complaint reveal what exactly each agent said to each plaintiff; it merely gives the gist of the agents' spiel in approximately the terms in which we have summarized the alleged scheme. The lawyers admit

>       that they did not talk to all their clients
>       before drafting the complaint.

*Id.* at 469.   This approach to pleading a fraud claim was deemed insufficient in light of the purpose of Rule 9(b):

>       The purpose of requiring that fraud be pleaded
>       with particularity is not, as it might seem and
>       the cases still sometimes say, [citations], to
>       give the defendant in such a case enough
>       information to prepare his defense. A charge of
>       fraud is no more opaque than any other charge.
>       The defendant can get all the information he
>       needs to meet it by filing a contention
>       interrogatory. See Fed.R.Civ.P. 33(c)
>       [citations]. The purpose (the defensible
>       purpose, anyway) of the heightened pleading
>       requirement in fraud cases is to force the
>       plaintiff to do more than the usual
>       investigation before filing his complaint.
>
>       Greater precomplaint investigation is warranted
>       in fraud cases because public charges of fraud
>       can do great harm to the reputation of a
>       business firm or other enterprise (or
>       individual); because fraud is frequently charged
>       irresponsibly by people who have suffered a loss
>       and want to find someone to blame for it; and
>       because charges of fraud (and also mistake, the
>       other charge that Rule 9(b) requires be pleaded
>       with particularity) frequently ask courts in
>       effect to rewrite the parties' contract or
>       otherwise disrupt established relationships. By
>       requiring the plaintiff to allege the who, what,
>       where, and when of the alleged fraud, the rule
>       requires the plaintiff to conduct a precomplaint
>       investigation in sufficient depth to assure that
>       the charge of fraud is responsible and
>       supported, rather than defamatory and
>       extortionate.   Similar reasons explain why fraud
>       plaintiffs are frequently required to prove
>       their case by clear and convincing evidence
>       rather than the usual mere preponderance, but it
>       is important to note that the heightened
>       pleading and heightened proof requirements do
>       not move in lockstep with each other. Rule 9(b)
>       requires heightened pleading of fraud claims in
>       all civil cases brought in the federal courts,
>       whether or not the applicable state or federal
>       law requires a higher standard of proving fraud,
>       which sometimes it does and sometimes it does
>       not.

```
 1                  Almost two years into this suit, when the
                    district judge threw out the fraud claim on 9(b)
 2                  grounds, the plaintiffs' lawyers still had not
                    completed the required investigation. They
 3                  hadn't even talked to all their clients. It
                    cannot be assumed that the agents' spiel was
 4                  fraudulent in every instance in which it was
                    given. The use of cash values to finance a new
 5                  policy is not on its face a fraudulent
                    practice.... More than a description of such an
 6                  offer is necessary to show that it is
                    fraudulent, but that is all the complaint
 7                  contains. Had the plaintiffs' lawyers
                    interviewed all their clients, they could have
 8                  obtained not only a description of the
                    representations or omissions that worked a fraud
 9                  on the particular client but also the
                    approximate date of the fraud, since the date
10                  the policy was issued to the particular client
                    would appear on the copy of the policy in the
11                  client's possession. On the importance to
                    compliance with Rule 9(b) of the "when."
12
                    Of course with hundreds of clients, compliance
13                  with Rule 9(b) is burdensome. But you cannot get
                    around the requirements of the rule just by
14                  joining a lot of separate cases into one. You
                    may be able to do so by filing a class suit,
15                  which the plaintiffs' lawyers failed to do. Now
                    that it is acknowledged that tort claims can be
16                  litigated as class suits, even though there are
                    bound to be differences (if only in damages)
17                  among the claimants, a tension has arisen
                    between Rule 9(b) and Rule 23, in class suits
18                  that charge fraud. If Rule 9(b) is applied to
                    every member of a class of fraud victims, the
19                  practical effect is to turn the class suit into
                    the sort of unwieldy multiple-plaintiff suit
20                  that we have here. But if, in recognition of
                    this problem, Rule 9(b) is applied only to the
21                  named plaintiff or plaintiffs, the defendant
                    will be faced with fraud charges the bulk of
22                  which have not received the kind of searching
                    precomplaint investigation that the rule
23                  requires. The dilemma is resolved in securities
                    cases in favor of the class action, but these
24                  tend to be cases in which the alleged
                    misrepresentation or omission is uniform across
25                  all members of the class. Where, as in this
                    case, the fraud involves different statements to
26                  different customers with whom the defendant's
                    agents dealt individually, the class action
27                  device is more questionable. But we need not
                    decide whether this suit could have been brought
28                  as a class suit. It was not, and this means that
                                       12
```

> Rule 9(b) applied in full force; and it was not complied with.

*Id.* at 469-71 (internal citations omitted).

A similar result was reached in *Rodriuguez v. It's Just Lunch International*, 2009 WL 399728 (S.D.N.Y. Feb. 17, 2009), where seven plaintiffs who alleged they were fraudulently induced to enter into contracts for matchmaking services by misrepresentations regarding the quality of the services. Their complaint was dismissed on Rule 9(b) grounds because it failed "to identify precisely which defendant made the representation, what was said and to which plaintiff the statement(s) was made." *Id.* at *4. Specifically, plaintiffs' asserted "in generalized terms, [that] 'lies' were spoken, but they fail to identify ... who heard the lies; ... how the 'lies' deceived a particular plaintiff(s); or how the 'lies' caused injury to a particular plaintiff(s)." *Id.* at *5. *See also Raymond v. Merrill Lynch*, 1991 WL 520500 (C.D. Cal. Aug. 5, 1991) (complaint brought by nine investors dismissed pursuant to Rule 9(b) because it failed to identify "to which plaintiff" various alleged misrepresentations were made); *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283 (S.D. Fla. 2007) (complaint alleging that misrepresentations were made to "one or more" of six condominium purchasers by a

13

developer and real estate agent lacked sufficient specificity under Rule 9(b) because it permitted "a more than reasonable inference that certain plaintiffs never heard the misrepresentations").

Here, although this case is arguably distinguishable from *Ackerman* because there is no suggestion that counsel for Plaintiffs failed to conduct adequate investigation, the end result is the same.  The complaint does not specifically articulate either the nature of the communications received by each Plaintiff or the actions each Plaintiff undertook in reliance on those communications.  The complaint as currently articulated would only be satisfactory if <u>all</u> 291 named plaintiffs received <u>all</u> of the allegedly misleading communications and relied on them to their detriment in all of the ways listed in the complaint.  If this is the case, Plaintiffs may so indicate in an amended complaint.  Otherwise, Plaintiffs must specifically articulate which Plaintiffs received which allegedly misleading, half-truth communications and how each Plaintiff relied upon those communications to their detriment.[1]  The BAC Defendants' motion to dismiss the Fifteenth Cause of Action is

---

[1] That the district court did not specifically articulate this requirement during oral argument on the previous motion to dismiss is of no moment.  The specific issue presented here was not before the court at that time.

14

GRANTED WITH LEAVE TO AMEND, because Plaintiffs have arguably come close to complying with Rule 9(b).

      a.    BAC Defendants' Rule 11 Argument.

The BAC Defendants' argument that Plaintiffs cannot allege their present fraud claim in compliance with Rule 11 need not be addressed, as it appears that Plaintiffs can and will add the required specificity.

      b.    BAC Defendants' Renewed Arguments Re: *Randi W.*

The BAC Defendants also attempt to revisit the district court's previous ruling regarding the application of *Randi W. v. Muroc Joint Unified Sch. Dist.,* 14 Cal. 4th 1066 (1997).  The October 16, 2009 Memorandum Decision concluded that *Randi W.* stood for the proposition that one may be liable for telling half-truths even in the absence of a "special relationship" between the speaker and listener, where there is a "substantial, foreseeable risk of physical injury" to the listener or third persons.  *See* Doc. 562 at 10-11.

The BAC Defendants now argue that, although the *Randi W.* court did permit a fraud claim where there was arguably no transactional or special relationship between the plaintiff and the defendant, it did so only because the defendant "made statements that were unarguably

false."  Doc. 589 at 15.  Specifically, the *Randi W.* concerned a letter of recommendation for a vice principal that implied he was fit to interact with female students, despite the fact that he had been charged with relevant sexual improprieties.  14 Cal. 4th 1066.  But, contrary to the BAC Defendants' assertions, this case is indistinguishable from *Randi W*.  Here, Plaintiffs contend that the statements made by the BAC Defendants implied that Plaintiffs were safe to live in their homes, drink their water, eat home-grown fruits and vegetables, etc.  Assuming the truth of Plaintiffs' allegations, any such implication was "unarguably false" in light of the real facts known to Defendants.  *Randi W.* is directly on point.  The BAC Defendants' motion to dismiss on this ground is DENIED.

B.  <u>Motion to Strike Civil Conspiracy Allegations in Sixteenth Claim for Relief.</u>

Plaintiffs concede that their conspiracy allegations in the Sixteenth Claim for Relief "necessarily rise and fall based upon the adequacy of the fraud claim...."  Doc. 616 at 8.  Accordingly, because the fraud claim is dismissed with leave to amend, the civil conspiracy allegations are STRICKEN WITH LEAVE TO AMEND.

| | |
|---|---|
| 1 | **IV. <u>CONCLUSION</u>** |
| 2 | For the reasons set forth above: |
| 3 | (1) The BAC Defendants' motion to dismiss the |
| 4 | Fifteenth Claim for Relief for failure to specifically |
| 5 | allege (a) which Plaintiffs received which allegedly |
| 6 | fraudulent communications and (b) how each Plaintiff |
| 7 | relied upon those communications to their detriment is |
| 8-9 | GRANTED WITH LEAVE TO AMEND; |
| 10 | (2) The BAC Defendants' motion to dismiss based on |
| 11 | their renewed attempt to distinguish *Randi W.* is DENIED; |
| 12 | (3) The BAC Defendants' motion to strike the |
| 13 | allegations in the Sixteenth Claim for Relief based on |
| 14-15 | civil conspiracy grounded in fraud is GRANTED WITH LEAVE TO AMEND. |
| 17 | Plaintiffs shall have ten (10) days following |
| 18 | electronic service of this decision to file an amended |
| 19 | complaint. |

SO ORDERED
Dated:  March 16, 2010

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge

17