1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| ABARCA, RAUL VALENCIA, et al.,<br><br>          Plaintiffs,<br><br>               v.<br><br>MERK & CO., INC., et al.,<br><br>          Defendants. | 1:07-cv-0388 OWW DLB<br><br>ORDER GRANTING PLAINTIFFS'<br>MOTION TO AMEND EIGHT AMENDED<br>COMPLAINT (DOC. 1371) |
| --- | --- |

I. <u>INTRODUCTION.</u>

        Pursuant to the discussions at the hearing on July 11, 2011,

Plaintiffs move for leave to amend the current, operative

complaint, the Eighth Amended Complaint ("Complaint") to allege

specific claims against Defendants Merk & Co., Inc. ("Merk"),

Amsted Industries, Inc. ("Amsted") and Baltimore Aircoil Company

("BAC"), based upon their alleged vicarious and direct liability

for the actions and activities at the former BAC-Pritchard, Inc.

facility (the "Site"). Plaintiffs have identified each change to

the existing allegations of the Complaint, as well as the

substance of new claims sought to be added to the Complaint.

//

1                            II. <u>FACTUAL BACKGROUND</u>

2    A.    <u>Background.</u>

3          Plaintiffs allege exposure to chemicals and other substances

4    as a result of environmental releases related to wood treating

5    activities at the Site. Plaintiffs have amended their complaint

6    several times for various reasons. The Complaint names Merk,

7    Amsted, BAC, and Track Four as Defendants affiliated with the

8    Site. It is disputed whether, to what extent, and at when

9    Defendants, Merk, Amsted and BAC owned, directed actions,

10   remediated, and/or operated the Site.

11

12         Corporate liability and/or responsibility for causing

13   releases at the Site has been at issue since the inception of

14   this action. Some discovery was conducted on the issue which was

15   largely curbed when Defendants' filed a *Cottel* motion in March of

16   2009 and shifted the focus of discovery to the scientific

17   evidence concerning exposure issues.  A discovery stay then went

18   into effect around August of 2009 which discontinued all

19   discovery regarding non-exposure issues.

20

21

22   B.    <u>Plaintiffs Amendments.</u>

23         Plaintiffs have added the following statement to identify

24   Defendants as follows:

25         10. Defendant MERCK & CO., INC., ("MERCK") is a New
           Jersey corporation authorized to and doing business in the
26         State of California, County of Merced. <u>From 1970 to 1985,</u>
           <u>MERCK owned 100% of the issued outstanding shares of common</u>
27         <u>stock of defendant Baltimore Aircoil, Inc. ("BAC"). BAC-</u>
           <u>Pritchard, Inc. was a wholly-owned subsidiary of BAC from</u>
28
                                      2

its incorporation in September of 1975 until its dissolution in October of 1993. At all times relevant to this Complaint, MERCK and BAC exercised dominance and control over all the activities of BAC-Pritchard, Inc. Further, BAC-Pritchard, Inc. acted as the agent and/or joint venturer and/or alter ego of MERCK and BAC during all times relevant to this complaint. Further, at all times relevant to this Complaint, MERCK and BAC had knowledge of and ratified the operations, conduct and activities of BAC-Pritchard, Inc. Liability under each claim against this entity as hereinafter alleged, is sought based upon the independent conduct of MERCK, as well as the vicarious liability of MERCK and BAC with regard to the operations, activities and conduct of BAC-Pritchard, Inc."

11. Defendant Amsted Industries, Inc. ("AMSTED") is an Illinois corporation authorized to and doing business in the State of California, County of Merced. From 1985 to the present, defendant Baltimore Aircoil, Inc. ("BAC") has been a wholly-owned subsidiary corporation of AMSTED. BAC-Pritchard, Inc. was a wholly-owned subsidiary of BAC from its incorporation in September of 1975 until its dissolution in October of 1993. At all times relevant to this Complaint, AMSTED and BAC exercised dominance and control over all the activities at BAC-Pritchard, Inc. Further, AMSTED acted as the agent and/or joint venture and/or alter ego of MERCK and BAC during all times relevant to this complaint. Further, at all times relevant to this Complaint, AMSTED and BAC had knowledge of and ratified the operations, conduct and activities of BAC-Pritchard, Inc. Liability under each claim against this entity as hereinafter alleged, is sought based upon the independent conduct of AMSTED, as well as the vicarious liability of AMSTED and BAC with regard to the operations, activities and conduct of BAC-Pritchard, Inc."

12. Defendant Baltimore Aircoil Company, Inc. ("BAC") is an Illinois corporation authorized to and doing business in the State of California, County of Merced. From 1970 to 1985, MERCK owned 100% of the issued outstanding shares of common stock of defendant Baltimore Aircoil, Inc. ("BAC"). BAC-Pritchard, Inc. was a wholly-owned subsidiary of BAC from its incorporation in September of 1975 until its dissolution in October of 1993. From 1985 to the present, defendant Baltimore Aircoil, Inc. ("BAC") has been a wholly-owned subsidiary of AMSTED. At all times relevant to this Complaint, MERCK, AMSTED and BAC exercised dominance and control over all the activities at BAC-Pritchard, Inc.

1
2
3
4
5
6

<u>Further, AMSTED and MERCK acted as the agent and/or joint venturer and/or alter ego of MERCK and BAC during all times relevant to this complaint. Further, at all times relevant to this Complaint, MERCK, AMSTED and BAC had knowledge of and ratified the operations, conduct and activities of BAC-Pritchard, Inc. Liability under each claim against this entity as hereinafter alleged, is sought based upon the independent conduct of BAC, as well as the vicarious liability of BAC with regard to the operations, activities and conduct of BAC-Pritchard, Inc.</u>

7
8

In those claims in which Merk, Amsted and BAC have been

named, Plaintiffs now identify Defendants as follows:

9
10
11
12
13
14

MERCK, individually, and by and through its' wholly-owned subsidiaries, BAC, and BAC's wholly-owned subsidiary BAC-Pritchard, Inc., AMSTED, individually, and by and through its wholly-owned subsidiary BAC and BAC's wholly-owned subsidiary BAC-Pritchard, Inc., and BAC, individually, and by and through its' wholly-owned subsidiary BAC-Pritchard, Inc. and DOES 51 - 100, and each of them, through their employees, agents including their wholly-owned subsidiaries BAC and BAC-Pritchard, Inc.

15
16
17
18
19
20
21

Plaintiffs now identify BAC-Pritchard, Inc., as a member of

the alleged conspiracy in Plaintiffs' Sixteenth Claim for Civil

Conspiracy. Plaintiffs have added claims for Principal/Agent

Liability; Joint Venture Liability and Alter Ego Liability. The

facts supporting each of these claims are specifically alleged

within the proposed amendments.

22
23

III. <u>LAW AND ANALYSIS.</u>

A.    <u>Standards of Fed. R. Civ. Pro. Rule 15 And 16.</u>

24
25
26
27
28

Once a pretrial scheduling order pursuant to Rule 16 has

been entered, the standards of Rule 16 rather than Rule 15 govern

amendment of the pleadings. *See Johnson v. Mammoth Recreations*,

1    *Inc*. 975 F.2d 604, 607-08 (9th Cir. 1992); *Eckert Cold Storage,*

2    *Inc. v. Behl*, 943 F. Supp. 1230, 1232-33 (E.D. Cal. 1996). The

3    good cause requirement of Rule 16 primarily considers the

4    diligence of the party seeking the amendment. The pretrial

5    scheduling order can only be modified "if it cannot reasonably be

6    met despite the diligence of the party seeking the extension."

7    *Mammoth Recreations*, 975 F.2d at 609.

8

9         After the moving party has demonstrated diligence under Rule

10   16 the standard under Rule 15 is applied to determine whether

11   amendment is proper. *See Mammoth Recreations*, 975 F.2d at 608;

12   *Eckert Cold Storage*, 943 F.Supp. at 1232 n. 3. The Ninth Circuit

13   has instructed that the policy favoring amendments "is to be

14   applied with extreme liberality." *Morongo Band of Mission Indians*

15   *v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990).

16

17        A court should consider the following four factors in

18   determining whether to grant leave to amend: (1) undue delay, (2)

19   bad faith, (3) futility of amendment, and (4) prejudice to the

20   opposing party. *United States v. Pend Oreille Public Utility*

21   *Dist. No. 1.*, 926 F.2d 1502, 1511 (9th Cir.1991). Delay alone is

22   not sufficient grounds for denying leave to amend. *Id.* It must be

23   accompanied by one of the other three factors; prejudice to the

24   opposing party is the most important consideration. *Eminence*

25   *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003)

26

27   ("Prejudice is the 'touchstone of the inquiry under [R]ule 15(a)'

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

") (*citing Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238

F.3d 363, 368 (5th Cir.2001)). In the absence of prejudice or a

strong showing of any of the remaining factors, there is a

presumption under Fed R. Civ. P. 15(a) in favor of granting leave

to amend. *Id*. "'Where there is a lack of prejudice to the

opposing party and the amended complaint is obviously not

frivolous, or made as a dilatory maneuver in bad faith, it is an

abuse of discretion' to deny leave to amend." *Pend Oreille*, 926

F.2d at 1511–1512 (*citing Howey v. United States*, 481 F.2d 1187,

1190–1191 (9th Cir.1973)).

The non-moving party bears the burden of showing why leave

to amend should not be granted. *Genetech, Inc. v. Abbott Labs.*,

127 F.R.D. 529, 530–31 (N.D.Cal.1989). *Id*.

  1.   Rule 16: Good Cause.

Neither party addresses the good cause standard of Rule 16.

The relevant facts are as follows: The Phase 1 Final Pretrial

Order pertains only to Phase 1 of this multi-phase action.  The

Phase 1 Pretrial Order focused on general causation, i.e.,

contaminates of concern "reach[ing] any location where plaintiffs

could have been exposed to them, and if so, when such

contaminants arrived, how such contaminants arrived at the

location, how long they were present, and at what levels they

were present."  (Doc. 540 at 1.)  Discovery in Phase 1 was

limited to "the issues relevant to exposure" including:

**6**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

            (b) BAC Site operations and history relevant to
            identification of the presence, amount and concentration of
            contaminants at the BAC Site and in the environment.

(Phase 1 Pretrial Order at 2:14-16).

      Significant confusion arose regarding the exact evidence to be presented at trial.  The parties and the Court were not in unison about whether evidence of corporate liability – e.g., theories of vicarious liability, principal/agency, piercing the corporate veil, and the like – would be tried in Phase 1 or corporate responsibility for exposure – e.g., a basic jury decision regarding who owned and/or operated the Site during the relevant time period.

      Defendants argue they understood that the Phase 1 jury would be asked to identify the entities that caused the release of contaminants at the BAC Site and assign legal responsibility. Defendants filed a trial brief, which they believe was "clearly framed . . . in accordance with the [Order]," that "contain[s] a detailed discussion of the relationships among Merk, Amsted, Baltimore Aircoil, and the various facility owners and operators [and] discusse[s] controlling California case law."

      The Court understood, as Defendants point out, that Phase 1 would not "assign legal responsibility," but would include "who owned, who operated [the Site], what was done through the period that the lawsuit encompasses."  (Lewis Decl., Ex. 1, Feb. 1, 2011 Rough Transcript at 42:5-9.)

Plaintiffs acknowledge that corporate liability and/or exposure responsibility was an issue for one of the phases at trial and at certain times Plaintiffs represented that they would be able to present sufficient evidence on the subject during Phase 1.  Yet once Phase 1 began, Plaintiffs had not completed discovery on the issue and did not present a case. (Doc. 1371-1, MTA at 5:26-27.) Plaintiffs argue that discovery was not complete because Defendants filed their *Cottel* motion on March 23, 2009 which wholly shifted the focus of discovery to the complex and consuming medical and scientific evidence.  The *Cottel* motion was followed by a stay of discovery in or around August of 2009 which discontinued discovery on corporate liability issues.

During discussion on jury instructions after Phase 1 evidence closed, the Court determined that, due to confusion about the specifics of corporate liability/responsibility evidence to be presented in combination with the discovery stay and *Cottel* motion, insufficient evidence was presented for a jury determination on the subject at that time. *U.S. v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007) ("the district court is given broad discretion in supervising the pretrial phase of litigation."); *and see* Fed. R. Civ. Pro. 42(b). In light of the above, Plaintiffs were diligent in complying with the Phase 1 Pretrial Order.

B.    <u>Rule 15: Undue Delay And Prejudice.</u>

1    Once the requisite showing is made under Rule 16, the

2    inquiry turns to Rule 15.  Defendants argue that (1) Plaintiffs

3    have unduly delayed in requesting leave to amend to add their

4    corporate liability claims and (2) allowing Plaintiffs to amend

5    will cause undue delay of trial, both of which amount to

6    prejudice to Defendants.

7

8         1.    Undue Delay in Amending.

9    Defendants argue that Plaintiffs have unduly delayed in

10   filing for leave to amend.  They contend that the stay on

11   discovery does not excuse a failure to amend the Complaint to

12   allege the proper claims.  Defendants pointed out at the August

13   1, 2011 hearing that in their answer to the second amended

14   complaint in October of 2007, they alleged that they were not

15   successors in any of the entities Plaintiffs had named.  In April

16   of 2008, Defendants stated, Plaintiffs' counsel took a number of

17   depositions to lay the ground work that Merck and Amsted were

18   directly responsible for the claims regarding the Site.  In June

19   of 2008, Plaintiffs' counsel learned that BAC-Prichard was a

20   dissolved corporation.  Defendants contend that despite beginning

21   the discovery process and amending the Complaint several times

22   for other reasons, Plaintiffs only now request leave to add their

23   corporate liability claims.

24        Plaintiffs agree that some discovery has been conducted on

25   this issue.  They rejoin, however, that they were in the process

26

27

28
                                9

of discovering facts related to the ownership and operation of the Site when the *Cottel* motion was filed and shifted the focus of discovery and Plaintiffs' resources to the scientific evidence of the case.  This was followed by the stay on discovery, including discovery on corporate liability, which resulted in a loss of focus on the liability issues and caused delay in requesting leave to amend.

The nature of Plaintiffs' assertions and counter-assertions were made as far back as October of 2007 and Plaintiffs have had many opportunities to amend the Complaint.  Plaintiffs' delay is acknowledged.  However, the fact that Plaintiff could have moved to amend at an earlier time does not by itself constitute an adequate basis for denying leave to amend.  *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001).

2.    <u>Undue Delay of Trial.</u>

Defendants' assert that allowing amendment would delay trial and require additional discovery which is unduly prejudicial to Defendants, citing *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983); *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.d 1393, 1398 (9th Cir. 1986); and *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).

Defendants' cited cases are distinguishable.  *Acri* found no

10

abuse of discretion in denying leave to amend where the

plaintiffs' attorney admitted that plaintiffs' delay in bringing

the new cause of action was a tactical choice in that he felt the

causes of action already stated were sufficient, and the new

claim would necessitate further discovery.  781 F.d at 1398.  No

such admission was given in this case.

*Kaplan* upheld denial of leave to amend where the parties had

"engaged in voluminous discovery. . . trial was only two months

away, and discovery was *completed*."  49 F.3d at 1370 (emphasis

added).  Here, while much discovery has been conducted, it is not

complete on the issue of corporate liability due to the discovery

stay on non-exposure issues.

*M/V American Queen* found that the trial court properly

exercised its discretion in refusing to allow amendment of the

complaint where there was delay in moving to amend of one and a

half years after the case was filed; new allegations would

totally alter the basis of the action, in that they covered

different acts, employees and time periods necessitating

additional discovery; and motion for summary judgment was pending

for possible disposition of case.

The only similar fact here is delay in requesting leave to

amend.  The new allegations will not "totally alter" the basis of

the action.  The corporate liability issues came into focus

around October of 2007 when Defendants filed an answer to

11

1 | Plaintiffs' second amended complaint.  Plaintiffs and Defendants

2 | have already begun discovery on the issue and all parties

3 | acknowledge that corporate liability is an issue for trial.

4 | Defendants state that they prepared for Phase 1 with corporate

5 | liability in mind.  (*See* Doc. 1406 at 4:15-17.)  Defendants

6 | cannot assert that adding these claims totally alters the action.

7 | Finally, while completion of discovery is needed, any prejudice

8 | 

9 | can be avoided though a limited and focused discovery plan that

10 | is not duplicative.

11 | Plaintiffs' motion for leave to amend the Complaint is

12 | GRANTED.

13

14

15 | IV. <u>CONCLUSION.</u>

16 | For the reasons stated:

17 | 1. Plaintiffs' motion for leave to amend is GRANTED.

18 | 2. Discovery shall be re-opened to allow Plaintiffs' to conduct

19 | discovery on the issue of corporate liability. Re-opening of

20 | discovery on this issue is reciprocal for all parties.

21

22 | Plaintiffs shall submit an order in conformity with this

23 | decision within five (5) calendar days following electronic

24 | service of this order.

25 | SO ORDERED.

26 | DATED: August 10, 2011.

27 | /s/ Oliver W. Wanger
Oliver W. Wanger

28 | United States District Judge