**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. 1:07-cv-388 DOC (DLBx)                    Date: January 17, 2012

Title: ABARCA, et al. V. MERCK & CO., INC., et al.

―――――――――――――――――――――――――――――――――――――――

DOCKET ENTRY
            [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
Date:_____                                                                       Deputy Clerk:
                                                                                                  _____
―――――――――――――――――――――――――――――――――――――――

PRESENT:

        THE HONORABLE DAVID O. CARTER, JUDGE

    Julie Barrera                                                       Not Present
   Courtroom Clerk                                                    Court Reporter

   ATTORNEYS PRESENT FOR PLAINTIFFS:ATTORNEYS PRESENT FOR DEFENDANTS:

      NONE PRESENT                                            NONE PRESENT
―――――――――――――――――――――――――――――――――――――――


PROCEEDING (IN CHAMBERS): DENYING MOTION TO ALTER OR
                          AMEND JUDGMENT AND DENYING
                          CERTIFICATION OF APPEAL UNDER 28 U.S.C.
                          § 1292(B)

    Before the Court are a Motion to Alter or Amend Judgment ("Motion to Alter or Amend Judgment') (Docket 1478) and a Motion for Certification of Appeal Under 28 U.S.C. § 1292(b) ("Motion for Certification of Appeal") (Docket 1479) filed by Defendants Merck & Co., Inc., Amsted Industries Incorporated, and Baltimore Aircoil Company, Inc. ("Defendants"). By stipulation of the parties and pursuant to Fed. R. Civ. P. 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. After considering the moving, opposing, and replying papers, the Court hereby DENIES both the Motion to Alter or Amend Judgment and the Motion for Certification of Appeal.

**I. BACKGROUND**

All parties should be familiar with the facts of the case at this point in litigation. For a more detailed recitation of the facts, please refer to the Court's previous Memorandum decisions filed on May 18, 2009, July 15, 2009, and January 5, 2011. Briefly, this is a complex toxic tort action alleging that a wood treatment facility ("BAC site") was a source of contamination that affected Plaintiffs. This case was previously presided over by Judge Oliver W. Wanger of the Eastern District of California. Judge Wanger divided the present action into three phases of trial and presided over the Phase I trial, at which the jury was asked to determine whether contaminants from the BAC site reached a location where Plaintiffs could have been exposed to them, and if so, when and in what amount contaminants arrived, how long they were present and their concentrations. After the jury's verdict, Defendants brought a motion for judgment as a matter of law or, in the alternative, for a new trial. Judge Wanger's ruling on that motion – which he granted in part and denied in part - was his last substantive ruling before he retired from the federal bench. This case was then transferred to Judge David O. Carter of the Central District of California.

Defendants now bring two separate motions. First, Defendants move to alter or amend the Court's Order Re: BAC Defendants' Motion for Judgment as a Matter of Law, or in the Alternative Motion for a New Trial. This Motion challenges the Court's rulings with respect to hexavalent chromium contamination, both by surface water exposure and the air pathway. In its Order, the Court granted the JMOL motion on the issue of surface water exposure from 1992 – 2011. The Court denied the JMOL motion on the issue of exposure through surface water prior to 1992. Defendants' JMOL motion regarding the air pathway echoed their earlier summary judgment and Daubert arguments resolved by the Court's January 5, 2011 order. All of Defendants' air pathway arguments center on their disagreement with Plaintiffs' air modeling expert, Dr. Camille Sears. The Court denied Defendants' arguments regarding Ms. Sears at the summary judgment stage and again at the JMOL stage. Defendants renew many of those arguments in this Rule 59(e) motion to alter or amend a judgment.

Second, in the event this Court denies the Motion to Alter or Amend Judgment with respect to the air exposure pathway, Defendants request that this Court certify for interlocutory appeal under 28 U.S.C. § 1292(b) three alleged errors present in the Court's Order Re: BAC Defendants' Motion for Partial Summary Judgment; Daubert Motions. Again, each of these alleged errors relates to the Court's admission of Ms. Sears' testimony to establish the air pathway.

**II. LEGAL STANDARD**

### A. Rule 59(e): Motion to Alter or Amend Judgment

Under Federal Rule of Civil Procedure 59(e), a motion to amend a judgment may be granted "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron,* 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon,* 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (per curiam, en banc)). "The district court enjoys considerable discretion in granting or denying the motion." *Id.* A party must file to alter or amend a judgment no later than 28 days after the entry of the judgment. Fed. R. Civ. Pro. 59(e).

For evidence to classify as "newly discovered" it must "be discovered after the judgment" and "could not be discovered earlier through due diligence" and must be "of such a magnitude that had the court known of it earlier, the outcome would like have been different." *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 n.17 (9th Cir. 2003) (affirming a district court's denial of a Rule 59(e) motion because it was not shown that the "newly discovered evidence" could not have been discovered earlier through due diligence).

### B. 28 U.S.C. § 1292(b): Interlocutory Appeal

An interlocutory appeal is appropriate where the order subject to appeal: 1) involves a controlling question of law; 2) as to which there is a substantial ground for difference of opinion; and 3) an immediate appeal from the order may materially advance the ultimate termination of litigation.  28 U.S.C. § 1292(b). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F. 3d 1064, 1067 n.6 (9th Cir. 2002).  Indeed, the legislative history of § 1292 suggests that it ought to be used, "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation."  *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966); *Milbert v. Bison Laboratories*, 260 F.2d 431, 433-35 (3d Cir. 1958).

## III. DISCUSSION

### A. Motion to Alter or Amend Judgment

Defendants seek to amend the Phase 1 judgment with respect to two issues: (1) pre-1992 exposure to hexavalent chromium in surface water and (2) pre-1994

exposure to hexavalent chromium in air. Motion to Alter or Amend Judgment, 12. First, in regard to their surface water arguments, Defendants argue that the Court incorrectly upheld a jury finding that hexavalent chromium was present in the canal from 1969 – 1991 because no hexavalent chromium has ever been detected in the canal. Second, in regard to the air pathway arguments, Defendants argue that the Court applied the wrong legal standard in ruling on Defendants' *Daubert* motion with respect to Camille Sears by using the "all favorable inference standard." *Id.* Defendants also contend that by failing to apply the *Daubert* factors to Ms. Sears' testimony, the Court abdicated its role as "gatekeeper" and the Court erred by failing to make any affirmative finding that Ms. Sears' testimony was reliable and thus admisslbe under Daubert. *Id.*

The initial threshold issue is whether there exists a "judgment" for the purposes of a Rule 59(e) motion. Defendants seek review of "a partial judgment entered after the first phase of a multi-phase trial and subsequently amended by the Court's order on Defendants' post-trial motions." Reply to Motion to Alter or Amend Judgment, 13. Plaintiffs argue that neither the jury verdict nor the Court's order denying in part and granting in part Defendants' motion for new trial and motion for judgment as a matter of law are final "judgments" for the purpose of a Rule 59(e) motion. Opposition to Motion to Alter or Amend the Judgment, 8.

Defendants cite to Federal Rule of Civil Procedure 58 and to case law to support their contention that the Court's order was a final judgment. Surprisingly, neither party cites to Federal Rule of Civil Procedure 54, which actually defines a "judgment" for the purposes of a Rule 59(e) motion. A "judgment," as defined by Rule 54 is "any order from which an appeal lies." Fed. R. Civ. P. 54. In other words, a judgment is a final order. *U.S. v. Martin,* 226 F.3d 1042, 1048 (9th Cir. 2000) (citing *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384 n.2 (1978)). Alternatively, an appealable interlocutory order may qualify as a "judgment." *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 466-67 (9th Cir. 1989).

The *Balla* court explained that the final judgment requirement served an important policy purpose. *Id.* Because the denial of a Rule 59(e) motion is a final, appealable judgment, if courts permit Rule 59(e) motions without entry of judgment, litigants could obtain appellate review of partial judgments by appealing the Rule 59(e) denial and bypassing Rule 54(b) and 28 U.S.C. § 1291 requirements. *Id.* at 467. The *Balla* court went on to hold that the order in question was not a "judgment" permitting Rule 59(e) review because it did not "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Id.* (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978)). Because the order was also not appropriate for interlocutory appeal under 28 U.S.C. § 1292 or Rule 54(b), the Court affirmed the district court's denial of the prisoner's motion for reconsideration.

The situation here is analogous to the facts in *Balla.* The Court's ruling on Defendants' JMOL and new trial motions did not "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Id.* As will be

explained in the next section, the Court's order is also not grounds for an interlocutory appeal. Thus, there is no final "judgment" within the meaning of Rule 54 that would make a Rule 59(e) motion appropriate at the present time – and Defendants point to no case law to the contrary. The Court's order ruling on JMOL motion and motion for a new trial is just that: an order. It does not look like a judgment or act like a judgment in any way. There are no findings of liability and this case is far from over. Both parties are correct that the present situation is unique; the Court simply can find no authority, statutory or otherwise, that permits Defendants' motion at the present stage of litigation.

### B. Interlocutory Appeal

Defendants seek to appeal three questions under 28 U.S.C. § 1292(b), all related to the Court's admission of Ms. Sears' testimony under *Daubert*: (1) Whether the Court, by drawing all inferences in plaintiffs' favor in determining whether Ms. Sears' testimony was admissible at the Phase 1 trial and imposing on Defendants the burden of establishing that Ms. Sears' opinions and model were unreliable, applied an incorrect legal standard under *Daubert* and the Federal Rules of Evidence; (2) Whether the Court erred in admitting Ms. Sears' testimony in the absence of any independent scientific evidence (apart from her own testimony) to validate her emission rate methodology, the assumptions she used in preparing her emissions rate estimate, and her model's results, as required by *Daubert*; and (3) Whether the Court erred in admitting Ms. Sears' testimony in the absence of a finding that her model was reliable or that any of the *Daubert* reliability factors were present, and in light of its statement that Ms. Sears' opinions were "junk science" and "slop." Motion for Certification of Appeal, 2. Courts examine three factors to determine whether an interlocutory appeal is appropriate: whether there is a controlling question of law; whether the initial order creates substantial grounds for difference of opinion; and whether an immediate appeal of the order may materially advance the ultimate termination of the litigation.

*Steering Committee v. U.S.,* relied upon heavily by Defendants, makes clear that the liability phase of a multidistrict, multiparty case may be appropriate for an interlocutory appeal. 6 F.3d 572, 575 (9th Cir. 1993). Yet, that holding was not free from limitations. The Ninth Circuit made clear that because there was a "pure legal question" at issue, it could therefore consider all other material mixed questions of law and fact. *Id.* at 575-76. The presence of a pure legal question is thus a threshold requirement before a district court may certify an interlocutory appeal.

Defendants' first proposed question – the only potentially pure legal issue - is therefore essential. If that question is not appropriate for interlocutory appeal, the two other mixed questions of law and fact cannot be certified. The first proposed question must be a pure legal question that presents a controlling question of law and leaves room for substantial grounds for disagreement while

also having the potential to materially advance litigation. Defendants' proposed question about the Court's legal standard for the Daubert motion does not meet any of these tests because the factual basis underlying the question is flawed. Defendants conclusorily state that the Court viewed the facts and evidence in the light most favorable to the non-movant and required Defendants to bear the burden of proof. Motion to Alter or Amend Judgment, 1, 2, 3, 5, 7. Yet, nowhere in the Motion to Alter or Amend Judgment do Defendants demonstrate where and how the Court viewed the facts and evidence in the light most favorable to the non-movant in the context of the Daubert ruling. Curiously, Plaintiffs do not question this omission and also appear to take the legal standard as a given. This Court does not.

      Much of the current confusion over the Court's legal standard appears to have derived from the fact that the motion for summary judgment and the Daubert motions were combined within the same order. These two issues were inextricably intertwined because Defendants' motion for partial summary judgment was based on the contention that Plaintiffs failed to present any admissible evidence of actual exposure. *Id.* at 2. The Court's first task was thus to determine if the expert testimony – and that of Ms. Sears, in particular – was admissible. The Court then had to decide whether to grant or deny the summary judgment motion, given its Daubert ruling. The Court perhaps could have made a clearer distinction between these two rulings, but a close examination of the order reveals that the Court did recognize and apply the distinction between these two inquiries.

      In its "Conclusion on Air Pathway," the Court first held that "the qualifications of Plaintiff's air model expert, Camille Sears, and the reliability of her methodology and assumptions are materially at issue in this case." *Id.* at 58. This sentence demonstrates the Court's conclusion that Ms. Sears' testimony is admissible, despite reasonable scientific disagreement permitted by Daubert. Next, the Court held that "[d]rawing all inferences in favor of the non-movant, Ms. Sears' testimony presents a scientific dispute not resolvable as a matter of law." *Id.* This sentence serves to deny Defendants' summary judgment motion because the Court has already determined that Ms. Sears' testimony is admissible as evidence of an air pathway. This reading of the Court's order is further confirmed by the Court's final sentence in the paragraph, which holds that "Defendants' Daubert motion is DENIED and that portion seeking to adjudicate air contamination is also DENIED." *Id.* There, the Court makes clear that the previous sentences resolved two separate issues: the Daubert motion and "the portion seeking to adjudicate," which could only be the Defendants' summary judgment motion seeking adjudication of the air pathway claim. While perhaps some confusion resulted from the Court's simultaneous consideration of both the motion for summary judgment and Daubert motion, it is clear that the Court separately considered whether Ms. Sears' testimony was admissible before using that conclusion to deny the motion for summary judgment.

An examination of the body of the Court's air pathway discussion is further evidence that the Court recognized and applied the distinction between summary judgment and Daubert, although it discussed them in the same section. First, nowhere in the Court's "Daubert Legal Standard" section does it ever mention placing the burden on Defendants or drawing all inferences in favor of Plaintiffs. Rather, the Court recites well-established case law on Daubert motions that Defendants do not challenge. The Court recites that a Rule 702 expert may only testify if "(1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court went on to explain its own gatekeeping role and responsibility to "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1999). The legal standard section in any court order, as its name suggests, sets forth the legal standard to which the facts will be applied. There is absolutely no indication in the Daubert Legal Standard section that the Court had any intention of applying the summary judgment standard to its Daubert analysis.

There is also no indication in the Court's discussion of air pathway evidence that it drew any factual inferences in favor of Plaintiffs when deciding whether to admit Ms. Sears' testimony. For example, the Court noted that "Ms. Sears has engaged in the field of air modeling and analysis as a regulator and expert for over twenty years. She has worked on sites that have toxic dust emissions. She satisfies Rule 702's foundational standards and her testimony will assist the trier of fact." *Id.* at 35. The Court delved into both Ms. Sears' testimony, as well as all rebuttal testimony, in great depth and evaluated all evidence objectively, in furtherance of its gatekeeper role. Although there was some disagreement about some of Ms. Sears' practices, the Court determined that "based on the current record, her emissions scenario is relevant, admissible, and can be challenged through cross-examination and presentation of contrary evidence." *Id.* at 39. Ultimately, the Court determined that the "reasonable scientific disagreement" went to the weight of the testimony and not its admissibility. *Id.* at 51-52.

The Court's order contains only one discussion of the air pathway, in which it addresses both the Daubert issue and the motion for summary judgment. Given that structure, it was not only foreseeable – but necessary - for the Court to mention the summary judgment standard. Perhaps it would have been advisable for the Court to more clearly delineate its consideration of the Daubert issue from its consideration of the summary judgment motion. The mere fact that it chose to combine both discussions in one section determining the fate of Plaintiffs' air pathway claims is, however, not an indication of error by the Court. There is sufficient evidence to show that the Court applied well-established Daubert gatekeeping principles to admit Ms. Sears' testimony before denying the motion for summary judgment on the basis that Ms. Sears' testimony presented a material

question of fact. After determining that Ms. Sears testimony was admissible, *see id.* at 51-52, the Court quickly concludes that it is appropriate to deny the motion for summary judgment. *Id.* at 52-53.

  This flaw in the factual basis underlying Defendants' first proposed question is fatal to the Motion for Certification of Appeal. "The legislative history of subsection (b) of section 1292 . . . indicates that it was to be used only in extraordinary cases . . . [and] was not intended merely to provide review of difficult rulings in hard cases." *United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (1966). Here, the Court made a difficult ruling in a hard case and decided to admit the testimony of a controversial expert. There is, however, no pure and controlling question of law appropriate for interlocutory appeal. Because the Court did not use the "all favorable inferences" standard in ruling on the Daubert motion relating to Ms. Sears, this Court will not certify it for interlocutory appeal.

  First, because the underlying factual basis did not occur, it is not a controlling question of law. A controlling question of law means that the resolution on appeal could have a material affect on the outcome of the case in the district court. *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026 (1982). Examples of controlling questions of law include "fundamental issues such as " 'the determination of who are necessary and proper parties, whether a court to which a case has been transferred has jurisdiction, or whether state or federal law should be applied.' " *Id.* at 1026-27 (quoting *United States v. Woodbury,* 263 F.2d 784, 7878 (9th Cir. 1959)). Here, even if the Ninth Circuit found that the "all favorable inferences" standard was inappropriate for a Daubert motion, it would not have a material effect on the case because the Court did not use that standard.

  Second, there are no substantial grounds for difference of opinion. *See Strauss v. Sheffield Ins. Corp.,* No. 05CV1310-H(CAB), 2006 WL 6158770, at *4 (S.D. Cal. June 23, 2006). In *Strauss*, the court noted that although the party seeking the appeal showed "that its own opinion differs from the Court's . . . if district courts certified an order for appeal in every instance in which a party disagreed with a court's opinion, the 'exceptional circumstances' requirement for interlocutory appeals would be rendered meaningless and piecemeal litigation would become commonplace." *Id.* Rather, the primary inquiry is "the strength of the arguments in opposition to the challenged ruling." *Helman v. Alcoa Global Fasteners, Inc.,* No. CV 09-1353, 2009 WL 2058541, at *5 (C.D. Cal. June 16, 2009) (quoting *Ryan, Beck & Co., LLC v. Fakih,* 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003). Defendants clearly disagree with the Court's MSJ/Daubert Order and would likely disagree with this Court's interpretation of that Order. Yet, given that Defendants have pointed to any instance where the Court interpreted a factual ambiguity in favor of Plaintiffs, their arguments have little merit. This case is one of mere disagreement and not a sharply divided issue about which reasonable minds could strongly disagree. *Cf. id.* at *6.

  Finally, where "the Court concludes certification would actually delay the resolution of the litigation, certification is not appropriate." *Strauss*, 2006 WL

6158770, at *4 (citing *E. Shurance v. Planning Control Int'l,* 839 F.2d 1347, 1348 (9th Cir. 1988). In *Strauss* the court refused to certify an interlocutory appeal due to its concern that the final resolution of the interlocutory appeal could take years. *Id.* The present litigation has already taken years. This Court will not certify an interlocutory appeal based on an argument that the Court may have utilized the incorrect legal standard without any factual showing that the Court actually drew any inferences in favor of Plaintiffs.

### IV. DISPOSITION

For the aforementioned reasons, the Motion to Alter or Amend Judgment is hereby DENIED and the Motion for Certification of Appeal is hereby DENIED.

The Clerk shall serve this minute order on all parties to the action.