1
2
3
4
5
6
7
8               UNITED  STATES  DISTRICT  COURT

9          FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

10

11   ABARCA, RAUL VALENCIA, et al.,   )        CASE NO. 1:07-CV-0388 DOC
                                      )        (DLBx)
12                Plaintiff(s),       )
                                      )
13            v.                      )        O R D E R DENYING MOTION FOR
                                      )        SUMMARY JUDGMENT OF THE
14   MERCK & CO., INC., et al.,       )        DAIRY PLAINTIFFS' CLAIMS
                                      )
15                Defendant(s).       )
                                      )
16                                    )
                                      )
17                                    )
                                      )
18                                    )
                                      )
19   _____ )

20

21        Before the Court is a Motion for Summary Judgment of the Dairy Plaintiffs' Claims

22   (Docket 1553) filed by  Merced Irrigation District and Merced Drainage District No. 1 and

23   joined by Defendant County of Merced (Docket 1555) (collectively, "Flood Defendants")

24   ("Dairy Motion"). After considering the moving, opposing, and replying papers, as well as oral

25   argument, the Court DENIES the Dairy Motion.

26

27        **I. BACKGROUND**

28        The vast majority of the extremely complex factual and procedural background of this

1   case is irrelevant for the purposes of the present Dairy Motion. All relevant facts relate to the

2   "Dairy Plaintiffs" - Manuel Soares, Carol A. Soares, Toby Soares, Laurie Soares, Courtney D.

3   Soares, Caden N. Soares, and Conner D. Soares d/b/a Mater Dei Dairy - and their property,

4   which is located "on Franklin Road in Merced County, generally between Highway 99 and the

5   Franklin Road Bridge." Plaintiff's Opposition to Statement of Uncontroverted Facts ("Plaintiff

6   SOF"), ¶ 6, 16. Plaintiffs allege that the Flood Defendants "designed, constructed and

7   maintained, along Black Rascal Creek dirt embankments, having an inherent tendency to

8   deteriorate and on April 4, 2006, a portion of the embankment failed to function as intended and

9   collapses, allowing water to escape Black Rascal Creek and flood the Dairy Plaintiffs' real and

10  personal property." Eighth Amended Complaint ("Complaint"), ¶ 98. The Complaint goes on to

11  allege that the Flood Defendants "and each of them, converted Black Rascal Creek from a

12  natural waterway for use as an irrigation canal and as part of a storm drain system such that the

13  quantity of water delivered to Black Rascal Creek in conjunction with the rainfall on April 4,

14  2006, was such as to overtop and collapse a portion of the dirt embankment, allowing water to

15  escape Black Rascal Creek and flood the Dairy Plaintiffs' real and personal property." *Id.* at ¶

16  101. Based on these allegations, Plaintiffs assert claims for inverse condemnation, dangerous

17  condition of public property, and nuisance against the Flood Defendants. *Id.* at ¶ 95-108, 152-

18  160, 184-206.

19          On March 12, 1917, the Flood Defendants' predecessor, the Crocker-Huffman Land and

20  Water Company conveyed to Meadow Brook Farm Company the real property now owned by

21  the Dairy Plaintiffs. Defendants' Statement of Facts ("SOF"), ¶ 18, 28. This 1917 deed provides

22  the Flood Defendants with, among other things, the "right to temporarily flow the said land

23  herein conveyed without liability therefor when such flowing results from breaks in any ditch or

24  canal of the party of the first part or its assigns or any ditch or canal used by said party of the

25  first part, or its assigns or when caused by any water coming from such canals or ditches or

26  when caused by water turned into said natural channels herein mentioned by the party of the first

27  part, or its assigns." SOF, ¶ 24. Defendants allege that this language created a flooding easement

28  that precludes liability for the April 4, 2006 flood.

2

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* is instructive in determining the nature and effects of the language at issue in the present case. 172 Cal. App. 3d 914 (Ct. App. 1985). There, plaintiffs entered into agreements and "easements," both of which attempted to shield the defendant Imperial Irrigation District from liability for flood damage resulting from the rising of the Salton Sea. *Id.* at 929. The defendant, like the Flood Defendants here, argued

1  that the agreements and easements precluded liability for flood damage to plaintiffs' properties

2  caused by the defendant's management practices. *Id.*

3  The first relevant point is that the *Salton Bay* court held that the language at issue

4  purporting to create an easement was not legally valid as such. The court held that the document

5  "inconsistently seeks to create an easement, an interest in land, but then states the document is

6  solely intended to limit future liability." *Id.* at 936. The court further noted that the defendant's

7  "acts of encouraging and allowing development of the property are clearly inconsistent with an

8  intent to flood the property." *Id.* Based on this evidence, the court concluded that the documents

9  were not intended to create easements but rather an exculpatory clause. *Id.* at 938.

10  The facts here are almost identical. The language at issue simultaneously attempts to

11  create an interest in land, while also ensuring its primary goal of avoiding liability. *See* SOF, ¶

12  24 (document provides the right to "right to temporarily flow the said land herein conveyed

13  without liability therefor"). Further, although the Flood Defendants do not appear to have

14  affirmatively encouraged the development of the Dairy Plaintiffs' land, they certainly allowed its

15  development, which resulted in a dairy farm and two residences on the previously undeveloped

16  property. SOF, ¶ 8. This action by the Flood Defendants - or lack thereof - is inconsistent with

17  an intent to flood the property. Thus, as in *Salton Bay,* the language at issue here is not an

18  easement but rather an exculpatory clause of an agreement between the original parties.

19  The analysis of the agreements - as opposed to the "easements" - at issue in *Salton Bay* is

20  thus extremely relevant to the present analysis.[1] The agreements at issue there provided that the

21  plaintiffs agreed "not to sue" defendant "for any damage or injury caused or occasioned by the

22  rising of the Salton Sea, or any flooding or inundation of any portion of the said Bombay Beach

23  Tract by said Salton Sea." *Id.* at 931. The court found the agreement's language ambiguous

24  because it did not specify whether the defendant was merely protected for natural flooding or

25

26  [1]Because the Flood Defendants' predecessor was not a public entity, this Court
will not undertake the *Salton Bay* court's public policy analysis, nor does is such

27  discussion necessary to determine that the language at issue does not automatically

28  immunize Defendants from any potentially deliberate or negligent actions.

4

1   whether it was also protected from suit for flooding resulting from its own deliberate or

2   negligent acts. *Id.* Substantial extrinsic evidence was presented at trial and a jury determined that

3   the defendant was only precluded from liability from flooding due to natural causes. *Id.* at 931-

4   32.

5        The same analysis applies here. Like the *Salton Bay* agreement, the language at issue in

6   the present case is ambiguous in specifying the type of flooding contemplated. Here, the

7   language provides the Flood Defendants with the "right to temporarily flow the said land herein

8   conveyed without liability therefor when such flowing results from breaks in any ditch or canal

9   of the party of the first part or its assigns or any ditch or canal used by said party of the first part,

10  or its assigns or when caused by any water coming from such canals or ditches or when caused

11  by water turned into said natural channels herein mentioned by the party of the first part, or its

12  assigns." SOF, ¶ 24. Like the language at issue in *Salton Bay,* the language here does not specify

13  whether liability is precluded for solely natural breaks resulting in flooding or whether it also

14  protects against flooding caused by the MID's negligence. Neither party has yet produced

15  evidence of the original intent of the drafters, such that it shall remain a question for the jury, as

16  it was in *Salton Bay.* The parties are free to produce evidence at trial of the provision's original

17  meaning, given its present ambiguity. *Id.* at 931-32 (citing California Code Civ. Proc. § 1856;

18  *Universal Sales Corp. v. Cal. Press Mfg. Co.,* 20 Cal. 2d 751, 761 (1942)). *See also Ungar v.*

19  *Skinner Swim Pool Plastering, Inc.,* No. B196602, 2008 WL 1809689 (Super. Ct. Apr. 23, 2008)

20  (exculpatory clause not specifically mentioning negligence was insufficient to preclude liability

21  at summary judgment stage).

22       Further, there is an additional ambiguity not present in *Salton Bay.* The provision at issue,

23  contrary to Defendants' assertion in their papers, limits liability only for flooding that is "for the

24  use and benefit of the canal system." SOF, #24. Whether the flooding that actually happened was

25  "for the use and benefit of the canal system" is a question of fact properly left for the jury.

26       This Court will not hold, as a matter of law, that the language in the 1917 agreement

27  precludes the Flood Defendants' liability for the Dairy Plaintiffs' claims. The language at issue

28  is an attempted exculpatory clause, not an easement; it shall be the jury's role to determine (1)

1    the potential existence of negligent acts by Defendants and (2) whether the exculpatory clause

2    immunized any such behavior.

3    **IV. DISPOSITION**

4        For the aforementioned reasons, Defendants' Motion for Summary Judgment on Dairy

5    Plaintiffs' Claims is hereby DENIED.

6    IT IS SO ORDERED.

7    DATED: April 16, 2012

8

9                            *David O. Carter*
                           _____

10                         DAVID O. CARTER
                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28